No. 3:09-CV-1904-BF


IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


JOHN DAVID BATTAGLIA,
Petitioner,

v.

RICK THALER, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE -
CORRECTIONAL INSTITUTIONS DIVISION
Respondent.


———————————————

REPLY BRIEF FOR PETITIONER
———————————————


LAW OFFICE OF MARGARET SCHMUCKER

MARGARET SCHMUCKER
13706 RESEARCH BLVD., SUITE 211-F
AUSTIN, TEXAS 78750
Tel: (512) 236-1590
Fax: (877) 465-7066

ATTORNEY FOR PETITIONER,
JOHN DAVID BATTAGLIA

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS............................................................... I

TABLE OF AUTHORITIES........................................................... ii

ARGUMENT........................................................................ 1

ISSUE ONE:  Imposition of the death penalty on a defendant whose particular mental illness prevents him from conforming his conduct to the requirements of law constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution............................................... 1

ISSUE THREE: The trial court violated Battagia's right to effective assistance of counsel and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution by denying his challenge for cause as to seven venire members who had formed an opinion as to his guilt that prevented them from being impartial................................................................ 5

ISSUE FOUR: The trial court violated Battaglia's right to a fair and impartial jury and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution by granting the State's challenge for cause as to one death-qualified venire member. ................................................... 6

ISSUE FIVE: Battaglia was deprived of effective assistance of trial counsel under the Sixth and Fourteenth Amendments to the United States Constitution because trial counsel: (1) failed to adequately question the venire about their views on mental illness as mitigation during voir dire; (2) failed to adequately argue mental illness as mitigation during final arguments at punishment; (3) failed to present the power-point presentation prepared for mitigation; and (4) failed to use Battaglia's father as a mitigation witness.......................................................... 9

ISSUE SEVEN: The State Court's failure to review the factual sufficiency of a finding of future dangerousness violated the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.................................. 11

CERTIFICATE OF SERVICE. .................................................... 12

## TABLE OF AUTHORITIES

Page

### CASES

Federal Cases

*Aguilar v. Dretke*, 428 F.3d 526 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Atkins v. Virginia*, 36 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). . . . . . . . . . . . . . . 1, 4

*Baird v. Davis*, 388 F.3d 1110 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).. . . . . . . . . . . . . . . . . 7

*Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Carroll v. Secretary, DOC*, 574 F.3d 1354 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Clark v. Arizona*, 548 U.S. 735, 126 S.Ct. 2709 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Coble v. Quarterman*, 496 F.3d 430 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Emery v. Johnson*, 139 F.3d 191 (5th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ex parte Gardner*, 959 S.W.2d 189 (Tex. Crim. App. 1996). . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Finley v. Johnson*, 243 F.3d 215 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gray v. Mississippi*, 481 U.S. 648, 659, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). . . . . . . . . . . . 8

*In re Neville*, 440 F.3d 220 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Kittelson v. Dretke*, 426 F.3d 306 (5th Cir.2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 2997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

*Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). . . . . . . . . . . . . . . . . 6

*Sam v. Louisiana*, 2011 WL 310377 * 4 (5th Cir. 2011)................................. 8

*Schrader v. Whitley*, 904 F.2d 282 (5th Cir.1990)..................................... 12

*ShisInday v. Quarterman*, 511 F.3d 514 (5th Cir. 2007)............................... 3

*Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989).. ............. 4

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). . . . . . . . . . . 9

*Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989). ................................. 3

*Texas v. Cobb*, 532 U.S. 162, 121 S.Ct. 1335 (2001). ................................. 1

*West v. Johnson*, 92 F.3d 1385 (5th Cir. 1996). ..................................... 12

*Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1989). ............................. 7

*Williams v. Puckett*, 283 F.3d 272 (5th Cir. 2002)..................................... 9

*Willie v. Maggio*, 737 F.2d 1372 (5th Cir.), *cert. denied*, 469 U.S. 1002 (1984). ............. 5

*Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). ............... 7

*Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706, (1991). ............... 7

*Aguilar v. Dretke*, 428 F.3d 526 (5th Cir. 2005). .................................... 9, 10

*Atkins v. Virginia*, 36 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). ................ 1, 4

*Baird v. Davis*, 388 F.3d 1110 (7th Cir. 2004). ..................................... 3

*Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).................... 7

*Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994). ................................... 7

*Carroll v. Secretary, DOC*, 574 F.3d 1354 (11th Cir. 2009).............................. 3

*Clark v. Arizona*, 548 U.S. 735, 126 S.Ct. 2709 (2006). ............................... 2

*Coble v. Quarterman*, 496 F.3d 430 (5th Cir. 2007).................................. 11

*Emery v. Johnson*, 139 F.3d 191 (5th Cir. 1997)...................................... 9

iii

*Ex parte Gardner*, 959 S.W.2d 189 (Tex. Crim. App. 1996). . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Finley v. Johnson*, 243 F.3d 215 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gray v. Mississippi*, 481 U.S. 648, 659, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). . . . . . . . . . . . 8

*In re Neville*, 440 F.3d 220 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Irvin v.Dowd*, 366 U.S. 717, 81 S.Ct. 1639 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Kittelson v. Dretke*, 426 F.3d 306 (5th Cir.2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 2997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

*Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). . . . . . . . . . . . . . . . . . 6

*Sam v. Louisiana*, 2011 WL 310377 * 4 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Schrader v. Whitley*, 904 F.2d 282 (5th Cir.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*ShisInday v. Quarterman*, 511 F.3d 514 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989). . . . . . . . . . . . . 4

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). . . . . . . . . . . 9

*Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Texas v. Cobb*, 532 U.S. 162, 121 S.Ct. 1335 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*West v. Johnson*, 92 F.3d 1385 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Williams v. Puckett*, 283 F.3d 272 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Willie v. Maggio*, 737 F.2d 1372 (5th Cir.), *cert. denied*, 469 U.S. 1002 (1984). . . . . . . . . . . . . 5

*Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). . . . . . . . . . . . . . 7

*Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706, (1991). . . . . . . . . . . . . . . 7

State Cases

*Aldrich v. State*, 104 S.W.3d 890 (Tex. Crim. App. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lopez v. State*, ___ S.W.3d ___, 2011 WL 2408942 (Tex. Crim. App. 2011). . . . . . . . . . . . . . 10

*Mallett v. State*, 65 S.W.3d 59 (Tex. Crim. App. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Martinez v. State*, 763 S.W.2d 413 (Tex. Crim. App. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Salinas v. State*, 163 S.W.3d 734 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


MISCELLANEOUS

Tex. Code Crim. Proc. Art. 35.16(a)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Webster's Dictionary, http://www.merriam-webster.com/dictionary/inference. . . . . . . . . . . . . . 1

<u>ARGUMENT</u>

<u>ISSUE ONE</u>:  Imposition of the death penalty on a defendant whose particular mental illness prevents him from conforming his conduct to the requirements of law constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

The State's response misconstrues Battaglia's argument in order to contradict it.  For example, the State initially asserts that Battaglia has merely inferred a constitutional bar and argues that "Constitutional rights are not defined by inferences from opinions which did not address the question at issue."  Response at 24 (citation omitted).  However, an "inference" is commonly defined as "the act of passing from one proposition, statement, or judgment considered as true to another whose truth is believed to follow from that of the former."   Webster's Dictionary, http://www.merriam-webster.com/dictionary/inference. Battaglia's claim does not argue that simply because it is unconstitutional to execute the mentally retarded and juveniles it must also be unconstitutional to execute "the mentally ill."  Rather, Battaglia's opening brief applies the analytical framework set forth in *Atkins*[1] to reach the natural legal conclusion relevant *only* to individuals whose particular mental illness results in a lack volitional control in the same manner as that analytical framework was applied in *Roper*[2] to juveniles. Thus, by definition, Battaglia's claim does not constitute an  unsupportable "inference"and *Texas v. Cobb*, 532 U.S. 162, 169, 121 S.Ct. 1335  (2001), does not apply.

Furthermore, the State argues that neither *Atkins* nor *Roper* created a new rule of constitutional law exempting "the mentally ill" from execution and that this position is supported

---

[1] *Atkins v. Virginia*, 36 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

[2] *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005).

1

by "every jurisdiction that has addressed this allegation." Response at 24-25. Perhaps, but this point together with the cases the State cites to support it are largely irrelevant. Battaglia's argument is narrowly tailored to encompass only "a defendant *whose particular mental illness prevents him from conforming his conduct to the requirements of law.*" – not *any* "defendant who is mentally ill" regardless of the nature of that mental illness.[3] The distinction makes a difference.

As Battaglia duly acknowledged in his opening brief, "no particular formulation of an insanity defense has evolved into a baseline for due process under the Fourth and Fourteenth Amendments." Petition at 30-31 citing *Clark v. Arizona*, 548 U.S. 735, 752, 126 S.Ct. 2709, 2722 (2006). It is for this same reason that there exists no "consensus" under the Eighth Amendment regarding whether it is cruel and unusual to execute an individual who is generically defined as "mentally ill." However, as demonstrated in Battaglia's opening brief, such is not the case in regard to an individual whose particular mental illness prevents him from conforming his conduct to the requirements of law. As to such individuals, "[a] vast majority of State legislatures" do in fact "either expressly prohibit or strongly discourage imposition of the death penalty." *See* Petition at 26-32 & nn. 10-19 (analyzing statutes and cases).[4] Indeed, the legislative consensus on this point is

---

[3] This is not a new claim, merely a more clearly focused argument of exhausted claim. In State Court Battaglia argued cruel and unusual punishment to execute him because he was mentally ill. The State Court, itself, discussed the nature of Battaglia's mental illness in its opinion stating, in relevant part, "The main thrust of the experts' testimony was that [Battaglia's] bipolar condition affected his impulse control – his ability to conform his behavior. A lack of impulse control, while recognized in *Atkins* as one of a number of factors reducing the personal culpability of mentally retarded individuals, has never been recognized as sufficient alone to render one immune from execution under the Eighth Amendment." *Battaglia v. State*, 2005 WL 1208949 at * 10 n.38. Accordingly, Battaglia's Eighth Amendment claim regarding his lack of impulse (or "volitional") control has been considered and decided by the State Court.

[4] The State's assertion at page 26 of its Response that Battaglia "cites no case or statute that actually prohibits a mentally ill defendant from being sentenced to death" is patently false

2

more than sufficient to satisfy the *Atkins* analytical framework. Accordingly, the State's point as to "the mentally ill" in general is irrelevant to the narrower issue actually before this Court.[5]  Under *Atkins*, the execution of a particular class of mentally ill – those who lack volitional control – is unconstitutional regardless of whether such lack of volitional control constitutes an affirmative "insanity" defense to the charged offense under applicable state law.

Finally, the State argues that Battaglia is seeking a new rule of constitutional law which is barred by the non-retroactivity principles of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989). Response at 24-25.  Battaglia respectfully disagrees and asserts that the issue of non-retroactivity is properly resolved in his favor under *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183.  At age 17,

---

and misleading.  *See* Petition at 28-29 nn. 10-11 (listing states where mental illness resulting in volitional incapacity constitutes an affirmative defense to even to capital murder charge  proof of which necessarily precludes imposition of the death penalty). *See also* Attachment hereto.

[5]  The cases cited by the State fail to provide binding (or even persuasive) precedent as to that narrower issue and thus do not require a contradictory result.  For example, in *ShisInday v. Quarterman*, 511 F.3d 514, 521 (5th Cir. 2007), this Court held that "[t]o the extent ShisInday seeks an extension of *Atkins* and *Roper* to the mentally ill, that claim is procedurally barred for failure to present the issue to the state court."  Because ShinsInday's argument apparently extended to any form of mental illness and because the issue was deemed procedurally barred any opinion expressed by the panel is irrelevant and otherwise  *dicta*.

In *In re Neville*, 440 F.3d 220, 221 (5th Cir. 2006), this Court denied Neville's motion to file a successive petition alleging it was unconstitutional to execute "the mentally ill" because *Atkins* did not cover mental illness and because Neville failed to present a prima facie case of mental illness. Because Neville's argument likewise extended to any form of mental illness and because Neville failed even to present a *prima facie* case in support of his claim, the opinion expressed by the panel is likewise irrelevant and *dicta*.

In *Carroll v. Secretary, DOC*, 574 F.3d 1354, 1369 (11th Cir. 2009), the defendant argued that multiple forms of mental illness made him "functionally mentally retarded" and the reviewing court found "the mental retardation inquiry is not merely different because an individual suffers from mental illness."

In *Baird v. Davis*, 388 F.3d 1110, 1114-15 (7th Cir. 2004), the defendant  argued "that it is cruel and unusual punishment to put to death a person who murders under an irresistible impulse," but did so only during oral argument.  The reviewing court deemed this "too late" for due consideration thus rendering any further opinion on the matter sheer *dicta*.

3

Christopher Simmons planned and committed a capital murder. After he had turned 18, he was sentenced to death. His direct appeal and subsequent petitions for state and federal postconviction relief were rejected. Thereafter, the Supreme Court issued its decision in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335. In *Atkins*, the Supreme Court held that the Eighth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the execution of a mentally retarded person; it did not decide whether the Eighth Amendment likewise prohibits the execution of a juvenile offender. Thereafter, Simmons filed a new petition for state postconviction relief, arguing that *Atkins'* reasoning established that the Constitution prohibits the execution of a juvenile who was under 18 when he committed his crime. The Missouri Supreme Court agreed and set aside Simmons' death sentence in favor of life imprisonment without eligibility for release. It held that, although *Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989), rejected the proposition that the Constitution bars capital punishment for juvenile offenders younger than 18, a national consensus has developed against the execution of those offenders since *Stanford*. The Supreme Court granted certiorari and, *notwithstanding the fact that the case was likewise on collateral habeas review*, held that the Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed. The ruling and relief sought in the instant case is no more *Teague*-barred than the ruling and relief sought in *Roper*. Here, as in *Roper*, Battaglia has argued that the *reasoning* (rather than the *ruling*) of the *Atkins'* case establishes that the Constitution prohibits the execution of a class of individuals not specifically mentioned in that decision, namely those individuals whose particular mental illness prevents them from conforming their conduct to the requirements of law.

4

ISSUE THREE: The trial court violated Battagia's right to effective assistance of counsel and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution by denying his challenge for cause as to seven venire members who had formed an opinion as to his guilt that prevented them from being impartial.

The State's response to Battaglia's claim glosses over the distinction between a prospective juror who merely has a "preconceived notion" of the defendant's guilt and a prospective juror who has expressed a "strong and deep opinion" of the defendant's guilt. The distinction makes a difference: The former can be rehabilitated by testimony that they will set aside those impressions and render an evidence based on the verdict and the law, the latter cannot. *Compare Irvin v.Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642 (1961) (it is sufficient if juror can set aside his impression and render a verdict based onthe evidence) and *Murphy v. Florida*, 421 U.S. 794, 799-800, 95 S.Ct. 2031 (1975) (same) *with Willie v. Maggio*, 737 F.2d 1372 (5th Cir.), *cert. denied*, 469 U.S. 1002 (1984) (juror who has formed a firm opinion as to a defendant's guilt "cannot be impartial," and thus cannot be "rehabilitated" even if the juror declares to the court that he or she will decide the case solely on the evidence presented) and Tex. Code Crim. Proc. Art. 35.16(a)(10) (such a juror is to be "discharged without further interrogation by either party or the court"). Battaglia's opening brief demonstrated that the prospective jurors at issue possessed far more than "preconceived notions" of Battaglia's guilt. Nevertheless, the State relies upon testimony obtained through impermissible "further interrogation" to support its claim that the State court's ruling was not unreasonable. Such reliance is misplaced. Because the prospective jurors at issue had each expressed a "strong and deep opinion" of Battaglia's guilt, "further interrogation" was improper and the results of such interrogation wholly irrelevant.

5

The State argues, in the alternative, that even if the trial court erred, Battaglia is not entitled to relief because he failed to show that the jury was not impartial. Response at 71-72, citing *Ross v. Oklahoma*, 487 U.S. 81, 88 & n. 10, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Here, the State again misconstrues Battaglia's argument in order to contradict it. While proof that the jury was not impartial may be required for a "fair and impartial jury" claim, it is not required for the "due process" claim raised in Battaglia's opening brief. In Texas (as elsewhere) state law determines the process for jury selection. Because "it can no longer be said that one purpose of peremptory challenges under Texas law is to correct errors of the trial court in failing to grant valid challenges for cause," *Martinez v. State*, 763 S.W.2d 413 (Tex. Crim. App. 1988), an "objectionable" juror need not be an "excludable" juror in order to establish a violation of *due process* established under Texas law and guaranteed by the United States Constitution. Rather, a due process violation occurs when the trial court refuses to exclude an excludable juror and in so doing effectively deprives the defendant of the right to exercise a peremptory challenge to which he is lawfully entitled against a subsequent objectionable juror.

ISSUE FOUR: The trial court violated Battaglia's right to a fair and impartial jury and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution by granting the State's challenge for cause as to one death-qualified venire member.

Initially the State argues that Battaglia's claim is unexhausted because it was not "fairly presented" to the state courts. Response at 78-79. However, a claim is exhausted if the petitioner "asserts the claim in terms so particular as to call to mind a specific right protected by the [federal] Constitution or alleges a pattern of facts that is well within the mainstream of constitutional litigation." *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir.2005) (quotations and citation omitted).

*See also Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (it is enough if the petitioner alerts the state courts to the "federal nature" of such a claim).  *Kittelson* and *Baldwin* represent more current and controlling case law on the issue of exhaustion than the cases cited by the State.[6]  On direct appeal Battaglia alleged error under the Sixth and Fourteenth Amendments in terms sufficiently particular as to call to mind the constitutional right to a death-qualified jury.  The CCA expressly acknowledged this fact in its opinion and then proceeded to review the voir dire transcript for constitutional *Witherspoon*[7] error.  Petition at 60-61; Appellant's Brief at 54-64; 26 RR 58; *Battaglia v. State*, No. 74348 at 13-14.[8]  Moreover, the pattern of facts regarding Ausmenger's exclusion was well within the mainstream of *Witherspoon* litigation.  The fact that Battaglia's supporting argument in this proceeding relies on federal case law whereas his argument in prior state court proceedings "rested entirely on state law" is neither surprising nor outcome determinative. A state writ attorney would argue state case law during state court proceedings – even in support of a constitutional claim.  State courts apply federal constitutional law too and a state reviewing court would look first to its own precedents in resolving common constitutional claims.  Of course, citation to state precedent is largely inappropriate in the present proceeding because such precedent is not binding except as to interpretation of state law.  Thus, for purposes of the exhaustion doctrine,

---

[6] Notably, *Kittelson* and *Baldwin* were both decided *after Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 2997); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) and *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1989), upon which the State relies.

[7] *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

[8] In this regard it is also worth noting that if the last state court to consider the issue reaches the merits, then the federal court is also free to review the issue on its merits.  *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706, (1991); *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994).

the distinction makes no difference; Battaglia's claim is exhausted because his direct appeal presented an identical legal issue with respect to jury selection, and the facts underlying the claim have not changed from his state petition to his federal petition. *See generally Sam v. Louisiana*, 2011 WL 310377 * 4 (5th Cir. 2011) (discussing claim two).

Contrary to the State's assertion, Aemisegger's exclusion constituted a constitutional procedural due process violation. The trial court's failure to follow a non-discretionary legislative mandate regarding  jury selection affects the fundamental fairness of the entire proceeding. *See* Petition at 64 n. 27, 67-68.  *See also Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639 (1961) (constitutional error occurs where trial court fails to ask questions that could determine whether a juror is impartial).  Furthermore, the State fails to cite any authority to support its assertion that the State's questioning  "amounted to an explanation of the law" and does not cite where in the record Aemisegger testified that he would not be able to apply the legal definition of "society" regardless of his personal definition of the term.  And finally, the transcript itself reveals that Aemisegger was death-qualified.  He expressed no opposition to the death penalty and explained that "society" was "pretty much where you live."  A venire member is "clearly qualified" to be seated as a juror where he is able to consider the death penalty in an appropriate case.  *Gray v. Mississippi*, 481 U.S. 648, 659, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987).

8

ISSUE FIVE: Battaglia was deprived of effective assistance of trial counsel under the Sixth and Fourteenth Amendments to the United States Constitution because trial counsel: (1) failed to adequately question the venire about their views on mental illness as mitigation during voir dire; (2) failed to adequately argue mental illness as mitigation during final arguments at punishment; (3) failed to present the power-point presentation prepared for mitigation; and (4) failed to use Battaglia's father as a mitigation witness.

Initially the State argues that Battaglia's ineffective assistance of counsel claims are all procedurally defaulted because the State Court ruled that they were based on matters entirely in the appellate record and did not rely on any new evidence. Response at 90 citing *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005), and *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (claims which should have been raised on direct appeal but were not are procedurally defaulted). The State's argument in indefensible.

In order to preclude federal habeas review, a state procedural default must be based on independent and adequate state law grounds. To be independent, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief. To be "adequate" the procedural bar must be strictly or regularly followed by state courts and applied to a majority of similar claims. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (citation omitted); *Williams v. Puckett*, 283 F.3d 272, 280 (5th Cir. 2002) (short discussion); *Emery v. Johnson*, 139 F.3d 191, 195 (5th Cir. 1997). The State Court's ruling satisfies neither requirement. It is not independent because ineffective assistance of trial counsel claims are reviewed under the federal *Strickland* standard. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). And it is not adequate because the procedural bar is not strictly or regularly applied to a majority of ineffective assistance of trial counsel claims. To the contrary, Texas state courts have regularly held that a reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an

9

ineffective assistance claim. *See, e.g., Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). This is because "[i]n the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (quoting *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001)). Here, the motives behind trial counsel's actions were not adequately in the appellate record, much less "entirely in the appellate record." Indeed, during state habeas proceedings trial counsel was asked to supplement the appellate record with affidavits outlining the motives behind their actions at trial. II WR 443-450. Under such facts, Texas State Courts have repeatedly held that the proper vehicle for raising an ineffective assistance of trial counsel claim is an application for writ of habeas corpus. *See, e.g., Aldrich v. State*, 104 S.W.3d 890, 896 (Tex. Crim. App. 2003); *Lopez v. State*, ___ S.W.3d ___, 2011 WL 2408942 (Tex. Crim. App. 2011). For all the foregoing reasons, the State Court's procedural default decision was neither independent nor adequate and thus does not preclude federal habeas review.[9]

Regarding Battaglia's specific ineffective assistance claims the State relies on trial counsel's assertions of trial strategy to disprove deficient performance. However, it is not enough to avoid a finding of deficient performance that trial counsel *have* a trial strategy, trial counsel must actually *implement* that strategy. Thus, while it may have been trial counsel's intent to "question prospective jurors specifically about the effect of expert testimony concerning Battaglia's mental health" the

---

[9] Neither *Aguilar* nor *Gardner* support a contrary result because neither case found procedural default of an ineffective assistance of trial counsel claim. In *Aguilar*, the defendant raised a claim that he was shackled in front of the jury. 428 U.S. at 535. And in *Gardner*, the defendant raised a claim that admission of testimony based on statements made during a pretrial psychiatric examination violated his Fifth Amendment rights nine years after his trial. 955 S.W.2d at 190.

transcript reveals they did not. Petition at 72-73 nn. 28-29.[10] Likewise, while it may have been trial counsel's strategy was to "yield the guilt phase but to make a compelling case for life based on evidence of [Battaglia's] mental illness." II WR 443-444, 448-449, the record reveals a closing argument that largely omits and otherwise de-emphasizes the effect of the evidence of his mental health problems on the mitigation special issue. Petition at 74-77. The record also reveals that rather than "obscure the focus" of trial counsel's strategy to blame the killings on a psychotic break, Dr. Connell's powerpoint and John Battaglia Sr.'s testimony would have supported it. Petition at 77-85.

*Coble v. Quarterman*, 496 F.3d 430, 439 (5th Cir. 2007), does not "foreclose" Battaglia's claims; the evidence presented in *Coble* was qualitatively and quantitatively superior to that presented in Battaglia's case. Moreover, Coble's challenge was "to the strategy employed by trial counsel," Response at 105 quoting *Coble*, 496 F.3d at 437, whereas Battaglia's challenge is that the strategy elected was *not* employed by trial counsel – or at least not implemented by trial counsel in the specific and critical instances outlined in Battaglia's opening brief.

> ISSUE SEVEN: The State Court's failure to review the factual sufficiency of a finding of future dangerousness violated the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

Battaglia would distinguish his claim of entitlement to *State* court review of the factual sufficiency of the finding of future dangerousness from a request for factual sufficiency review in *federal* habeas proceedings. The distinction makes a difference. The factual sufficiency of the

---

[10] In a footnote, the State claims that with respect to jurors other than Paige and Holtkamp, Battaglia does not provide any argument and therefore his claims as to the remaining jurors are insufficiently briefed and waived. Response at 94 n. 20. The State is in error. The "argument" as to the remaining twelve jurors is the same as the argument as to Paige and Holtkamp and there is nothing about the waiver rule which requires Battaglia to re-type large portions of the voir dire transcript into his brief in order to preserve that argument for review.

evidence to support a criminal conviction or death sentence is not cognizable on federal habeas corpus review. *See Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir.1990); *West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996). Here, Battaglia's entitlement to *State* court review of the factual sufficiency is based on the simple fact that capital defendants are treated differently than other criminal defendants but the State has not advanced, and the CCA has not acknowledged, any legitimate state purpose for doing so. The perceived difficulty in engaging in such review is not a "legitimate state interest"; it is an excuse.

Respectfully Submitted,

Margaret Schmucker
Attorney for Petitioner John David Battaglia
Texas Bar No. 24030874

Law Office of Margaret Schmucker
512 East 11th Street, Suite 205
Austin, Texas 78701

Phone (512) 236-1590
Fax (512) 524-3479
E-Mail M.Schmucker@AppellateCourtLaw.com

CERTIFICATE OF SERVICE

I, Margaret Schmucker, certify that today, August 19, 2011, a copy of the reply brief for petitioner, was served electronically upon Erich Dryden, counsel for Respondent, by ECF generated Notice of Electronic Filing.

Margaret Schmucker
Attorney for Petitioner John David Battaglia

12