# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 20 2011
CLERK, U.S. DISTRICT COURT
By _____
Deputy

JOHN DAVID BATTAGLIA,
    Petitioner

    v.

RICK THALER, Director
Correctional Institution Division,
Texas Department Criminal Justice,
    Respondent

Cause No. 3-09-CV-1904-B-BD
(Texas Death-Penalty Case)

## PRO SE SUPPLEMENTAL REPLY

Respondent filed an ANSWER to the petitioner's original filed
BRIEF FOR PETITIONER and PRO SE SUPPLEMENTAL APPLICATION FOR WRIT
OF HABEAS CORPUS. Respondent's answer claims that petitioner
should be denied relief because he fails to demonstrate that he
is entitled to federal habeas relief. However, respondent's answer
should be denied because his arguements and defenses fail to prove
that the petitioner should be denied federal habeas relief.

## PETITIONER'S PRO SE SUPPLEMENTAL CLAIMS

**In** BRIEF FOR PETITIONER Docket Entry (DE) 27 appointed counsel
raised eight issues for relief of which she argued five in her
REPLY DE73 filed on August 19, 2011. Therefore, the petitioner
will REPLY and traverse his three CLAIMS raised in his PRO SE
SUPPLEMENTAL APPLICATION FOR WRIT OF HABEAS CORPUS DE62 which are:

#9 Petitioner was deprived of rights to a speedy and public trial,
and an impartial jury and due process of law under the Sixth and
Fourteenth Amendments of the United States Constitution because
the trial court judge was biase or corrupt, or both, because:
1) the judge had a conflict of interest with appointed defense
counsel; and 2) the judge had a conflict of interest with the
prosecution and Dallas District Attorneys Office.

10 The forcible administration of an antipsychotic medication
during the course of voir dire and trial violated petitioner's
rights to a fair trial as guarenteed by the Due Process Clause
of the Sixth & Fourteenth Amendments of the U.S. Constitution.

11 Trial counsel failed to provide effective assistance of counsel
at both phases of petitioner's trial due to an actual conflict
of interest which the trial court failed to inquire into for
which it knew or reasonably should have known in violation of
the Sixth & Fourteenth Amendments to the U.S. Constitution.

## RESPONDENT'S DEFENSES

The respondent does not argue the grounds of the petitioner's
three pro se supplemental claims, but instead raise the defenses
that the claims for relief fail because they are time-barred under
28 U.S.C. §2244(d) and are procedurally defaulted.

## STANDARD OF REVIEW

Petitioner's pro se claims were FAIRLY PRESENTED to both the trial
court and Court of Criminal Appeals (CCA). And both state courts
refused to rule on the merits of the claims. The claims raised
issues that high-lighted the "extreme malfunction in the state
criminal justice system," per Harrington v Richter,131 S.Ct.770
(2011) cited in respondent's answer DE66 (page 20),reflecting the
view that Section 2254(d) is a "guard against" these extreme malf-
unctions in the state criminal justice system which is evident
from the petitioner being blocked at every avenue to present his
claims before the state courts. Because of these state impediments
blocking petitioner's access to the courts, these courts were not
making the "ultimate decision" on petitioner's claims, but sat
blindly looking and his FAIRLY PRESENTED claims and ignored them.

Per Catalan v Cockrell,312 F3d 491(5thCir2002)("...we review only
the state court's decision, not its reasoning or written opinion.")
And in this instant case the petitioner's fairly presented claims
were not ruled on in any state court's decision, therefore the
standard raised by the respondent is not a bar to the petitioner,
but his only avenue to a court in which to present his prior
fairly presented claims. Per the Great Writs intended purpose.

Petitioner could not fully develope the factual basis for his
claims in the state courts per 28 U.S.C. §2254(e)(2) because the
state courts chose to ignone the fairly presented claims which
attacked the "extreme malfunction in the state criminal justice
system." The claims presented constitutional violations of such a
magnitude that they presented,"a convincing claim of actual
innocence that can only be estblished by newly discovered evidense."
William v Taylor,529 U.S.420(2000). But petitioner cannot discover
new evidence if he is first deprived of his liberty and property,

and second blocked for over nine years from attaining access to his own records, trial record, non-conflicted legal counsel, and access to the state courts.

For these exact reasons the Great Writ was established to provide the petitioner with an avenue for a fair hearing in which to attack the INTEGRITY of his state court conviction and sentence of death which is based on the violations of his Constitutional Rights due to the extremely malfunctioning Texas criminal justice system. Therefore, it is within this Court's discretion to grant the petitioner a hearing as is warranted by his meritorious claims.

### ARGUMENT
### PRO SE CLAIMS ARE NOT TIME-BARRED OR PROCEDURALLY DEFAULTED

Respondent's answer DE66 (page 128) states,"A. Battaglia's pro se allegations are subject to dismissal under 28 U.S.C.§2244(d)." And "Battaglia concedes that he is raising new claims in his supplemental petition, and not merely reasserting the allegations raised in his initial petition." This statement is false in that petitioner has conceded on such thing.

Petitioner Motioned To Amend Federal Petition...DE39, and in ORDER DE44, the Court stated,"To address these concerns, the court determined that petitioner should be allowed to represent himself for the limited purpose of filing a supplemental application for writ of habeas corpus raising any additional claims he deems appropriate. Accordingly, petitioner's motions for self-representation [Doc.#38] and to amend the writ filed by appointed counsel [Doc.#39] are granted in part."

Nowhere did the petitioner request to raise "new claims" or did the court grant permission to raise "new claims" as the respondent is trying to allege as a defense against petitioner's claims. In Hernandez v Thaler,630 F3d 420(5thCir2011), the Fifth Ciruit states,"Pro se petitions are not held to the same stringent and rigorous standards as are pleadings filed by lawyers, and the filings of a pro se habeas petitioner are entitled to the benefit of liberal construction; it is the substance of the relief sought, not the labels attached to it, that determines the true nature and

operating effect of a habeas filing."

In his pro se writ DE62 petitioner had refered (page 2of30) to the "relation-back" effect of Fed.R.Civ.P.,Rule 15,Amended and Supplemental Pleadings, Rule 15(c)(1) and Rule 15(d), to incorporate the pro se petition and claims into the original and pending writ DE27 which respondent acknowledges was timely filed on September 22, 2010. In 28 USC §2241 APPLICATION, ¶3,"It may be amended or supplemented as provided in the rules of procedure applicable to civil actions." Rule 15(a)(1),"Amending as a matter of course. A party may amend its pleading once as a matter of course within:... (2) Other Amendments. In all other cases, a party may amend its pleading only with opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 15(c)(1),"When an Amendment Relates Back [to the date of the original pleading]: Rule 15(d) Supplemental pleadings states,"... The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specific time." This is what the petitioner believes the Court intended in its ORDER DE44 and not the respondent's construction of a "new claim" (as did appointed counsel, oddly enough), ☛ which would mean one "that happened after the date of the pleading to be supplemented." Which is not what the petitioner intended or what he has presented in his pro se claims.

See In re Coastal plains Inc.,179 F3d 197(5thCir1999)(An amendment to a complaint will relate back to the date of the original complaint if the claim asserted in the amended pleading arises out of conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.FRCP Rule 15(c)), see McClellon v Lone Stor Gas Co.,66 F3d 98(5thCir1995)(Amendments that correct deficiences in pleading or serve to expand facts alleged in original pleading satisfy relation-back requirements.FRCP Rule 15(c)), see McClellon,Id.(Amended complaint filed to cure pleading deficiency relate back to filing date of original, albeit deficient complaint, where amended complaint properly pleads what party

attempted to set forth in original complaint.FRCP Rule 8,15), and
see U.S. v GONZALEZ,590 F3d 765(5thCir2009)(Civil procedure rule
governing amendment of pleading applies to federal habeas proceed-
ings.FRCP Rule 15,USCA.)

Just because petitioner's appointed counsel refused to present the
previously "fairly presented" claims and attempted to "sandbag" the
petitioner's writ DE27, in the exact same manner as the appointed state
counsels had, does not mean that the petitioner cannot try to over-
come this intentional "sabotaging" of his original file federal
habeas petition. In appointed counsel's Ex parte motions for funds
DE12 (have only seen ORDER DE16) and Ex parte reply DE43, she had
acknowledged the possibility of petitioner's claim of being forcibly
medicated with an anti-psychotic, but chose not to investigate or
present the issue because it was not stated on the prior state writ
and is currently attempting to mislead the Court as to protect her
reputation at the expense of the petitioner's interests in this
case and of his life.

Respondent then states,"Therefore, Battaglia was required to present
all claims to this Court by September 23, 2010"(page 129) Which in
fact the petitioner had done prior to the September 23, 2010 date
through the filing of his NOTICES and MOTIONS with the Court. The
Notices and Motions (specifically document #'s 2,3,14,24 & 26 filed
prior to 9/23/10) "fairly presented" all of the petitioner's claims
that were deliberately and erroneously omitted from the original
writ DE27 filed by appointed counsel.(see Motion To Amend DE39)

On April 15, 2010 petitioner filed NOTICE OF CONFLICT OF INTEREST
WITH APPOINTED COUNSEL DE14 asking for new or substitute counsel
and attached as EXHIBITS a number of his previously filed state
court filings, with both the trial court and CCA, setting out his
claims for the state courts. Petitioner is unable to obtain copies
of the Court's records/docket for cross referencing to his REPLY
the Document/PageID#s of his prior submissions and will, therefor,
attach as EXHIBITS 1 through 19 to this REPLY copies obtained from
his web-site/file archives which should match his prior submission.
The following is a brief explaination of each attached EXHIBITS.

**EXHIBIT EXPLANATIONS**
1. Proof of petitioner's status as a federal relator & expert and basis of his protected witness status and IRS-CID contacts.

2. First state court filing of ineffective and conflicted appoint appeal counsel and request for new counsel.

3. Court Denial of request of new counsel; proof of filing.

4. NOTICE TO CCA (and trial court) of conflict of interest and counsel's Confrontation Clause Violations; FAIRLY PRESENTED.

5. NOTICE to attorney listed on state writ of conflict of interest and being drugged by court & counsel; to document non-action.

6. NOTICE TO DALLAS D.A.(and state courts) of criminal conspiracy involving State's witnesses and false prosecutions used at trial.

7. NOTICE TO MEDIA of criminal conspiracy with US Attorney, D.A., and trial witnesses;FAIRLY PRESENTED to state & US Suprem Courts.

8. NOTICE TO STATE BAR (and state courts) of perjuring attorney witness, Confrontation & BRADY Violations; FAIRLY PRESENTED.

9. NOTICE TO US ATTORNEY GENERAL & transmittal of filings to LAW ENFORCEMENT; FAIRLY PRESENTED to state and U.S. Supreme Courts.

10. NOTICE TO ATTORNEY GENERAL TEXAS, transmit State Bar Notice of perjured lawyer witness to LAW ENFORCEMENT; FAIRLY PRESENTED.

11. NOTICE TO TRIAL COURT JUDGE WARDER raising pro se claims barred by appeal counsel; FAIRLY PRESENTED to CCA and US Supreme Court.

12. NOTICE TO U.S. SUPREME COURT with EXHIBITS 9 & 11 to document ineffective & conflicted counsel; FAIRLY PRESENTED TO FEDERAL.

13. PRO SE ANSWER/REPLY TO STATE'S ANSWER to present pro se claims and rebut and document TAMPERED TRIAL RECORD and RIGGING OF JURY by judge, D.A., appointed counsel,and court reporter;FAIR PRESent.

14. DOCUMENTATION OF FILING PRO SE ANSWER/REPLY WITH CCA and claim of conflict of interest of counsel; FAIRLY PRESENTED TO CCA.

15. DOCUMENTATION OF RECIEPT OF EXHIBITS SUBMITTED TO US A.G.,EX.9.

16. NOTICE TO CCA JUDGE FOR FAIR PRESENTATION OF CLAIMS OF COUNSEL CONFLICT INTEREST, CONSPIRACY, BRADY,& ACTUAL INNOCENCE THEORY.

17. NOTICE MEDIA TO DOCUMENT COUNSEL's CONFLICT OF INTEREST and VIOLATION OF ATTORNEY-CLIENT PRIVILEGE;FAIRLY PRESENTED to courts.

18. DOCUMENT CLAIM OF ACTUAL INNOCENCE & ALT. THEORY,FAIR PRESENT.

19. NOTICE TO TRIAL COURT OF CONFLICTED COUNSEL;FAIRLY PRESENTED.

Tne EXHIBITS document filings with state courts, the U.S.Supreme
Court, Attorney General of Texas, U.S. Attorney General, and the
F.B.I. (not mentioned by counsel in DE43.) Therefore, petitioner's
claims were previously submitted and "FAIRLY PRESENTED" to the
state courts prior to their being submitted to this Court. See
Anderson v Johnson,338 F3d 382(5thCir2003)(Exhaustion requires
only that the federal claim has been fairly presented to the state's
highest court before a habeas petitioner pursues federal relief,
either via direct appeal or state post-conviction proceeding.§2254
(b)(1)),(Federal habeas court reviews on a state court's decision,
and not the written opinion explaining the decision.),(Requirement
that federal habeas petition fully exhaust remedies...is not
jurisdictional, but reflects a policy of federal-state comity
designed to give the state an initial opportunity to pass upon and
correct alleged violation of its prisoner's federal rights.§2254)
and (Although exhaustion inquires are fact-specific, as a general
rule dismissal of federal habeas petition is not required when
evidence presented for the first time in a habeas proceeding suppl-
ements, but does not fundamentaly alter, the claim presented to
the state courts.§2254) In U.S. v Gonzales,592 F3d 675(5thCir2009)
(footnote 3."An argument could be made that these documents were
sufficient to put court on notice of his claim within AEDPA's one-
year period.") Which again is what the petitioner is also claiming
in this REPLY. In Coleman v Dretke,395 F3d 216(5thCir2004) [9]"...
The state argues that Coleman did not exhaust his state remedies,
because he never properly presented two of his claims to the state
court. A prisoner fairly presents a claim to the state court when
she asserts the claim "in terms so particular as to call to mind
a specific right protected by the Constitution" or alleges " a
pattern of facts that is well within the mainstream of constitutional
litigation." And at [10]"We conclude that Coleman's REPLY adequately
presented his claims to the state court,...The state court's
failure to expressly rule on those claims does not prevent the
claim from being exhausted. Ridgway v Baker,720 F2d 1409 (5thCir1983).
Coleman successfully exhausted his state remedies and has not
defaulted any claims," Petitioner's claims are not defaulted either.

In addition respondent states that the limitation period was not
tolled while petition was pending per Duncan v Walker,121 S.Ct.2120
(2001). Which is incorrect in this case. DUNCAN deals with a 1st &
2nd federal petition that did not return to state court to exhaust
and is not applicable to petitioner's amended/supplemented pleading
which is not a second or successive petitioner per Rules Governing
§2254 Cases, Rule 9. Also DUNCAN resolves a conflict in terms between
the Courts of Appeals, and per both Justice Souter's (concurring)
and Justice Stevens' (concurring) opinions;"...that nothing bars a
district court from retaining jurisdiction pending complete exhaus-
tion of state remedies, and that a claim for equitable tolling
could present a serious issue of facts different from those before
us." And Justice Steven',"I write separately to add two observations
regarding the equitable powers of the federal courts, which are
uneffected by today's decision construing a single provision of the
AEDPA....federal courts may well conclude the Congress simply
overlooked the class of petitions whose timely filed habeas petitions
remain pending in district court past the limitation period,...
Today's ruling does not preclude that possiblity, given the limited
issue presented in this case and the Court's corresponding limited
holding."

Therefore, petitioner's pro se writ and claims are not new claims
and are not untimely claims, either. Petitioner attempted to address
the time-bar issue in his pro se writ as stated above, maybe not in
a very lawyerly manner, but clear enough to relate his amended
petition and claims back to his original and timely filed federal
habeas petition. See Daly v Sprague,742 F2d 896(5thCir1984)(Two
criteria are employed to determine appropriateness of new pleadings:
timeliness of amendments with regard to progress of the case as a
whole, and germaneness ~~with~regard~t~~ of subject matter of the amend-
ment to subject matter of the suit.) Again, amended and supplemented
petition and claims are not untimely and are not new claims as
stated by respondent in his answer as a defense against petitioner's
claims. See Summit Office Park,Inc. v US Steel Corp.,639 F2d 1278
(5thCir 1981)(The purpose of federal rule permitting amendments is
to assist the disposition of litigation on the merits of the case

rather than having the pleading become ends in themselves.FRCP
Rule 15(a)).

Then respondent states (page 130),"Battaglia does not address the
time-bar issue in the instant petition. To the extent he might claim
he is entitled to equitable tolling...Holland v Florida,130 S.Ct.
2549(2010)...Such circumstances do not exist in this case." This
is somewhat correct and a bit confusing also; equitable tolling per
HOLLAND does not exist in the instant case.

HOLLAND's facts are: a Florida state prisoner's lawyer failed to
file a federal habeas petition before the AEDPA limitation period
expired and then the prisoner filed a pro se writ five weeks late.
Then federal courts held pro se petition untimely and lawyer's
negligence did not amount to "extrordinary circumstances" warranting
equitable tolling. Supreme Court reversed rejecting more rigid
standard for those stated at page 130 of answer DE66. HOLLAND
pertains to a prisoner missing the AEDPA deadline because of his
attorney's gross negligence which is not the issue in the present
case.

Petitioner's attorney filed a timely, but "unauthorized and false"
petition DE27 and petitioner motioned to "Amend and make it right
and correct" DE39. Petitioner's Motion To Amend DE39 also set out
that the petitioner could amend the original timely filed writ per
Nelson v Quarterman,215 Fed.Appx.396(5thCir2007) which states,
"The district court was correct to conclude that Nelson knew about
the impending deadline and could have filed a pro se skeletal
petition before the limitation period expired. See Lookingbill v
Cockrell,293 F3d 256,264,nl3(5thCir2002)." In the instant case
petitioner's questionable attorney filed a timely petition DE27
which is basically the same as a skeletal petition since she managed
to leave all of the meat off of the bones (the basic structure of
the petitioner's claims), then the pro se petitioner later came in
on Motion DE39 and Court ORDER DE44 to flesh out his claims.
LOOKINGBILL states,"Habeas petition is "pending" so as to toll
limitation period, only after a petition for writ of habeas corpus
itself is filed. 28 USCA§2244(d)(2)" and "Filing of federal habeas
petition, not of a motion for appointment of counsel, tolls

limitations period under AEDPA for federal habeas petitions..."
and "AEDPA's 1 year limitation period is subject to eqitable tolling
and is not a jurisdictional bar.28USCA§2244(d)." Also in the Motiion
To Amend DE39 petetioner asked the Court to ORDER the state to
"HOLD-OFF" on filing aresponse, so as to give petitioner time to
amend the petition himself per Willis v Collins,989 F2d 187 (5th
Cirl993)(And a party may amend pleading at any time before respon-
sive pleading is served. FRCP Rule 15(a),28USCA.) See Bliss v Samson
Resources Co,163 F.R.D.3(E.D.Tex1995)(Plantiff's motion for leave
to amend complaint for which no responsive pleading has been served
must be granted.FRCP Rule 15(a)), and McClellon,supra,(Court
should freely give complainzant, especially pro se complainant leave
to amend defective allegations in pleading.)

Even if the Court were to rule the petitioner's writ and claims
Time-Barred as repondent suggests. Per Day v Donough,126 S.Ct.1675
(2006)(HOLDING;2)before acting on its own initiative to dismiss
petition as untimely, court must accord the parties fair notice
and opportunity to present their positions.) At which point the
petitioner would assert that he is entitlaed to equitable tolling
by showing he meets the diligence and extraordinary circumstances
criteria of HOLLAND,supra; by alleging that the state created an
"unconstitutional" impediment that prevented petitioner from timely
filing per Hatcher v Quarterman,305 Fed Appx 195(5thCir2008); that
petitioner's failure to satisfy the statute of limitation resulted
from external factors beyond his control per In re Lewis,484 F3d
793(5thCir2007); and that he diligently pursued relief in both
state and federal courts per In re Lewis,Id. That is "reasonable
diligence" per HOLLAND,supra. And as per Day v Donough,supra,
"Rather, the Court holds that a district court has discretion to
decide whether the administration of justice is better served by
dismissing the case on statute of limitations grounds or by reaching
the merits of the petition." And "It would make scant sense to
distinguish AEDPA's time bar from these other threshold constraints
on federal habeas petitioners (exhaustion, procedral default, and
non retroactive activity.)" And again, per the LOOKINGBELL case

cited by respondent on this issue,"Habeas petition is "pending" so as to toll limitation periods only after a petition for a writ of habeas corpus itself is filed," which the Fifth Circuit stated in 2002, a year after DUNCAN, supra, was decided by the Supreme Court.

As far as petitioner blaming his federal habeas attorney for not raising his claims correctly or timely, petitioner would avail himself of the less stringent requirements of HOLLAND,supra, and show "sever attworney negligence" or "gross negligence" by his attorney as the cause of the time-bar without any contributing fault by the petitioner, as he has well documented previously for this Court. And though as respondent has stated,"a petitioner has no right to an attorney who agrees with him," petitioner does have a right to an attorney who does not write to him that,"he is a murderer" or sends him autopsy photos of his dead daughters with requested legal documents and court records. Or her refusing to let petitioner's father know that petitioner is O.K. after TDCJ blocked their mail for months after petitioner filed his May 13, 2011 pro se writ DE62.

Because respondent's defense; that petitioner's writ and claims are "new claims" is false, petitioner does not need to demonstrate extraordinary circumstances or egregious attorney error, or any attorney error to equitable toll his writ and claims, therefore petitioner's writ and claims should be ruled as timely and as having been "fairly presented" in the state's courts and are therefore, exhausted as well in the state's courts and in this Court.

The Court should also take Notice of appointed counsel's conduct in not even pointing out these errors in the state's answer DE66 to the petitioner, but instead wrote the petitioner that his pro se claims were barred. And her failure to even traverse her own raised issues in her REPLY DE73 with one of the petitioner's exceptions as a means of rebuttal. The Court should reconsider the petitioner's prior NOTICES and requests for new or substitute counsel in this action to protect the petitioner from any more attempts by Ms Schmucker to sabotage petitioner's appeal under the guise of gross professional misconduct, bias, and conflicted interests parading as professionalism.He does deserve Due PRocess.

In respondent's ANSWER DE66 (page 131) he raises his second a
second defense which states,"B. Battaglia's allegations are
procedurally barred. Battaglia concedes that the claims in his
supplemental petition are not exhausted."

Petitioner did state that his poo se claims were not exhausted in
state court for the fact that both his direct and state habeas
appeal counsels refused to raise or present his claims in his state
appeals due to their conflicts of interest. Per Coleman v Thomson,
111 S.Ct.2546(1991)(federal habeas review of claims is barred unless
prisoner can demonstrate cause for default and actual prejudice as
result of alleged violation of federal law, or demonstrate that
failure to consider claims will result in fundamental miscarriage
of justice.) Which petitioner did raise in the context of his pro
se writ DE62 and in the writ's companion Motion for Stay and
Abayance DE60, citing Ruiz v Quarterman,504 F3d 523(5thCir2007)
(The state of Texas interfered with Ruiz's constitutional rights
at every critical turn in this litigation, appointing ineffective
trial counsel who failed to investigate his past; reappointing
same on direct appeal, despite Ruiz's pleas for new lawyer; and
finally providing Ruiz with incompetent state habeas counsel, who
presented the CCA with 'a set of boilerplate, frivolous claims')

Petitioner's state and federal appointed counsels raise multiple
ineffective assistance of counsel claims in both his state and
federal appeals, but refused to raise the facts and grounds based
on counsel's actual conflict of interest because, a petitioner
alleges, both appointed habeas counsels also labored under similar
conflicts of interest. Per Anderson v Sirmons,476 F3d 1131(10thCir
2007)(Anderson argued the district court should nevertheless
decide the unexhausted issue on the merits because both direct
appeal counsel and state provided post-conviction attorneys
harbored under a actual conflict of interest which precluded him
from receiving effective assistance of counsel.See 28USCA§2254(b)
(1)(B)(ii)(provides an exception to the general exhaustion require-
ment when "circumstances exist that render [state court remedies]
ineffective to protect the rights of the applicant.")) Which peti-

itioner also pointed out in his pro se writ by stating,"The state courts appear less interested in pursueing this issue or claim because of potential conflicts and loyalties."DE62 (page 24of30) Also see EXHIBITS 4 through 19 for fairly presenting these conflict of interests to the state courts and U.S. Supreme Court since 2005.

Per Murray v Carrier,106 S.Ct.2639(1986)(Cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim) (Counsel's failure to raise particular claim or claims on appeal is to be scrutinized under cause and prejudice test when failure is treated as procedural default by state court.)(...or some interference by officials made compliance with state's procedural impracticable, would constitute cause for procedural default.)(... it is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor, i.e.,"imputed to the State.")

See Kimmelman v Morrison,106 S.Ct.2574 (Supreme Court set forth reasons why ineffective assistance of counsel claims should be treated differently from other habeas claims in considering proce-dural bar questions.) See Jennings v Prukett,7 F3d 782(8thCir1993) ("an attorney's conflict of interest," potentially including a post-conviction counsel's conflict, "maybe extrenal to his client's defense, and thus a basis for finding cause" to excuse procedural default.) And in English v Cody,146 F3d 1257(10thCir1998)(Conflict itself demonstrated a denial of the right to have effective assist-ance of counsel.) and (footnote 9....argues persuasively that he could not raise this ground on direct appeal or in his first habeas petition because his appellate counsel operated under a conflict of interest. Cuyler v Sullivan,11 S.Ct.1708(1980) and Jenning v Purkett, suprs.) See also, Mickens v Taylor,122 S.Ct.1237(2002), Earp v Ornoski,431 F3d 1158(9thCir2005),U.S. v Shwayder,312 F3d 1109 (9th Cir2002), and Hovey v Ayers,458 F3d 892(9thCir2006) on conflicts.

So per Coleman v Thompson,supra,"Attorney error that constitutes ineffective assistance of counsel is cause," as petitioner's claims

raise in his pro se writ DE62. Again,the petitioner should be
afforded "liberal construction" of his claims and rebuttals to
defenses (since he has only a few months to try and learn just a
few section of the Fed.R.Civ.P.) per Hernandez v Thaler, supra,
because of his pro se status. It is obvious that petitioner has
raised these ineffective assistance of counsel and actual conflict
of interest of counsel claims for 1) they violated the petitioner's
Counsel Clause rights under the SIXTH AMENDMENT: AND 2) they over-
come any potential procedural default by either the cause and
prejudice test or by the magnitude of the constitutional violations
throught the fundamental miscarriage of justice threshold based on
actual innocence, which petitioner can actually and factually meet
dispite respondemt's assertions to the contrary.

But the above would not be necessary if the Court rules that the
petitioner's "fairly presented" claims to the state's courts, as
related in the above time-bar issue and supported by the previously
submitted EXHIBITS, adequately present his pro se claims to the
state courts and, thus, those claims are not procedurally defaulted.

Per Coleman v Dretke,395 F3d 216(5thCir2004)(The state argues that
Coleman did not exhaust his state remedies, because he never prop-
erly presented two of his claims to the state court. A prisoner
fairly presents a claim to the state court when she asserts the
claim "in terms so particular as to call to mind a specific right
protected by the Constitution" or alleges "a pattern of facts that
is well within the mainstream of constitutional litigation" fn 7,
Evans v Court of Common Pleas,959 F2d 1227 (2ndCir1992)(We conclude
that Coleman's reply adequately presented his claims to the state
court,...The state court's failure to expressly rule on those claims
does not prevent the claims from being exhausted. fn.8 Ridgeway v
Baker,720 F2d 1409(5thCir1983)) See Ridgeway v Baker,Id.(Where
defandant presented his habeas petition to Texas intermediate and
suprem court, both of which denied  without explanation his claim
that he was denied due process...,federal petition was not barred
on ground he failed to exhaust state remedies. U.S.C.A. Const.
Amend. 14)

Petitioner has NOTICED the Court previously of appointed counsel's
refusal to properly exhaust these claims in his April 15, 2010 DE14,
August 24, 2010 DE24, and September 13, 2010 DE26. Why counsel
would not address the "fairly presented" status of his Notices to
the state courts and filed Pro Se ANSWER To State's Answer (REPLY)
to his state filed habeas writ is one more indication of Ms Schucker's
incompetence or actual conflict of interest and prejudice/bias
towards the petitioner. In petitioner's social and economic circles
he is about as close to being considered an idiot as possible, but
still could figure out that he had to raise his claims in both the
state courts and barring their consideration, would than need to
present them to the federal court. But once again as citied in
Ruiz v Quarterman, supra, petitioner was appointed another under-
cover executioner from the Texas A.G. office (or Dallas D.A.'s),
secretly tasked with making sure petitioner could not raise any
realistic claims of any merit and then rolling-over immediately
upon the state's defenses. Especially any claims that might touch
on "assaults on the professional and personal integrity of these
individuals [attorneys]" per Notice DE14 quoting appointed counsel.
Counsel failed to adequately traverse her own claims (issues) in
her reply DE73 (or did she know they were just boiler-plates put
up by state habeas counsel to add pages to petitioner's writ) and
would not even use petitioner's pro se grounds (much less work with
the petitioer) to save her own presented issues #2 and #6, much
less assist petitioner with his REPLY, other than giving him
purposely misleading legal advice.

This is a further demonstration of why Texas has executed over 470
individuals since the reinstatement of capital punishment and
during the exact same time period the state of California has
executed about 10 persons. Given the relative similarities
between the two states (other than slavery and racism) even an
idiot such as the petitioner can see that the disparity in the
number of executions is not based on the law (both in America),
but in fact on the abuse and preversion of the law in the State of
Texas due to its history of slavery and racism (University of Texaas
Law School Dean was Ku Klu Klan leader in last century).

Per Ridgeway v Baker, supra,(once federal claim has been submitted
to state's highest court, exhaustion requirement is satisfied, even
if state court fails to address federal claim.) And this Court can
see from the attached EXHIBITS filed and submitted to both state
courts that petitioner has "fairly presented" the "actively repre-
sented conflicting interests" and "an actual conflict of interest
adversely affected his layer's performance." That was STRICKLAND
quoting CUYLER as taken from Johnson v State,169 SW3d 223 (CCA 2005)
(Once the predicate for a conflict of interest claim is shown, no
further showing of prejudice is required, at least in part because
a conflict of interest affects the entire representation.) But if
a petitioner has a court appointed appeal counsel who refuses to
present his claim in her writ and the courts in Texas refuse to
acknowledge any writing from a petitioner who has appointed state
counsel (who should be termed "pit-bull-counsels" because once they
get their teeth (fees) into you you can not get rid of them), what
is he to do? How can a petitioner get around this state impediment?
Of course! Get rid of state habeas counsel at the federal courthouse
and have federal court appoint counsel and present claims in federal
writ, but wait, she refuses to raise the claims,too. So naturally
the only door possibly left open to a petitioner is to move the
Court to allow him to represent himself and amend his timely filed
writ to present his previously "fairly presented" claims from the
state courts to the federal court. But still having to get past
appointed counsel's buddys in the Texas A.G. office because of the
potentially embarassing nature of the petitioner's claims as they
relate to both the conduct of the judicial system in Texas as
effects the death-penalty and the other aspect of this case; the
criminal and moral crimes committed between the state's prejured
witnesses and elected and political figures who have assisted
these witnesses and~elected "conceal" their crimes and crimes of
moral turpitude. Per petitioner's EXHIBIT #1, US v Texas Data Control
No. 3:95-cv-550-X, petitioner was the "relator" in that federal
FALSE CLAIMS ACT (FCA) trial in 1998 (which the goverment stepped
in to prosecute) and therefore took on protected status per
18 U.S.C. §1512(a)(1)(c)(Tampering with a witness, victim, or
informant)(a federal crime to kill or attempt to kill...in order

to prevent the communication of information by "any person" to the
Court.) Which is what trial counsel and both state and federal
appointed counsel are attempting to do. When petitioner Noticed
court DE8 regarding potential conflicts and attached a document
with IRS and DOJ, appointed counsel returned the document to the
petitioner prior to her receiving any prior counsel's files and
stated she would not address the issue, as if she had full knowledge
of the issues in the petitioner's case within hours of her being
appointed as his counsel.

State and appointed counsels do not want petitioner to be able to
cross-examine and impeach Ms Laborde-Ghetti or Ms Pearle about their
threats to have the petitioner killed for his knowledge of their
criminal activities. As Ms Laborde-Ghetti stated by hiring members
of the Louisiana Ku Klu Klan to travel to Texas and then murder the
petitioner for getting her fired from her law firm in Dallas, Akin,
Gump, Strauss, Hauer and Feld, which was recorded and documented
in petitioner's legal files and diary, both of which were taken by
the Dallas D.A. office, leaked to the media and the writer of a
true crime book on the petitioner's case, and then concealed from
cross-examination and impeachment in violation of BRADY RULE with
the full cooperation and assistance of trial counsel, Mr Johnson.

Ms Laborde-Ghetti would have never traveled to a Texas courtroom
to be cross-examined unless she had an absolute gaurentee that she
would not be questioned about her past and the records (including
audio tapes) that were in the petitioner's possession; including a
certified hearing transcript from Judge Carolyn Wright's court in
1988 where Ms Laborde-Ghetti admitted under oath to crimes of moral
turpitude, fraud, and prejury to a court; which on its face would
be sufficient evidence to establish Ms Laborde-Ghetti as a career
criminal and liar, and therefore not eligible to testify in a Texas
capital trial. But was suppressed by both prosecution and defense
to allow her to further perjure herself on the witness-stand as she
had during her and petitioner's civil divorce proceedings; and as
she had during her and Mr Clayton's civil divorce proceedings; her
personal federal bankruptcy where she was indicted for fraud; and
during a bankruptcy hearing at which the petitioner was present when

when Ms Labord testified falsely to a federal judge so she and her
law firm could defraud a party of over $1 million by submitting
false and back-dated records to the court which she and other firm
lawyers had previously discussed with petitioner and why petitioner
was jailed for ten days in 1986, not as stated at his trial. See
EXHIBIT #4. July 6, 2004 Letter to CCA transmitting attached State
Bar Texas letter same date relating the above facts.

As stated in pro se writ, this is the exact same conduct as in the
Ex parte Michael Roy Toney (cited on page 28of30 DE62) where the
prosecutors from Ft. Worth hid exculpitory and impeachment evidence
about the state's two main witnesses prior attempts to kill Mr Toney
so as to project a false impression of credibility of the witnesses
which the later discovery of the hidden BRADY materials revealed
they did not posses at trial. As was the case with Ms laborde-Ghetti,
it was so much more so with regard to Ms Pearle testimony. Because
Ms pearle's testimony was the basis for the credible and probable
cause for the state's admitted illegal search and seizure which was
allowed at trial under exigent circumstances soley based on Ms Pearl's
credibility. See Brown v State,481 SW2d 106,(Where probable cause
for warrantless search will not be upheld merely because exigencies
of situation preclude obtaining of a warrant)(Probable cause for
warrantless search exists where facts and circumstances whioh are
within knowledge of officer on scene and of which he has reasonable
trustworthy information)(Search cannot be justified by what it un-
covers.) But because Ms Pearle had no credibility per petitioner's
BRADY materials and contacts with police and IRS-CID Agents(which
would substantiate Ms Pearle's threats to kill both the petitioner
and his children for talking to the IRS-CID Agents about her and
Judge John M. Marshall's criminal activities and source of funds),
the state, again, needed to project a false impression of Ms pearl's
credibility at trial in order to allow their illegal warrantless
search and seizure,(when direct appeal counsel refused to raise this
and other issues correctly, because it does take some skill to be
able to sandbag these issues on the record,I realized my recognizing him
from years before as a pedophile,as Mr Lollar was, connected him and
Mr Johnson and Mr Lollar and proSecutor Mr Blackmon's conflict.)

And, again, Ms Pearle would have never taken the witness-stand unless she had absolute guarentee of her not being questioned about her claim of murdering MarkShawn Hutchins in her drug-house in August of 1982 and then hiding out in New York City for six months afterwards working as a stripped and high-priced prostitute while legal steps were being taken to close the murder investigation in the Dallas D.A. office by arranging a "No-bill" of her father for the murder on the grounds of self-defense, even though the Dallas Police Report showed the boy was on his knees in the back yard grass, then vomited, and then was shot directly in the back and then in the back of the head and his body dragged to the alley (by Ms Pearle as she claimed to petitioner on numerous occassions after her mental break-down in 1995 from the stress of being at total fraud to all our Highland Park neighbors which resulted in her near suicide and threats to kill her two children then relapse into drug addiction.)

In 2001 Ms Pearle called petitioner and stated she would have a bullet placed in the back of his head for his contacting the IRS-CID Agents and talking to them about her business. Petitioner then called 911 and two Dallas Police Officers came to his home and gave him a police call-sheet to document the incident. This also was taken and concealed by the Dallas D.A. office and Defense counsel refused to cross-examine Ms Pearle or obtain the missing report from the police. And again, the sole purpose being the shoring up of the false and fraudulent impression of Ms Pearle being a credible and trustworthy person and witness. When petitioner met Ms pearle she and her parents claimed she was a "cousin" of then president's son, Mr Bush, and this was confirmed by a number of lawyers and judges met through the Pearl family. Now, petitioner is not quite as dumb as he looks and knew there was something else behind this supposed "relationship", just as he knew that Ms pearl's parents were died-in-the-wool Nazis (but after ten years of preparing tax returns for the very wealthy in Dallas, one does learn to read between the lines)(so to speak.) So petitioner was very interested in this unusual young, skinny, gun-toting, ex-drug addict/lesbian as she was equally interested in a big physically-fit, gun-toting, ex-Marine/Hippie. And is why the State opposes any inquiry into Ms Pearle's background and credibility.

Respont states (page 132),"It is evident the Battaglia cannot demonstrate cause because he has offered no reason why he could not have raised these claims when he filed his state habeas application." But, petitioner has over and over again, tried to raise these claims for his state writ to deaf ears over nine years without one reply, other than he is "nuts", "crazy,""incompetent,"etc...and the worst client in the world." (But then I have the H & R BLOCK of lawyers.)

In addition, petitioner's miscarriage of justice claim is not frivolous as respondent states and is a valid gateway through which petitioner can pass if his pro se claims and other issues are ruled time-barred and procedurally defaulted by the Court. Though the petitioner should not have to reach the exceptions to the time-bar and procedural defaults if the Court holds his claims were "fairly presented" to the state courts. See Lewis v Quarterman,541 F3d 280 (5thCir2008)(This exhaustion requirement is satisfied if the substance of petitioner's claims have been fairly presented to the state court. Anderson v Johnson,338 F3d 383(5thCir2003))

Respondent (page 134) states,"X. Battaglia is not entitled to an Evidentiary Hearing. Director does not concede that Battaglia pursue his claim with diligence in the state court, which is necessary for a hearing pursuant to 28 USC §2254(b)." But as alluded to in this REPLY and in all of petitioner's prior filings with the courts, petitioner has been more than diligent in pursuing his claims in an environment dead set on denying the petitioner any of his U.S. Constitutional Rights as an American Citizen, and mostly on the grounds of someone's prior prostitute's claims that the petitioner has too many vowels in his last name and that his genes were not as white as his neighbors. Justice requires that the Court hold an evidentriary hearing, not the Director's conjectures.

And as far as the "state record is more than adequate to resolve these issues." Petitioner would contend that the provenance and credibility of "this record" is very suspect, see EXHIBIT #13; Pro Se ANWSER. Petitioner has claimed that he Noticed direct appleal, state and federal habeas counsels of missing items from the record and all refuse to confirm or deny, a trap for lawyers if in writing.

This record the state wants to have the Court rely on is suspect
as to its validity and veracity due to 1) its court reported and
verifyer being jailed twice for contempt by the CCA for not producing
the record as ORDERED (did it take that long to go line by line to
remove all of the evidence of misconduct as alleged in pro se writ?)
and; 2) per EXHIBIT #13, PRO SE ANSWER/REPLY to state habeas writ
alleging the court reporter, Ms Mary Belton, herself was participating
in the illegal signalling and rigging of the jury during the voir
dire. This is not a "new claim",but if the Court is able to ask
questions or depose or examine the recording from which this record
was produced (because no appoint counsel would dare to) then the
petitioner would have the "exculpatory scientific evidence, trust-
worthy eyewitnes accounts, or critical physical evidence" which x
would be "new reliable evidence" per the gateways of House v Bell
and Schlup v Delo cited by respondent as the essentially predictive
standards whether reasonable jurours would have reasonable doubt in
light of all the evidence per House v Bell. The state does not want
expose its suborned perjury and hidden Brady material and warrantless
searsh and seizure on which petitioner's total trial was based.

Petitioner only first saw portions of his trial record about 30 days
prior to the May 13, 2011 due date for his pro se writ DE62. Along
with between 3,000 and 4,000 pages of documents he saw for the first
time in some bizarre attempt by appointed counsel to bamboozle the
petitioner into some fantastic "paper-chase." Then the state took
the filed writ DE62 out of the LEGAL MAIL (as it does with all of
petitioner's mail) and hid it for two weeks while it checked its own
copy to see,"if the cat was out of the bag." As stated in his pro
se claims; petitioner noted some critical changes in recorded test-
imonys like: "who owned murder weapons? Answer at trail was "Was told
not to look." That is now changed as there is ATF reports showing
they were purchased by a company owned by Ms Pearle; Mr Johnson's
opening declaration to the jury,"that he is guilty as hell!" which
is now missing from this record. Is that because in Florida v Nixon,
124 S.Ct.1509(2004) Cert. Granted(Concession of guilt as ineffect-
iveness per se despite its role in strategy to avoid death penalty.)
He pleads "Not Guilty" then turn to jury "He is guilty as hell!"

So per McGowen v Thaler,717 F.Supp.2d 626(5thCir2010), petitioner
will question the INTEGRITY of his trial proceeding by asking the
Court to have the state and defense counsels produce the supporting
record, the missing police vidio tape made by law enforcement
officers witnessing a crime, the two IRS-CID Agents, and the proffer
documentry evidence of the criminal conspiracy the petitioner related
regarding witness in the 1998 FCA trial and the IRS-CID relating
to Ms Pearle's operating prostitution businesses with her family
and their money laundering with state judge John Marshall and his
mother Elonore Marshall of Highland Park, Texas

Then through this producing and presenting, show new reliable
evidence, whether it be exculpatory scientific evidence, trustworthy
eyewitness accounts, or critical physical evidence (such as vidio
of D.A.s committing a crime with state's witnesses, state's witnesses
100 plus false police reports made against petitioner, hidden
certified court hearing transcript of admitted crimes of moral
turpitude while under oath, police murder report, bankruptcy fraud
indictments, etc...all of which shows if you have sex with the
right person you can get away with anything), then the petitioner
can show that it is more likely than not that no reasonable juror
would have found him guilty beyond a reasonable doubt.

### CONCLUSION

For the above reasons, petitoner prays that this Court finds that
the respondent's defense are not valid and without merit and that
the petitioner's pro se claims as set out in his pro se supple-
mental application for writ of habeas corpus DE62 filed with the
Court as of May 13, 2011 are not time-barred or unexhausted or
procedurally defaulted and are therefore all valid and meritorious
and worthy of being entitled to an evidentiary hearing and the
granting of habeas relief. So that petitioner's FAITH in America
and his LIBERTY AS HER CITIZEN will be restored.

Respectfully submitted,

John David Battaglia
999412, 3872 FM 350 S.
Livingston, TX 77351

## <u>28 U.S.C.A. §1746   Unsworn declaration</u>

I, John David Battaglia, the petitioner, declare under the penalty of perjury that the foregoing is true and correct. executed on this 14th Day of September, 2011.

John David Battaglia
999412
3872 FM 350 South
Livingston, TX 77351

### CERTIFICATE OF FILING

Per Rules Governing Section 2254 Cases in the U.S. District Courts ,Rule 3, Filing the Petition: Inmate Filing; petitioner, John David Battaglia, declares under the penalty of perjury, that I have timely deposited in the TDCJ internal mailing system at 5AM, Thursday, September 15, 2011, a prepaid First Class Postage envelope marked **LEGAL MAIL** and containing this original signed PRO SE SUPPLEMENTAL REPLY with attached EXHIBITS and one judge's carbon copy, to be **LOGGED** in as **LEGAL MAIL** and then placed in the U.S. Postal Service for delivery to the Clerk of the U.S. District Court, Dallas Division.

~~999412~~

John David Battaglia
999412
3872 FM 350 South
Livingston,TX 77351

### CERTIFICATION OF SERVICE

**I** do hereby certify that a true and correct carbon copy of the above and foregoing PRO SE SUPPLEMENTAL REPLY has been placed in the TDCJ internal mailing system at 5AM, September 15, 2011, to be **LOGGED IN AS LEGAL MAIL** and placed in the U.S. Postal Service for delivery to Mr. W. Erich Dryden, Assitant Attorney General, for the Respondent at the following address:

Attoney General of Texas
post-Conviction Division
W. Erich Dryden
P.O. Box 12543
Austin, TX 78711-2548

John David Battaglia
999412
3872 FM 350 South
Livingston, TX 77351

## LIST OF ATTACHED EXHIBITS

1. U.S. v Texas Data Control;Civil No.3:95-CV-550-X    (4 page)
   Relator: John Battaglia, Testimony Record, Filed Sept.29,1998

2. DECLARATION OF CONFLICT BETWEEN CLIENT AND ATTORNN   (3 page)
   Date Feb.14, 2004 filed with trial court & CCA

3. ORDER DENYING REQUEST FOR NEW ATTORNEY, Feb.20,2004  (1 page)

4. Letter to CCA transmitting State Bar Letter        (4 page)
   Dated July 6, 2004, COPY "LEGAL MAIL" from CCA 7/15/2004

5. Letter to a Habeas Attorney, Mark Currider          (1 page)
   Date Feb.22,2004 at time was not aware he was counsel on writ

6. Letter to Bill Hill, Dallas District Attorney       ( 3 page)
   Dated April 21, 2005 and submitted state courts

7. Letter to Seymour Hersch, The New Yorked, MEDIA     (4 page)
   Dated June 19, 2005 and submitted to state courts

8. Letter to State Bar Texas, General Counsel          (2 page)
   Dated June 28, 2005 and submitted to state courts & A.G. TX

9. Letter Al Gonzals, U.S. Attorney General            (2 page)
   Dated July 7, 2005 and submitted to Tx courts & US Supreme Ct

10. Letter to Mr Abbott, Attorney General Texas         (1 page)
    Dated July 13, 2005 and submitted to state courts

11. NOTICE filed with Trial Court Judge Warderw/EXHIBITS (4 page)
    Dated July 25, 2005 and Filed with CCA & US Supreme Court

12. NOTICE filed with Supreme Court of US w/EXHIBIT 9 &11(1 page)
    Dated August 12, 2005 and submitted to state courts

13. PRO SE ANSWER to STATE'S ORIGINAL ANSWER to WRIT HABEA(4 page)
    Date August 29, 2005 and Filed with CCA & Trial Court

14. Ex parte-letter to CCA, Dated Nov.7,2005, copy trial (2 page)

15. Letter to F.B.I. confirming transmitting EXHIBIT 9   (1 page)
    Dated Nov. 13, 2005

16. Exparte -letter to CCA Judge Cocrun                  (2 page)
    Dated Aug. 22, 2006 and submitted to trial court

17. Letter-Dallas Morning news-MEDIA                     (1 page)
    Dated Sept. 17, 2007 and submitted to state courts

18. BLIND LAWYER LETTER                                  (1 page)
    Dated April 25, 2007 and submitted to state courts

19. Ex parte REQUEST TO RECONSIDER MOTION FOR NEW LAWYER (2 page)
    Dated Feb.4, 2008 and copied to CCA

EXHIBIT # A

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

SEP 2 9 1998

NANCY DOHERTY, CLERK

BY _____
           Deputy

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF TEXAS
2              DALLAS DIVISION

3

UNITED STATES OF AMERICA    .  Civil No.
4                    .  3:95-CV-550-X
  vs.                 .
5                    .  Dallas, Texas
TEXAS DATA CONTROL, et al   .  August 25, 1998
6                    .

7  . . . . . . . . . . .

8                VOLUME 3-C
             TRANSCRIPT OF TRIAL
9        [Testimony of John Battaglia]
     BEFORE THE HONORABLE JOE KENDALL,
10       UNITED STATES DISTRICT JUDGE,
             and a Jury

11

APPEARANCES:
12

13  For the Government:       Ms. Katherine Savers McGovern
                        Assistant United States Attorney
                        U.S. Courthouse, Third Floor
14                   1100 Commerce Street
                        Dallas, Texas  75242
15                   (214) 659-8600

16                   Mr. Robert P. Fletcher
                        Attorney at Law
17                   Nixon Hargrave Devans & Doyle
                        One Thomas Circle, Suite 800
18                   Washington, D.C. 20005
                        (202) 457-5323
19

20  For the Relator:         Mr. Robert M. Clark, Jr.
                        Attorney at Law
                        Eddleman, Clark & Rosen
21                   4627 North Central Expressway
                        Knox Central Place, Suite 2000
22                   Dallas, Texas  75205-4017
                        (214) 528-2400
23

24                   Mr. James F. Lane, P.A.
                        Attorney at Law
                        823 Parkway Street, P.O. Box 2091
25                   Conway, AR 72033-2091
                      (501) 329-7749

N 58      EXHIBIT #1.1

| | |
|---|---|
| 1  For Defendant TDC: | Mr. Michael Lynn |
| | Mr. Thomas M. Melsheimer and |
| 2 | Ms. Renee Skinner |
| | Attorneys at Law |
| 3 | Lynn, Stodghill, Melsheimer, |
| | Tillotson, L.L.P. |
| 4 | 750 N. St. Paul Street, Suite 1400 |
| | Dallas, Texas  75201 |
| 5 | (214) 981-3800 |

*GAYNAL MESHIVA (?)*

| | |
|---|---|
| 6 | |
| For Defendant FIserv/ | Mr. Edward Soto and |
| 7  Data Line: | Mr. Robert Santiago |
| | Attorneys at Law |
| 8 | Weil, Gotshal & Manges L.L.P. |
| | 701 Brickell Avenue, Suite 2100 |
| 9 | Miami, Florida 33131-2861 |
| | (305) 577-3177 |
| 10 | |
| For Defendants CSC and | Mr. James C. Dougherty |
| 11  CSC Logic: | Attorneys at Law |
| | Gibson, Dunn & Crutcher L.L.P. |
| 12 | 1050 Connecticut Avenue, NW |
| | Washington, D.C.  20036-5306 |
| 13 | (202) 955-8679 |
| 14 | Mr. Timothy J. Hatch |
| | Attorney at Law |
| 15 | Gibson, Dunn & Crutcher L.L.P. |
| | 333 South Grand Avenue |
| 16 | Los Angeles, California  90071-3197 |
| | (213) 229-7368 |
| 17 | |
| 18  For Defendants Telacu/ | Mr. David Elson |
| Carpenter and Carpenter & | Attorney at Law |
| 19  Company: | Manatt, Phelps & Phillips |
| | 11355 W. Olympic Boulevard |
| 20 | Los Angeles, California  90064 |
| | (310) 312-4151 |
| 21 | |
| 22  For Defendants First | Mr. James Armstrong |
| Mortgage Associates, First | Attorney at Law |
| 23  Mortgage Corporation and | Sacks Tierney, P.A. |
| Mitchell Sweet & Associates | 2929 North Central Ave., 14th Floor |
| 24  Educational, Inc.: | Phoenix, Arizona  85012 |
| | (602) 279-4900 |
| 25 | |

U.S. District Court

*Ex #1.2*

```
 1   Official Court Reporter:      Deborah M. Roberts, CSR
                                   1100 Commerce Street, Rm. 14A20
 2                                 Dallas, Texas  75242
                                   Metro (817) 239-2037
 3

 4   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

U.S. District Court

EX #1.3

INDEX


## RELATOR'S EVIDENCE

| Witnesses: | Direct | Cross | Redirect | Recross | Voir Dire | Court |
|---|---|---|---|---|---|---|
| John D. Battaglia | 5 | 57 | -- | -- | -- | -- |
| | -- | 62 | -- | -- | -- | 151 |


## RELATOR'S DOCUMENTARY EVIDENCE

| Exhibit | Offered | Admitted |
|---|---|---|
| 9 | 17 | 16 |
| 14 | 18 | 18 |
| 15 | 19 | 19 |
| 16 | 20 | 21 |
| 17 | 24 | 24 |
| 23 - 27 | 27 | 27 |
| 30 - 33 | 27 | 27 |


## DEFENDANT TDC'S DOCUMENTARY EVIDENCE

| Exhibit | Offered | Admitted |
|---|---|---|
| 760 | 144 | 146 |

Ex#1.4



Trial Court No. F01-52159-H

| | | |
|---|---|---|
| EX PARTE | § | IN THE CRIMINAL DISTRICT |
| | § | |
| | § | COURT NUMBER ONE |
| | § | |
| JOHN DAVID BATTAGLIA | § | DALLAS COUNTY,TEXAS |
|    Applicant | § | |

## DECLARATION OF CONFLICT BETWEEN CLIENT AND ATTORNEY

TO THE HONORABLE JUDGE JANICE WARDER:

COMES NOW,JOHN DAVID BATTAGLIA,Applicant, in the above
styled and numbered cause,and files this declaration of
conflict between client and attorney. In support of said
declaration,Applicant would respectfully show the following:

1.

Applicant was convicted and sentenced to death in the
Criminal District Court Number One of Dallas County, Texas.

2.

Applicant is an indigent person and consequently, the
Honorable Judge Janice Warder of the Criminal District Court
Number One of Dallas County, Texas, appointed Jan E. Hemphill,
Attorney at Law,4519 West Lovers Lane, Dallas,Texas 75209-
3161, to represent Applicant.

3.

The Texas Court of Criminal Appeals approved the appointment
of Jan E. Hemphill to represent Applicant for the purpose
of filing an Article 11.071 application for writ of habeas
corpus.

4.

There has been an ongoing conflict between Applicant
and Jan E. Hemphill since May 28,2002.

5.

Despite the fact that Jan E. Hemphill visited Applicant
on May 28,2002,counsel has not aquainted herself with Applicant
and/or the facts and issues of the case.

./...

EXHIBIT #2.1

**6.**

There is a total breakdown in communications between client and attorney.

**7.**

Even though counsel had not reviewed the trial record or investigated the facts of the case she stated: "It looks like you are guilty and will be executed." (May 28,2002,3:00 PM)

**8.**

When Applicant attempted to have a meaningful discussion about the case and issues that should be raised in the application for writ of habeas corpus, counsel stated: "My hand is tired of writing, I have been here all day visiting with clients." When Applicant asked if perhaps Mr. Abbott could take some notes, Jan E. Hemphill further stated: "It has been a long day and we must leave." These statements were made within the first five minutes of our meeting.

**9.**

Rather than entertain anything Applicant had to say, Jan E. Hemphill stated: "You really don't have any issues that will help with your appeals."

**10.**

Some of the issues Applicant attempted to discuss with counsel, Jan E. Hemphill, include but are not limited to ineffective assistance of trial counsel in both guilt/innocence and punishment phases of the trial. Trial counsel, Paul Johnson, told Applicant before and during the trial: "I'm not here to defend you, I was appointed to make sure you get the death penalty and that all the i's are dotted and t's crossed on your death sentence." Defense counsel not only failed but refused to investigate and discover Applicant's psychiatric records as well as other mitigation evidence, including but not limited to evidence of childhood abuse. Trial counsel failed and refused to subject the State's case to a meaningful adversarial proceeding in both guilt/innocence and punishment phases of the trial. Trial counsel failed and refused upon request of Applicant to impeach

../...

Ex#2.2

State's witnesses or object to the State's knowingly
presenting perjured testimony on both phases of the trial.

### 11.

The Fifth Circuit Court of Appeals has determined Jan
E. Hemphill was ineffective in another death penalty case,
Lewis v. Dretke,___F.3d___No.02-11007 (5th Cir.2003).

### 12.

Jan E. Hemphill testified that she was ineffective
in her representation George Andrew Hopper, another death
penalty case.

### 13.

WHEREFORE,PREMISES CONSIDERED,Applicant prays that
upon examination of this declaration that this Honorable
court discharge Jan E. Hemphill from this case and appoint
a competent attorney, qualified to represent Applicant in
this death penalty case. If this Honorable court orders
Jan E. Hemphill to file an affidavit in response to this
declaration, Applicant respectfully requests the opportunity
to file an affidavit opposing the appointment. In the alternative,
Applicant requests a telephonic conference with the court
and Jan E. Hemphill.


                    Respectfully submitted,


                    _____
                    John David Battaglia
                    3872 F.M. 350 S. #999412
                    Livingston,Texas 77351

    I, John David Battaglia,being presently incarcerated
at the Polunski Unit of the Texas Department of Criminal
Justice, I.D.,declare under penalty of perjury that the forgoing
is true and correct to the best of my knowledge.


                    _____
                    John David Battaglia
                    Dated: _____


.../...

Ex #2.3



**Judge Janice Warder**
133 N. Industrial Blvd. LB 38
Dallas, Tx 75207

Mary Belton
Court Reporter

Carol-Lou Nicholson
Court Coordinator

February 20, 2004

Mr. John Battaglia
#999412
3872 F. M. 350 South
Livingston, Tx 77351

Re:     State of Texas vs John David Battaglia
        F01-52159-H

Dear Mr. Battaglia:

Your request for a new attorney is denied.

Sincerely,

*Janice Warder*

Janice Warder
Judge

*EXHIBIT #3*

JOHN DAVID BATTAGLIA
999412
3872 FM 350 South
Livingston, TX 77351

COPY
Rec'd 7/15/4 LEGAL MAIL
for C.C.A. Court Clerk

July 6, 2004

Troy Bennett
Clerck of the Court
Texas Court of Criminal Appeals
P.O. Box 12308, Capital Station
Austin, Texas 78711

RE: Ex parte John David Battaglia

Dear Mr. Bennett:

Enclosed please find a copy of a three page letter I have written
to the Office of the Chief Disciplinary Counsel: A. Jaffe, of the
State Bar of Texas inwhich I am requesting the State Bar's Texas
Disciplinary Rules of Professional Conduct (the rules) and State
Bar of Texas Grievance Forms so that I may file timely complaints
against named attorneys who either broke certian laws or assisted
in concealing material documents and testimonies at my trial and
assisted the prosecution in suborning perjury from the state's two
primary witnesses against me at trial. The letter also notes that
my trial attorney, Mr. Paul Johnson, provide ineffective assistance
to my defense and had a significant conflict of interest which
precluded him from fairly representing my interests at trial.

I would like the enclosed copy of this letter placed in my file.
If there is a way for me to obtain a stamped copy of this letter
for my records, would you please write me at the above address with
your instructions and any costs which may be required in obtaining
such stamped copies.

Thank you for your assistance in this matter.

Sincerely,
John D. Battaglia

cc:file
cc:State Bar

EXHIBIT #4.1

SEARLE MATE            JOHN DAVID BATTAGLIA   Page 1 of 3
                            999412
3872 FM 350 South
Livingston, TX 77351

July 6, 2004

Office of the Chief Disciplinary Counsel, A. Jaffe
State Bar of Texas
P.O. Box 12487, Capitol Station
Austin, Texas 78711

Dear A. Jaffe:

I received your letter dated June 29, 2004 and would like to note
that you failed to provide me with either the State Bar's Texas
Disciplinary Rules of Professional Conduct (the rules) or the
requested State Bar of Texas Grievance Forms as I had requested
on June 19, 2004 for the attorneys listed in that letter along
with the information that all were from Dallas, Texas with the
exception of Ms. LaBorde (a.k.a. Ward, or Clayton, or Ghetti).

Again, the attorneys I need to file a Grievance Form against are;
‡ Edwin W. Davis, No. 05485300, of Dallas, Texas.
· Frank Moore, No. 14333500, of Dallas, Texas.
· James B. Martin, No. 13076000, of Dallas, Texas.
· David P. Yturri, No. 22230550, of Dallas, Texas.
· Robert M. Clark, No. 04298200, of Dallas, Texas.
· F.H. Entz Jr., No. 00633000, of Dallas, Texas.
· Bradley K. Lollar, No.12508700, of Dallas, Texas.
· Georgina Garcia, No. 90001084, of Dallas, Texas.
‡ Cynthia D. Dyer, No. 00787409, of Dallas, Texas.

In addition I want to file Grievance Forms against a Judge Theo
Bedard (not sure of spelling) a family court judge in Dallas, Texas.
The attorney Hanse you were unable to locate may be a Larry Hanse
and during the year 2000 he was a name partner with the above named
Mr. Edwin W. Davis in a Dallas Law Firm called McShane Davis and
Hanse. Mr. Hanse and Mr. Davis told me outside of Judge Bedard's
courtroom in March of 2000 that I wouldn't be able to see my two
daughters until they were 18 years of age if I went into the court
room and told the Judge that they were blackmailing from not
talking to the Internal Revenue Service regarding my wife, Mary Jean
Pearle Battaglia's, tax fraud and other criminal activities. Just
a few months prior to this encounter two IRS-CID Agents had met
with me in my CPA office and had informed me that my wife had been
involved in criminal prostitution businesses and possible money
laundering activities. I had at that meeting informed the IRS-CID
Agents that I had become aware that my wife and her family were
also involved in smuggling, drug selling, and the buying and selling
of stolen antiques and jewelry. In addition I informed the Agents
that my wife and her attorneys, Mr. Hanse and Mr. Davis, were attemp-
ting to force me to file fraudulent federal income tax returns for
1996, 1997, 1998, and 1999 which would not reflect over $1,000,000
in cash my wife had received during that period which I was aware
of and had documentation to substantiate its receipt by my wife.
I also told the Agents I thought my wife or her attorneys had
listening devices in my CPA and on my phone because after I had
spoken with the IRS-CID Agents from my office on February 14, 2000
Mr. Davis served me with a subpoena and specifically requested all
communications and documents I had given to the IRS- EX#4,2

This activity by the two attorneys, Mr. Davis and Mr. Hanse,
continued for approximately 18 months until they involved the
Dallas District Attorney, Ms. Dyer, and her supervisor, whom I
only know as Bryan (and am not sure if that is his first or last
name, but I did in early 2001 observe this, Bryan, on a surveil-
lance vidio taken by off-duty University Park Police Officers
hired by a Mr. Steven Lowder to observe and document his then
wife, Mallisa Lowder, have a lesbian affair with my former wife,
Ms. Pearle, and their drug useage, which I witnessed this Dallas
Assistant District Attorney who had helped the above named Davis
and Hanse force me to accept their terms for my divorce settlement
and a plea agreement to a false misdemeanor assualt charge for
which the agreed terms were immediately changed after I had signed
the forms in a Judge Finn's courtroom in August of 2000).

I will point out that the larger issue is the fact that all of the
above and more, plus documentation was given to my court appointed
attorney, Mr. Paul Johnson, who in turn informed the Dallas D.A.s
who prosecuted my capital murder trial and who assisted Mr. Johnson
in concealing all of the above as well as the fact that the murder
weapons found in my apertment were in fact the property of Ms. Pearle
and that at my trial the weapons expert was specifically asked not
to determine the ownership of these weapons. Another very relevant
item was a murder report by the Dallas Police Department concerning
the August 1982 shooting death of an 18 year old boy named, Mark
Shawn Hutchins. I had obtained this reoprt after being told by my
then wife, Ms. Pearle, that she would have me killed likes this boy
in the report if I spoke to any one about where she was abtaining
her larges amounts of money from and after she had learned that I
had spoken to the IRS-CID Agents she called me one evening and told
me she would have a bullit put in the back of my head  like she did
to that boy back in 1982 for my talking to the IRS. I immediately
called the Dallas Police and they came to my home and told me they
could do nothing regarding the treat, but gave me a call sheet, which
the Dallas D.A. or Police took from my home along with all of my
records relating to the above and my first wife, Ms. LaBorde.

Again, Mr. Johnson, my trial attorney, was informed of all of the
above and insisted that he was appointed to see that I was executed
and not to defend me. Mr. Johnson pointed out on a number of occasions
that he and the trial Judge, Janice Warder, had worked together in
the Dallas District Attorneys office and that they together with
the three D.A.s at the opposite table should tell me how things were
going to turn out for me; in a death sentence.

I realize that some of Mr. Johnson's attitude had to do with my know-
ledge of the Assistant D.A.s drug use and what I later learned from
a client attorney who had dealings with this D.A. and a quid pro
quo drugs for assigned cases and kick-backs from posted cash bonds.
Mr. Johnson also didn't like the fact that I knew of his friend and
formed Dallas D.A., Mr. Lollar's homosexual activities and sexual
activities with minor boys back in the mid-1980's of which I was a
witness and the fact that previously when I had showed Mr. Lollar
the 18 page Dallas Murder report of the boy in 1982 which my wife,
Ms. Pearle, had stated to me she had killed, Mr. Lollar stated to
me that the boy had been executed and led me to beleave that some
how that the Non-bill for the murder had been aranged by someone
in the Dallas D.A.s office back in 1982, much as my former brother-
in-law, Mr. Robert M. Clark, had insinuated to me on prior occasions.

EX#4.

I wanted to make these facts known during my trial, but when I tried
to fire Mr. Johnson or asked to speak to the Judge, I was ordered
to take a number of psychiatric drugs and was later told by Mr.
Johnson that if I tried to talk while in the courtroom I would not
be fed (which was very important to me once under the influence of
psychiatric drugs) and that an electronic shock belt would be placed
on my chest. It took well over six months for the affects of these
drugs to ware off once they were stopped being given to me which
happened to be the day I arrived here on Texas Death Row. The TDCJ
psychiatric staff informed me that there was no record of my being
ordered to take the drugs for the previous six months and that there
was nothing wrong with me. As one could imagine it took me almost
a full year to fully realize what had taken place, although I am
still very unclear on a great deal of the events which led to the
deaths of my daughters Faith & Liberty.

Not to bore you too much with my problems with these lawyers, I
still need to get you to determine the status of Ms. Michelle Ghetti
or whatever name she is registered under in your files. As I stated
in my previous letter she is currently a law professor at Southern
University Law School in Baton Rouge, LA. When I met her in 1984
she was introduced as Michelle LaBorde and was employed as a tax
attorney at the Dallas office of Akin, Gump, Struas, Haur and Feld.
She intentionally became pregnant in February of 1985 and told me
that I had to marry her or she would abort the baby and it would
be my fault (I'm Catholic), when I finally agreed (because during
the period of two months I came to realize this woman was crazy)
she told me we would have to wait because she needed to get a divorce
from her husband and Mr. James Norman Clayton, III, whom she had
failed to mention to me she was even married to (this fella was at
the time an attorney with the Dallas law firm of Jackson Walker).
After the birth of my daughter Christie, Ms. Laborde was transferred
from the tax section to the bankruptcy section (I had it on good
authority the move was made by the head of the tax section and firm
managing partner, Mr. Ed Coply, because of Ms. LaBorde's implied
threat of blackmail of Mr. Copley for some prior indiscretion) where
she began another affair with one of the three former federal bank-
ruptcy judges whom made up the partners of that section. Now my old
roommate and friend, Mr. Mark A. Wiesbart, did want me to know that
Mr. Gandy (whom he clerked for while he was on the bench) was not
involved (which I knew) and that the other partner, Jay Geck, whom
had just been outted when his Akin, Gump, et. al. AMEX credit card
was reported as one of those found by the FBI in Congressman Barney
Franks gay prostitute roommates receipts, as reported in the Washington
Post, so that left this rather sleazy short fella by the name of Don
(B- something, like Baker or Barker, I still have a mental block).

Well the real interesting part of this sordid affair was that just
prior to my filing for divorce from Ms. Whomever, I was asked to
take part in a phone conversation one night at our home with another
firm attorney, Mr. Ford Lacy, regarding an issue in which a client
of the firm had transferred about a million dollars to Akin, Gump, etc.
just prior to the client's filing for bankruptcy and that the named
partners wife, Ms. Feld, was on the board of the client, Diamond Lumber,
(I think) and that the money would have to be returned or turned
over to the creditors or trustees. Well the long and the short of it
was it was agreed to falsefy the corporate records and use back-dates
and Ms. LaBorde swore to the records truthfulness in Judge Felsenthal's
Court. When I told her I would raise the issue in our divorce I was arrest
and charged with, nothing, and held in jail until I promised to be quite.

LEGAL MAIL        JOHN DAVID BATTAGLIA      Page 1 of 1
                        999412
                  3872 FM 350 South
              Livingston, TX  77351

February 22, 2005

Mr. Mark Currider, Attorney
Vinson & Elkins, LLP
2001 Ross Avenue
Suite 3700
Dallas, TX 75201-2975

RE: Capital defendants deserve a competent justice system

Dear Mr. Curriden,

I read your and Judge Higginbotham's OP/ED article a few weeks
ago with some interest since I am one of those Texas death penalty
recipients you referred to. As one of these recipients, I must
point out to you that there is no 'microscope', especially at
the County and State levels, maybe somewhere else, but not here
in Texas. And you refer to our deserving a 'competent justice
system,' how about one that isn't ripe with fraud and corruption
just for starters.


I would like to enclose a copy of a letter I recently sent to
the NPR News program regarding the death penalty (no response)
and ask for your comments, if you can provide any. I have been
at a total loss regarding my trial and appeals, for every attorney
to date has told me I am guilty and should be executed, even
though I had not been asked one single question or allowed to
even speak. When I attempted such an act with my trial attorney
I was immediately drugged for over half a year and from that
experience realized that I had been similarly for about a week
or two before my arrest in 2001 and for some period after while
in the Dallas County jail. When I realized this and tryed to tell
my attorney that just days before my arrest I had felt so ill and
unusual that I had seen a doctor and he had a $150 blood and lab
test done on me and perscribed two medications, but my attorney
refused to obtain these and all of my medical records as well as
huddreds of financial documents I had turned over to IRS-CID Agents
in 1999 and 2000 regarding federal tax fraud, federal bank fraud,
and federal money laundering by my wife, brother-in-law/attorney,
and a number of Dallas County and Federal Judges: Any suggestions?

Enclosed Sigs which 1/13/5 to died w/juvee.    Sincerely

EXHIBIT #5

JOHNDAVID BATTAGLIA
999412
3872 FM 350 South
Livingston,  TX 77351

April 21, 2005                                                    Page 1 Of 3

Mr. William "Bill" Hill
Dallas District Attorney
Frank Crowley Courts Bldg.
133 N. Industrial Blvd.
Dallas, Texas 75207-4399

RE: Supervisor of Ms. Cynthia Dyer in Judge Finn's Court in 2000

Dear Mr. Hill:

I am writing to request the name and State Bar Card Number of
the Assistant District Attorney who in the year 2000 was the
supervisor for Assistant District Attorney, Cynthia D. Dyer
(Bar No. 00787409) in then Judge David Finn's Family Violence
Court. I only remember the supervising attorney as Bryan (?)
and I am not sure if that is his first or last name, but I re-
member he was rather short and had black hair and eyeglasses.

This D.A. Bryan was present in Judge Finn's Court in mid August
2000 when I had a trial date set for a false charge made by my
wife, Mary Jean Pearle. My attorney, David P. Yturri (No. 22230550)
refused to let me proceed with my trial and stated to me that
the two Dallas D.A.'s, Ms. Dyer and this Bryan, would not allow
me to have a trial and said I would have to plead to the charge
set for that day or they would charge me with additional offenses.
I noted that my wife and her lover, Malisa Lowder, were in the
small room with the two D.A.'s.

When I asked to speak to Judge Finn I was told I could not. When
I asked if I could fire Mr. Yturri and retain an honest attorney
I was told I could not have another delay. I was presented with
no apparent choice and was forced to accept the two DA's terms.
When I was signing the Judge's paperwork in the clerk's area the
bailiff, Sheriff Officer Burke, came up to me and asked my name
and told me I was under arrest. He had waited until I had signed
the Judge's Order (of which the terms were changed by the time I
reported to the county probation office,)then took me before the
Judge while Ms. Dyer and this D.A. Bryan were standing at their
table and smiling at me (please note that I had never spoken a
word directly to either of these attorneys.) When Judge Finn asked
Ms. Dyer why she had just put a charge for my arrest on the com-
puter after I had agreed to her plead terms, Ms. Dyer became very
nervous and started to shake and lied to the Judge that she did
not do it, but Officer Burke had just told me and my attorney that
Ms. Dyer had just ordered a warrent for my arrest after I pleaded
before the Judge and went to the clerk's area to sign the forms.

copy

*EXHIBIT#6.1*

Months later I was asked by Steve Lowder to veiw a undercover
surveillance vidio which showed his wife, Malissa Lwder, and
her lesbian lover, Mary Jean Pearle, and this D.A. Bryan, passing
a bag of cocain between each other at an Oak Lawn restaurant.
I asked Steve Lowder why he wanted me to watch and identify the
D.A. Bryan in the vidio and he stated that he had hired a couple
of off-duty police detectives to follow his wife, Malissa, and to
listen to her telephone conversations and that the police officers
had told him that they had heard his wife and Mary Jean Pearle
discuss how she had filed over 100 false police reports against
me and talked about how she had a "friend" in the Highland Park
Police Department and down at the courthouse.

I reminded Steve Lowder that I was very much aware of this and
had asked him and some other Highland Park guys for some help and
none was offered. I had told Steve Lowder previously how Assistant
U.S. Attorney Katherine Savers-McGovern and U.S. Attorney Paul
Coggins had threatened my wife with criminal charges if I did not
agree to change my testimoney in a federal False Claims Act (FCA)
trial in front of Judge Joe Kendall (Civil No. 3:95-CV-550-X) in
1998 and how in 1999 I overheard my wife,Mary Jean Pearle, complain
about her brother and my attorney, Robert "Bobby" M. Clark (Bar
No. 04298200) receiving several hundred thousand dollars for mak-
ing me change my testimoney in the federal fraud trial. I had also
told Steve about how I had contacted the Fort Worth office of the
Internal Revenue Service's, Criminal Investigation Division (IRS-
CID) and had meetings in my Dallas CPA office with Agent Bonnie
Stone and her Administrative Assistant, Ms. Linda Syvle, in which
I had stated my concern about the criminal "witness tampering"
by the U.S. Attorney in the FCA trial and how the defense attorneys
Mr. Mike Lynn and Mr. Tom Melsheimer appeared to have assisted
Mr. Coggins and possibly Senator Kay Baily Hutchinson in "fixing"
the outcome of the FCA trial so the lead defendant, Computer Science
Corporation (CSC) could be awarded the largest government contract
to that date; $10 billion for the modernizing of the IRS computer
systems (CSC was already a DOJ, NSA, NASA, and Treasnry Department
contractor.) I told the IRS-CID Agents of my concern regarding my
wife, Mary Jean Pearle's criminal activities and how recently she
had filed a divorce lawsuit against me because I had questioned
her about her activities, where she was obtaining her large amounts
of moneys from, and I had refused to file fraudulent federal income
tax returns for her as she and her two attorneys, Mr. Ed Davis
(Bar No. 05485300) and Mr. Larry Hanse (Bar No. 0881300) had been
pressuring me to do under the threat of not seeing my children. At
the meeting Agent Stone had informed me that my wife,Mary Jean Pearle
and her family had been under investigation by the IRS before and
that Mary Jean Pearle had used false identities with the IRS and
that the large amounts of moneys I was worried about may have come
from prostitution businesses that my wife and her family were
thought to have operated in Dallas for a number of years. I later
told the IRS-CID Agent Stone that my wife had learned of my discus-
sion with the IRS and was threatening to have me "killed" like she
had some boy named Mark Shawn Hutchins in her yard in August 1982.

copy

*EXHIBIT #6.2*

Dallas D.**D.** Hill -4/21/5  JDVD BATTAGLIA                    Page 3 of 3

Steve Lowder said he was concerned that Mary Jean Pearie and his
wife Malisa were going to use the same "**scam**" on him that they
and their attorneys, Ed Davis and Lary Hanse, had run on me to
sign over all of my community property and visitation rights to
my children; by filing false family violence charges against him
and then using the threat of keeping him from seeing his children
as leverage to force him to sign over to Malisa a $10 million
Trust he and his Aunt set up for him before he had married
Malissa. Steve stated the Trust had been set up for just this
reason because he knew of Malissa's cocain abuse and lesbian
sexual activities while they were both undergraduates at SMU and
wanted to be sure she had not married him just because he had
some large family assests.

I told Steve Lowder that I agreed that he was in "**big trouble**"
and advised him to make all of the above known to his attorney
and to not go near either Malissa or Mary Jean Pearle without at
least one witness that he knew well. I told Steve that I beleaved
this was some type of "**pattern**" because I did not learn about my
wife, Mary Jean Pearle's drug addictions and lesbian past until
1996 after we had moved to Highland Park and she had started seeing
her old high school girl friend, Karen Rogers, then within a few
months Mary Jean Pearle had started using drugs again and going
away to have sex with Karen Rogers. Within a year my wife's drug
use had gotten much worse, to where she would disappear for 12 hours
a day and show back up at home with a young man or woman and very
much worn out. Most of the time I assumed it was do to the drugs.

I told Steve Lowder how Mary Jean Pearle had told me of Karen
Roger's bi-sexual activities and partys she went to which were for
"**swinging**" and how her ex-husband and father of her two boys was
upset about her activities and how Karen had his parental rights
to see his two boys removed. And how when Karen Rogers was always
over at my house with Mary Jean pearle she told me one day that if
I tryd to divorce Mary Jean Pearle they could make sure I would
not see my girls again; like her brother had done to his child's
mother, even though Karen stated he was a full-time heroin addict.
She told me nothing mattered except who had more money and that
Mary Jean Pearle could bury me.

I told Steve that I had met an attorney in Deep Elm who was very
informed about the drug business in Dallas and had pointed out to
me that she had known of my wife and that some of her friends were
cocain drug dealers to the rich Park Cities and Preston Hollow
crowd. I asked the attorney if she knew the D.A. Bryan and she said
**yes**, that he was "**cool.**" I asked her how "**cool**" this D.A. Bryan
was and she reminded me about me questions she had asked me months
earlier about large amounts of cash and the IRS and that this "**cool**"
D.A. Bryan was her friend who assigned her criminal cases from
which she got cash kick-backs from the Bond Companys and the refer-
red attorneys of which she kicked-back some of the cash and drugs
to "**cool**" D.A. Bryan. I immediately contased my new attorney, Brad
K. Lollar to **talk**" to the police or District Attorney, but he must
have called someone else. Thanks for your help Mr. Hill, you're a
real straight guy, aren't you?

*EXHIBIT #6.3*

copy

MEDIA MAIL        JOHNDAVID BATTAGLIA        Page 1 of 4
                        999412
                3872 FM 350 South
             Livingston,  TX  77351

June 19, 2005

Mr. Seymour M. Hersh
The New Yorker
4 Time Square
New York, NY 10036

Subject: Conspiracies

Dear Mr. Hersh,

I read your "Watergate Days" piece in the New Yorker today and some
of your other recent investigative reporting about our government
and was wondering if you might look over a few documents I have en-
closed relating to a conspiracy by the Dallas District Attorney's
Office and illegal activities during my capital murder trial in
Dallas in 2002. The D.A., Mr;Bill Hill, is what some of my old
Highland Park neighbors call "Confederacy Friendly" and pretty well
connected with our local celebrity, Mr. Bush (this is Bush country.)

My actual conspiracy problem started a few years earlier when I tried
to stop and then report wide-spread fraud and corruption in my regional
RTC (Resolution Trust Corp.) office during the early 1990's. After
I failed going through the chain-of-command, up to Chairman, Al Casey,
and got demoted and fired in the process, I contacted a congressman
from Alabama on the House Banking Committee, Richard Shelby, and
was directed by his chief-of-staff to contact the House Oversight
Committee on the RTC who took my investigative work and opened their
own investigation and published the results in one of their quarterly
reports to congress about data servicing contractor, Texas Data Control,
Joint Venture (TDC, JV.) This forced the internal RTC-IG to open an
investigation inwhich I became the source of information for both
the Washington RTC-IG and the Dallas IG field auditors.

Almost a year into the investigation I was told by IG-Investigator,
Don Ryburn, in Dallas that the IG was going to terminate the work
with a finding of no fraud and when I asked him why he explained to
me that the RTC-IG was receiving pressure from the newly appointed
CFO, Donna Cunningham, to back-off (he also explained that she was
reported to be a college friend of then First Lady, Hilary Clinton,
and that all of these fraud investigations were to be stopped.) Then
I was approached by an employee of the RTC I had hired a few years
prior when I was recruiting professional CPA's to assist me with
closing failed S&L's (he is now an Investigator with the U.S. Attorney's
Office in Ft. Worth, TX) who suggested I file a False Claims Act (FCA)
or "whistle-blower's" lawsuite against the contractor I had found
defrauding the RTC; TDC, JV. He even provided me a draft lawsuite
and the name and number of an attorney with experience in Arkansas.
He also mentioned his dad wasa carreer CIA in D.C. and that this TDC, JV
was actually Computer Science Corp (CSC) and they were pushing out EDS.


copy

*ExHiBiT #7.1*

In 1995 I filed the False Claims Act lawsuite against the contractor, TDC, JV, and its six joint venture partners, including the party that actually committed the computer and false billing fraud, Computer Science Corporation (CSC) under seal with the U.S. Attorney General, Janet Reno, (Civil No. 3:95-CV-550-X) and before the end of 1995 the U.S. Attorney joined the suit and took over its prosecution. During this time I was contacted by a person claiming to be working for the election of Senator Bob Dole for President and asked me if I would be willing to be present at one of the Presidential Debates to ask a question about corruption at the RTC and the Clinton Admin- istrations refusal to address it. I told the person that I would, but was never contacted again, though I was encouraged to keep up my investigation and lawsuit.

On December 31, 1995 I was terminated from the FDIC/RTC after 7½ years, but in the context of the filed lawsuit (and an earlier EEOC lawsuit and investigation; which went nowhere because I was deemed too White!) I had documented not how the contractor, TDC, JV, was over-billing the government ($7 million out of a $21 million Total) but how the false reports the contractor was providing for non-exist- ant assets they maintained on their mainframe computer systems at Computer Science Corp (CSC) was in turn being used by Senior RTC management to falsely or fraudulently over budget for internal and extrenal contract services for Assets in Liquidation that did not exist (this amount was close to 50% of the total regional assets in inventory under RTC Receivership and Liquidation Management and I had calculated in excess of $100 million in unnecessary contracts had been awarded in my region alone by this time - also at the time my position was Southwest Regional Operations Specialist (supervisory) LG-14 (Liquidation Grade same as GS-14 in other federal service) and I managed the regional Budgeting and Contractor Management Function.)

I apologize for how boring this must seem, but investigating computer and financial fraud is supposed to be rather boring and unexciting work unless you come up against this particular contractor and criminal Computer Science Corporation (CSC). Before we went to trial in 1998 I received an odd warning from the RTC emplyee who had origanally advised me to file the FCA lawsuit and provided me with the original attorney, who was later joined by my brother-in-law, attorney, Robert M. Clark, and he stated that I might think of dropping the lawsuit because "my life might be in danger." I took the warning as more of a sick joke and thought that such a thing was not possible, but just before the trial was to start I was threatened by the U.S. Attorney that if I testified about any wrong-doing or corruption by any RTC employee or senior management my wife and her family would be charged with some type of criminal activity which at the time I was at sa loss to quite figure out. Since I went on the witness-stand in two days from the threat I asked to drop the FCA lawsuit or turn it over 100% to the goverment and was told by the U.S.A. and my two attorneys that I could not. When Judge Joe Kendal of all people cross-examined me about government employees being involved in the fraud or trying to hide it I had to say I did not think so even though my whole origanally filed suit and three years of discovery said the totally opposite. When Judge Kendal asked these questions instead of either the defense or the U.S. Attorney I knew it was a "Rigged Trial."

*EXHIBIT # 7.2*

All of the "players" or attorneys at the trial in 1998; Mike Lynn, Tom Melsheimer, Renee Skinner (who only a week before the trial started was Judge Joe Kendal's law clerk), U.S.A. Paul Coggins are all kind of known around our neck of the woods as 'East Dallas Liberals' as apposed to the more "Klan" or "Confederacy Friendly" conservatives of my old Highland Park and University Park neighborhoods. Some are former Akin, Gump, Strauss, Hauer & Feld attorneys as was my first wife, Professor Michelle Ward LaBorde Ghetti and U.S.Attorney Paul Coggin's wife, Regina Montoya (who was also a Clinton Election Chair-woman for Texas as well as a Whitehouse Aid to Mr. Clinton, but was fired from the Whitehouse early in the Clinton first term for...? Whitewater? Travel-Gate? FBI files?) But the real stand-out at the three week long FCA trial in Dallas was a top aid of Senator Kay Baily Hutchinson; a tall, slim, nice looking woman with dark hair who always managed to let the jury see the large and impressive looking portfolio she carried with the large colorful seal of the U.S. SENATE on it (it was quite the gossip the first few days in the courtroom as to whom she was and worked for and I am sure the jury learned before me) while she carried on in the courtroom with the senior management from CSC's California offices and the defense attorneys Mr. Lynn and Melsheimer. I will point out that she never once came near me and I was treated as a pariah even by the Assistant U.S.A. Savers-McGovern who at one point during the trial verbally attacked my wife, Mary Jean Pearle, for only being there because she thouht she might get her hands on some money (about $3 million and was never brought up at my 2002 trial or the fact that the U.S. Attorney had information about her and her families criminal activities) and my wife stated that she was there for my moral support (again, in total contridition of her testimoney in 2002. I guess she would have had a better opinion of me if I had won the $3 million, but that wouldn't happen with the Judge asking me if I was a "paranoid" and the defense attacking me as "some kind of nut wrapping himself in the American Flag"(they hate us Marines))

Currently this same group of attorneys, plus former criminl court Judge David Finn, have been very busy for the past few years in Dallas providing "free legal defense" for a group of Dallas Police Officers charged with planting "FAKE-DRUGS" on unsuspecting citizens (mostly hispanic) and falsely arresting about 80 of these poor people. I mention this because in 1999 and 2000 I attempted tp prove that the U.S. Attorney, Paul Coggins, and the attorneys Mr. Lynn and Melsheimer had committed "criminal witness tampering" in the FCA federal fraud trial and was attempting to cover it up (Coggins and Melsheimer are now partners at Fisk & Richardson a Dallas law firm I suspect because the "bad" cops" first went on federal trial before Judge Barbara Lynn, Mike Lynn's wife, and they didn't think it wise to defend these guys from Lynn, Melsheimer, et al. with the named partner's wife as Judge, but the affect was the same - not guilty - plus another coincidence, Barbara Lynn was appointed to the federal bench by Senator Kay Baily Hutchinson only a few weeks after the end of the 1998 FCA trial that Mr. Lynn and Mr. Melsheimer were voted "BEST DEFENSIVE WIN for 1998" in Ex Rel Battaglia vs. TDC, JV in the National Law Journal.) I had contacted the Ft. Worth, Texas office of the IRS-CID and found out my wife and her family had been under investigation for a number of criminal activities by the IRS-CID, but within a few months the in-vestigation was supposed to have been turned over to the U.S.Secret Service (per IRS-CID Agent Bonnie Stone), but all I received were threats by Mary Jean Pearle to have me "killed" for talking to the IRS.

EXHIBIT # 7.3

The threats on my life were followed with a Divorce Lawsuit, false
charges of domestic violence, eviction from my home and after it
was discovered that I had contacted the IRS-CID Agents (wire-tap on
my CPA office phone) I was charged with first a false assualt on X-mass
day 1999 and the during 2000 I was charged or filed on by my wife
over 100 times with the Highland Park Police Department (later learned
that Sgt. Katherine Justice of HP Police had a big "man-hating streek"
and a predilection for mid-aged "Lipstick Lesbians" which is what my
wife turned out to be or wanted to go back to after about five years
of marriage - marriage is definately not for the morally weak.) This
discovery partially came about or was confirmed when the husband of
another of these "Lipstick Lesbians" had hired off-duty police detec-
tives to follow and vidio-tape his wife, Malisa Lowder, and wire-tap
her telephone as well (this seems what rich people do for fun.) Please
see my discription in my April 21, 2005 letter to Dallas D.A. Bill Hill.

I realize that the amount of detail and the various parties in this
conspiracy story are getting a little out of hand and I couldn't
agree more, but when I was asked to veiw onee of the vidio-tapes of
Mr. Lowder's wife and my former wife (and a third older, but "butch-
lesbian") and asked to identify a man in the vidio which I did as an
Assistant Dallas District Attorney I only knew a Bryan, I unfortunatly
became involved or knowledgable of another conspiracy which I had no
intention of being involved in: the participation of the Dallas
District Attorneys Office in "SHAKING-DOWN" people it charged with
crimes and threatened to prosecute and the receiving of "Kick-Backs"
from Bonds posted by defendants and illegal referrals or "Kick-Backs"
from from attorneys these defendants were steered to. Most of these
"Shake-Down" and "Fake-Drug" victims were undocumented hispanics who
in Dallas work and live in a vast underground economy - all dealing
in cash - and this great source of cash must have been very tempting
to these cops, attorneys and D.A.'s. And why it is so easy for some
one like my former wifes to solicit and obtain false criminal and
prosecutions from Dallas police and District Attorneys.

I don't want to go into what happened to me and my girls, Faith & Liberty
at this time, but it all came about because of me crossing these
two groups of criminal actors hiding behind the Badges and Courts
of the Law. I really only thought something like this could take
place back east. I had been in Dallas for twenty years and never
figured these nice, but slow folks as that devious. How wrong I was.
If the "Klan" can still exist just below the surface in Dallas to
this day, I recon I shouldn't be surprised by wide-spread corruption
in their the police and the courts and the D.A.'s office, either,
but this U.S. Senator Kay Baily Hutchinson and her Vinson & Elkins
husband has really got me confused (Clinton-Liberal or Dallas and
Highland Park "Klan-Conservative"?) Even if Paul Coggins was the
U.S. Attorney for North Texas he couldn't have called-off or quashed
a criminal investigation by both the IRS-CID and U.S. Secret Service,
again, that is my guess, but someone did and my trial attorney, Mr.
Paul Johnson and trail Judge Janice Warder were able to keep every
item and piece of evidence I gathered and turned over the the IRS-CID
hidden at my trial in 2002. I have even written the IRS Commissioner,
Mark Everson, and his IG, but nothing? Not even a "FUCK YOU!"

Sincerely,

JohnDavid Battaglia

EXHIBIT #7.4

LEGAL MAIL                 JOHNDAVID BATTAGLIA          Page 1 of 2 JDvD
                                    999412
                             3872 FM 350 South
                            Livingston, TX  77351

June 28, 2005

Ms. Linda Acevedo
Assistant General Counsel
State Bar of Texas
P.O. Box 12487, Capital Station
Austin, TX 78711-2487

RE: Cause No. 74,348; John David Battaglia v. State of Texas

Dear Ms. Acevedo,

I was given your name and address as an attorney who might help
Texas Death Row inmates with legal problems from the inter-net.
In that regard I have been trying to obtain some information and
documents relating to my trial which have been taken from my home
by either the police or the Dallas District Attorneys at the time
of my arrest in 2001. None of these documents were made available
to my trial attorneys during my trial as I had requested for the
cross-examination of the State's two primary witnesses against me.

Since my trial in 2002 both of my appointed appeal attorneys (Mr.
Parks - Direct and Ms. Hemphill - Habeas Corpus) have refused to
investigate any of my claims of misconduct by my appointed trial
attorneys or have refused to assist me in locating or obtaining
documentry evidence to support my claims for inclusion with my
grounds for both the Direct Appeal and the State Habeas Appeal.

One of these grounds which my Direct Appeal Attorney refers to as
"frivolous" and my Habeas Attorney has not included in that Appli-
cation is the fact that my former wife, a Michelle Ward Ghetti,
basically committed multiple acts of perjury while testifying on
the witness stand for the State and that my trial attorney, Mr. Paul
Johnson, stated to me that he refused to cross-examine her test-
imony because "he didn't want to get run out of town."

Prior to my arrest in 2001 I had in my possession various documents
showing Michelle Ward Ghetti's prior acts of perjury including:

° a Certified Court Reporter's Hearing Transcript taken in front
  of Dallas County Family Court Judge Carolyn Wright (all attorneys
  refuse to obtain statements or testimony from Judge Wright or
  other witnesses present during atesting to Michelle Ward Ghetti's
  admitted, under oath, acts of submitting false documents to a
  court, perjury to a judge, and adultry during a contested divorce)

° two indictments for bankruptcy fraud in a Fort Worth federal court

° notes relating to her committing perjury in a Dallas Federal
  Bankruptcy Court and submitting to that court false corporation
  documents for a Diamond Lumber. Inc.  which were used to defraud
  the bankrupts creditors of approximately $1 million in pre-petion
  legaL FEES PAID TO HER LAW FIRM, Akin, Gump, Strauss, Hauer & Feld

EXHIBIT # 8.1

° a hand written diary I maintained through out my relationship
  with Michelle Ward Ghetti documenting such statements by her of:
  a) attempting to hire someone in Louisiana to come to Texas to
     murder me for divorcing her and later getting her fired from
     her position as an attorney at Akin, Gump et al. in Dallas
  b) having one of her former partners from Akin Gump, et al.
     provide her with false statements and affidavits which she in
     turn submitted to the State Bar in Louisiana in order to
     obtain a License to practice law in that state.
  c) having her attorney, a Mr. John Barr, and a partner at her
     law firm, Akin Gump, et al., who was also a former federal
     judge, have me falsely arrested by the Dallas Sheriff, Mr.
     Bowles, and held in the Dallas County Jail for ten days until
     I agreed to pass on my right to have a trial in my filed
     divorce action from Michelle Ward Ghetti and agreed to not
     speak about her affairs with her partners at her firm and the
     fact that she and other firm attorneys had participated in the
     defrauding of the creditors of Diamond Lumber, Inc. of approx-
     imately $1 million in illegal pre-petion payments by the bankrupt

I have previously written of some of the above acts by Michelle Ward
Ghetti to the State Bar of Texas (Office of the Chief Disciplinary
Counsel, A. Jaffe) on:
° June 18, 2004
° July 6, 2004
° July 20, 2004

and in the last letter asked the A. Jaffe to confirm to me in writing
that Michelle Ward Ghetti was not an attorney in Texas and for the
mailing address of the Louisiana Law Licensing Agency. To this day
I have not received a written responce from the State Bar of Texas.
I have provided A. Jaffe with all of the names I was aware of Michelle
Ward Ghetti possibly using while she was practicing law in Dallas,
Texas during the years 1984 through 1987, which are the following:
° Michelle Ward or Michelle Renee Ward
° Michelle LaBorde or Michelle Renee LaBorde
° Michelle Clayton (married to a James Norman Clayton, III,attorney)
° Michelle Battaglia (used only to file fraudulent bankruptcy)
° Michelle Ghetti (used for teaching law at Southern University Law
  School in Baton Rouge, Louisiana)

I guess my first request of you, Ms. Acevedo, is can you confirm
that the above Michelle Ward Ghetti was or was not a Licensed
Attorney in the State of Texas during 1984 through 1987 as she
represented to me and her law firm, Akin Gump, et al. while I was
married to her ?
In addition, I was wondering if you can provide me with copys of
the three dated writings I made to the State Bar of Texas ? I sent
my other copies to the Texas Courts of Criminal Appeals and now
realize that I should have filed them with my trial court judge,
instead. I feel this is something I should do immediately, but the
C.C.A. has refused all of my requests for copies of these and other
writings I have submitted to the C.C.A.  I didn't write the trial
Judge Janice Warder since I had witnessed her openly assist my trial
attorneys and the prosecutors rig the selection of the jurors for
my trial during it's three months of vor dire and concluded she was
too prejudiced towards me to be of any help. Thank you for your help

Ex #8..

LEGAL MAIL                    JOHNDAVID BATTAGLIA             Page 1 of 2
                                   999412
                              3872 FM 350 South
                              Livingston,  TX 77351

July 7, 2005

Attorney General, Mr. Al Gonzales
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530

RE: Retaliation by DOJ and IRS employees for filing "Whistle-blower suit"

Dear Mr. Gonzales,

In 1995 I filed a FALSE CLAIMS ACT (FCA) or "whistle-blower's"
lawsuit in federal court and with, then, Attorney General, Janet
Reno, whose Justice Department elected to join and take over the
prosecution of the lawsuit under Civil No. 3:95-CV-550-X. Just
before and during the FCA trial in Judge Joe Kendall's federal
court in Dallas, Texas, the U.S. Attorney threatened to take
criminal actions against my wife and her family if I did not agree
to change my testimony at the trial and make knowingly false
statements about criminal acts by government employees.

After the FCA trial I began to realize the type and extent of the
criminal activities the U.S. Attorney implyed my wife and her family
were involved in. I first contacted local police, but they took no
action, so I then contacted Agents from the IRS Criminal Investigation
Division (IRS-CID), who after several meetings with me said they
were turning over their investigation of my wife and her family to
the Secret Service because of the large amounts of cash involved
in their transactions and because of my concern of illegal "witness
tampering" and "provided protection" by the U.S. Attorneys Office.

These acts of contacting local and federal law enforcement agencies
resulted in my receiving threats on my and my childrens lives as
well as false police charges and arrests by local police agencies.
All of which ended in the deaths of my duaghters, FAITH & LIBERTY
BATTAGLIA, and my near death at the hands of Dallas Police Officers,
in total contradiction to their sworn statements and testimonys.

Mr. Gonzales, none of these events would have taken place if I had
been provided protection from these threats by local and federal
law enforcement as I had requested on a number of occasions during
the years 2000 and 2001. Or if specific government employees of
the DOJ, IRS and the FDIC/RTC were not retaliating against me for
having first filed the original FCA lawsuit and subsequently trying
to document and prove the illegal "witness tampering" and "providing
of protection to criminal actors who assisted with the witness
tampering" by the government attorneys and other attorneys involved
in the filed FCA lawsuit and trial in Dallas, Texas.

copy                                                EXHIBIT #9.1

After my daughters deaths and my arrest in Dallas in May of 2001
it appeared the most important act of the local police and the
district attorneys office was to find and retain all of my legal
and investigative documentation relating to the above events, which
included the FCA lawsuit and documents, the criminal activities
of my wife and her family, which included public corruption by
local law enforcement and elected judges in Dallas County and one
federal INS Agent that I was aware of. In the past four years I
have been beaten by police and jail gaurds, drugged by order of my
appointed trial attorney and trial judge, threatened to be killed,
starved to death, hanged in my jail cell, and even had my remaining
daughter's life threatened, but during this same period of over four
years I have been denied any and all access to any of the above
referenced documents which were in my possession up until May of
2001 by the Dallas District Attorney (Brady Rule Violation), the IRS,
and my appointed trial and state appeal attorneys.

I am enclosing some of my recent correspondence attempting to obtain
these documents and legal assistance in order to present these facts
and documents before the courts in Texas before the State of Texas
is able to illegally execute me and therefore, cover-up the criminal
acts of government and law enforcement employees.

As you will see from the enclosed I have written:

° IRS Commissioner Mark Everson and the IRS IG

° IRS Taxpayer Advocate Service

° U.S. Attorney-Investigator, Tom Hager, Fort Worth, Texas

° Texas State Bar; A. Jaffe and Linda Acevedo

° Dallas District Attorney, Mr. William "Bill" Hill

° Texas Court of Criminal Appeals and Dallas County Trial Judge

° Diocese of Dallas, Bishop Charles V. Grahmann

° The New Yorker, Mr. Seymour M. Hersh

° The Dallas Morning News, The Houston Cronicle and D Magizine

But none of these persons or government agencies appears willing
to assist me or even provide me with copies of my own documents and
filings to allow me to attempt to discover why and how my daughters,
FAITH & LIBERTY died in Dallas, Texas, in May of 2001.

Therefore, I am asking you for your assistance Mr. Gonzales.

                         Sincerely,

                    JOHNDAVID BATTAGLIA

cc: FBI Public Corruption
cc: Dallas County Court

EXHIBIT #9.2

LEGAL MAIL        JOHNDAVID BATTAGLIA        Page 1 of 2
                          999412
                   3872 FM 350 South
                 Livingston, TX  77351

July 13, 2005

Attorney General of Texas
Mr. Abbott
P.O. Box 12548, Capital Station
Austin, TX 78711

RE: Unlicensed Attorney Practicing in the State of Texas

Dear Mr. Abbott:

I am trying to determine if a woman named, Michelle Ward (a.k.a.
Michelle LaBorde, Michelle Clayton, Michelle Battaglia, and
Michelle Ghetti) was ever a Licensed Attorney in the State of
Texas or authorized to practice law in the State of Texas from
the years 1984 through 1987.  I was married to this woman from
1985 through 1987 and she represented to me as well as her law
firm, Akin,Gump, Stuas, Haur and Feld in Dallas, Texas, as well
as a number of Texas and Federal Judges and prosecutors that she
was an "Officer of the Courts" and a Licensed Attorney in Texas.


I have written the State Bar of Texas on a number of dates (please
see the enclosed letter dated June 28, 2005 to Assistant General
Counsel, State Bar of Texas) and they have only written me that
"records did not find attorney by name Michelle LaBorde (6/29/4)"
and " unable to find an attorney by the name of Michelle Ghetti
(7/9/4)." I do not know if the State Bar is giving me the "run-
around" or if this Michelle Ward (also above aliasis) was never
a Licensed Attorney in the State of Texas in the years 1984 to
1987. Would the Attorney General of Texas be able to determine
if the above named woman was ever a Licensed Attorney in Texas
during the period of 1984 and 1987 as she represented to me and
her law firm, Akin Gump et. al, in Dallas, Texas ?


If I can provide any additional information please let me know
and thank you for your assistance in determining the status of
the above named attorney.

                       Sincerely,

                       JohnDavid Battaglia

cc:file
enclosed: Ltr-State Bar Texas-7/28/5

EXHIBIT #10

LEGAL MAIL                    JOHNDAVID BATTAGLIA
                                     999412
                              3872 FM 350 South
                              Livingston, TX  77351

July 24, 2005

Honorable Judge Janice Warder
Criminal District Court
Frank Crowley Courts Bldg.
133 N. Industrial Blvd.
Dallas, Texas 75207-4399

RE: No. F01-52159-H, EX Parte John David Battaglia

Dear Honorable Judge Warder:

I have recently found out through reading from the unit law library
that "THERE IS A DUTY IMPOSED ON DEFENDANTS IN CRIMINAL CASES TO
NOTIFY THE COURTS OF AN INADEQUACY IN THE ASSISTANCE OF COUNSEL."
(Chapman v. U.S., 469 F.2d, page 635 (1972)) Please note that I have
brought the following issues regarding the Inadequacy of Counsel:
Mr. Paul Johnson and Mr. Paul Brauchle, to the attention of both
my court appointed appeal attorneys: Mr. Douglas Parks and Ms. Jan
Hemphill, with absolutely no responce in over three years. As you
will see from the enclosed writings I have also attempted to inform
the Texas Court of Criminal Appeals, the Texas State Bar, the U.S.
Attorney General, Mr. Gonzales, and just last week the Texas Attorney
General, Mr. Abbott. (I would have enclosed copies of my writings
to the C.C.A., but the two appointed appeal attorneys have refused
my requests to obtain copies of these writings from the C.C.A. and
the C.C.A. Court Clerk has refused to provide me with these copies
as well. I also recently wrote the Texas State Bar requesting copies
from them, but they replyed last week that they have destroyed all
of my writings to them with the attached letters to the C.C.A.)

Your Honor, during the time from my arrest in May 2001 until my
trial in May 2002, my court appointed attorney, Mr. Paul Johnson,
repeatedly told me he was not appointed to defend me, but to make
sure all of the i's were dotted and t's crossed on my Death Sentence.

° When I first met Mr. Johnson in the jail I told him I thought I
  may had been drugged or poisoned just days or a week prior to my
  arrest because I had seen a doctor and had chemical tests just
  days before and I had marks from a rare drug reaction I had in
  the 1980's, in addition the day before my arrest a county probation
  officer I had never seen before (and a rather aggressive lesbian)
  had told me she was going to have me sent to jail because she knew
  I was going to fail a drug test I had not yet taken. At that meeting
  with Mr. Johnson I requested I be examined by a doctor and have
  blood and urine samples taken for toxicology testing and Mr. Johnson
  said he would arrange the examination, but under no circumstance
  was I to submit to the examination without his being present. When
  I was taken to be examined I told the doctor that I was instructed
  by my attorney, Mr. Johnson, to wait for his arrival, where upon
  the doctor stated that I refused any medical attention and had me
  sign a form which I could not read because of my injuries. Later



RECEIVED IN
COURT OF CRIMINAL APPEALS
AUG 12 2005
Troy C. Bennett, Jr., CLERK
I only have original with the Star
No copy at this time. RET

*EXHIBIT #11.1*

when I saw Mr. Johnson (weeks later) I asked him why he was not
present for the medical examination like he said he would be and
if I could still get an examination, where upon, Mr. Johnson said
to me that noone in the jail or the whole county was going to lift
a finger to help me, only see that I was put to death.

Your Honor, this first encounter with Mr. Johnson was very confusing
and upsetting to me. I did not understand what had happened to my
daughters the night of my arrest or why I was attacked and beaten
and shot at by Dallas Police Officers or why I was stripped naked
and kept in a cockroach infested cell for days only to be told per-
iodically by sheriff and jail employees that they were going to beat
me to death or help hang me in my cell. When I asked Mr. Johnson to
file a complaint against the Dallas Police Officers who assaulted me
on the night of my arrest Mr. Johnson refused. When I asked Mr. John-
son to schedule or file the following he refused:

° Bond Reduction Hearing

° Media Gag Order

° Change of Venue because of media

° Hearing regarding the above before the Judge

° Hearing for appointment of new trial counsel

After the last request was refused by Mr. Johnson I attempted to
give a media interview where I tryed to relate to the News Reporter
my treatment in the jail (refusal of medical attention) and my trial
attorneys refusal to assist me in any way with my legal situation,
other than telling me he was appointed to see I was put to death.
After Mr. Johnson found out I had spoken to the media I was ordered
to take a number of drugs, twice per day, and on a number of times
I asked the jail employees who where forcing me to take the drugs
(all other inmates were just handed their medications) who had said
I was to take these drugs, they always responded that it was by order
of the trial court judge and that it was a standing order that I was
not to enter the courthouse unless I had been medicated.

I will point out your Honor that one of those drugs (there were 3
in all, I think) had a very profound effect on my physical and mental
ability to function and speak. Almost all of my physical bodily fun-
ctions were shut down for the six months I was given these drugs,
but when I arrived here on Death Row, I was refused any medications
and was told by the prison medical staff that I was just given the
drugs to make me "look stupid during the trial and make me easy to
control in the courtroom" and after a few tests the prison medical
staff said there was nothing wrong with me to require any medication.
This point your Honor would call into question all of the expert-
witnesses called during my trial, plus the Constitutional issue of
being drugged while in the courtroom against my consent as well as
being placed in shackles, within veiw of the jury and having over
four armed officers sitting within a few feet of me during the entire
trial. I will also point out one of the rank-uniformed officers said
to me on the first day of trial that if I moved or tryed to talk he
would shoot me dead right there in the courtroom. I felt that was excessiv

*EXHIBIT # 11.2*

When I wrote all of the above to my two appointed appeal attorneys,
Mr. Parks and Ms. Hemphill, I never received a response except from
Mr. Parks referring to my issues as "garbage" and "frivolous" and
and when I related the above to a Ms. Schades, who was retained by
Ms. Hemphill to assist with my Habeas Appeal, she stated she had spoken
to Mr. Paul Brauchle and that he had stated that mr. Johnson just
had me medicated so he could control me in the courtroom, but after
I received a copy of ms. Hemphill's filed Writ of Habeas Corpus on
my behalf I saw no mention of the being drugged as a grounds for
releif, therefore I ask your Honor to Order Ms. Hemphill to modify
or supplement the filed Writ of Habeas Corpus to include the follwing
issues which are missing from the Writ:

° forced and involuntary medication/shackles visable to jury/misconduct
  during the jury selection by prosecutors and Mr. Johnson/Batson/Mazz-EL.

° failure to give Warning pursuant to Estelle v. Smith,101 S. Ct.
  (1981) prior to psychiatric examinations

° Mr. johnson's (trial counsels) refusal to investigate and file
  complaint against Dallas Police for assault during my arrest and
  allowing perjury during trial by arresting police officer

° Mr. Johnson's refusal to cross-examine the states witnesses and
  his statements to me for not cross-examining;"that he didn't want
  to get run out of town for saying anything bad about the witnesses",
  and when your Honor refused to let Mr. Johnson ask Ms. Pearle
  about a murder she had bragged about having committed for years
  (even to our Highland Park neighbors the Wilsons, but she and her
  parents characterized the victum as a 'nigger' and a 'wetback' to
  gain a certain social acceptence by these Highland Park people
  which resulted in Ms. Pearle being asked to join the Dallas Country
  Club, which she later turned down once she realized they were to
  investigate her and her parents background and were bound to find
  out that Ms. Pearle's representations about herself and her family
  were all false and that she and her family ran a rather large
  criminal enterprise in Dallas for years which included; prostitution,
  drug dealing and smuggling, the purchase and sale of stolen jewelry
  and antiques, as well as high volume money laundering, all with
  the apparent protection of the police and it seems the courts in
  Dallas) and Mr. Johnson said after you refused his "Proffer" or "Offer"
  of an 18 page dallas Police Murder Report of a Mark Shwn Hutchins,
  "that your Honor would rule on nothing in my favor and risk not
  being re-elected to the the court." Mr. Parks refused to raise the
  recorded "Objection" or "Offer" in my State Direct Appeal.

° prosecutorial misconduct by the Dallas District Attorney for violation
  of Brady Rule in refusal to turn over my legal documents which showed
  crimin1e activities by certain Dallas D.A. employees and former
  employees (these are reflected in writings to the C.C.A.)

Your Honor, I hope I have provided this Notification in a manner that
the court can read, understand, and act on. I will enclose a numbber
of additional documents to show my efforts to gain my legal documents
and legal advise (please see listing in July 7, 2005 to U.S.A.G. Gonzales,

                              Sincerely

                        JOHN DAVID BATTAGLIA

cc:file
cc:c.c.A.
cc:S.CT.

EXHIBIT #11,3

LEGAL MAIL/Judge Warder   JDVD BATTAGLIA        Supplemental Page

July 24, 2005

List of documents included in Notification To Courts OF An INADEQUACY
IN THE ASSISTANCE OF COUNSEL:

* Attorney General (U.S.) Mr. Al Gonzales, July 7, 2005

* Attorney General of Texas, Mr. Abbott, July 13, 2005

* State Bar of Texas, Assistant General Counsel, June 28, 2005

* Dallas District Attorney, Mr. William "Bill" Hill, April 21, 2005

* The New Yorker, Mr. Seymour Hirsh, June 19, 2005

* D Magazine, Mr. Wick Allison, February 24, 2005
  (inclusive of 2003 and 2004 writings to the Diocese of Dallas)

* U.S. Attorney-Investigator, Mr. Tommy "the shoe-shine-boy" Hager:
  January 25, 2005, 9 pages
  February 28, 2005, 2 pages
  March 17, 2005, 1 page
  (Note Mr. Hager's written responce to me was "it was just bad luck
  that me and my girls got caught up in some government employees
  conspiracy")

* Texas Court of Appeals and State Bar of Texas (no copies-refused)
  June 18, 2004
  June 6, 2004
  July 20, 2004
  September 9, 2004
  November 1, 2004

* Internal Revenue Service, Taxpayer Advocate Service, April 26, 2004
     "        "        "        "        ,    May 27, 2004
  Reply to IRS, Tax Advocate by JDVD Battaglia, August 5, 2004
  (numerous other writings to IRS and IRS Commissioner and IG, but
  I had mailed all of my copies to appointed appeal attorneys Parks
  and Hemphill and both have refused to acknowledge reciept of such
  documentation or provide me with requested copies)


Note to Judge Warder or the Clerk of the Court: I do not have
enough copies of these attachments to send a full set to the
Texas Court of Criminal Appeal along with their carbon copy:
could the Court make a full copy to send to the C.C.A. for me ?

Also I do not have enough copies to send multiple copies to the
Judge and the Court Clerk without substantially delaying the submission
of this writing and Notification, therefore, could the Judge or
Clerk of the Court send me back a confirmation of receipt of this
Notification and the attached documents or a copy ? Also to Appeal Attorneys ?

Thank you very much and if I need to send a fee, please let me know
how much I need to submit. Again, thank you for your assistance. JDVD

EXHIBIT # II. 4

LEGAL MAIL        JOHNDAVID BATTAGLIA        Page 1 of 1 *two*
                       999412
                  3872 FM 350 South
             Livingston, TX  77351

August 12, 2005

Supreme Court Of The United States
Office of the Clerk
Washington, D.C. 20543

RECEIVED

AUG 2 3 2005

OFFICE OF THE CLERK
SUPREME COURT U.S.

RE: John David Battaglia v. The State of Texas (Death Penalty Case)
     Cause No. AP-74,348 (Texas Court of Criminal Appeals)

Dear Mr. Suter, Clerk of the Court:

This Monday, August 8,2005, I received written notice from my
court appointed Direct Appeal attorney, Mr. Douglas H. Parks,
that he would not file a Writ of Certiorari in the above refer-
enced Texas Death Penalty Case after it was affirmed by the Court
of Criminal Appeals on May 18,2005. On May 21, 2005 and on June 18,
2005 Mr. Parks wrote me he would determine if any issues existed
"over the next several days" and "the next few days," but had waited
till the last moment to inform me he would not file the Writ. This
is a situation I have experienced repeatedly with my Direct and
Habeas Appeal attorneys appointed by the Dallas County Courts.

After reviewing Title 28, Rules of the Supreme Court of the
United States, Rule 13, I realize that I am "out of time" to file
a Writ on my own behalf or to ask for an extention of time to file
such a Writ, but I do want to document for the Court my intention
to have filed a Writ of Certiorari which would have raised issue
with my arrest, trial, appointed trial attorneys and appointed
appeal attorneys.

I have recently learned of my duty to inform the courts of an
"INADEQUACY IN THE ASSISTANCE OF COUNSEL,"(Chapman v. U.S.,469 F.2d
(1972)) therefore, this writing. I have enclosed my recent notice
to the trial court, Judge Warder, dated July 24, 2005, but after
two weeks and two separate submissions to the trial court judge
and the Texas Court of Criminal Appeals, I have failed to receive
a response or even my requested "Stamped File Received" copies
I submitted to the two Texas courts to acknowledge receipt.

In addition I am enclosing a copy of my July 7, 2005 writing to
United States Attorney General, Mr. Gonzales, requesting assistance
from the Department of Justice regarding actions by the trial
judge and court appointed attorneys in Dallas, Texas.

Thank you for your assistance.

                       Sincerely,

          JOHNDAVID BATTAGLIA

cc: trial court
cc: Direct/Heabeas
cc: file

*EXHIBIT #12*

LEGAL MAIL                    JOHNDAVID BATTAGLIA                Page 1 of 4
                                     999412
                              3872 FM 350 South
                            Livingston, Texas 77351

August 29, 2005

Honorable Judge Janice Warder
Criminal District Court No. 1
Frank Crowley Courts Bldg.
133 N. Industrial Blvd.
Dallas, Texas 75207-4399

RE: F01-52159-H(A), Ex Parte John David Battaglia

**PRO SE ANSWER to State's Original Answer to Application for Writ
of Habeas Corpus in Death Penalty Case.**

Because of a total lack or break-down in communications between
myself (Applicant) and my court appointed Habeas Corpus Appeal
attorney, Ms. Hemphill, I am forced to try and answer the State's
Original Answer in the best manner that I can. In the past three
years I have attempted to communicate with both the Direct and
Habeas Appeal attorneys and have been repeatedly refused any
meaningful professional legal assistance, just as I had been
refused any meaningful legal assistance prior to and during my
trial by Mr. Paul Johnson.

I had even given a media interview on vidio from the Dallas jail
to document my trail attorney, Mr. Johnson's, refusal to investigate,
obtain evidence, or even help defend me from the charge of capital
murder. I also tried to relate to the media my disclosures to Mr.
Johnson the threats from Ms. Pearle and her family to have me and
my children "killed" for having contacted the following law enforce-
ment agencies regarding Ms. Pearle's criminal activities:
° Highland Park Police; physical child abuse, illegal drugs,
  illegal immigrants, and interference with court ordered custody
  of my minor child from a previous marriage
° Dallas Police; illegal drug dealing, receiving and selling stolen
  jewelry and antiques, burglary of my CPA office, and threats over
  the telephone and in person to have me "killed" for talking to
  the police and IRS about her criminal activities
° INS Agent Angela Clay; illegal immigrants and money laundering
° DEA; drug dealing and transportation between New York City and
  the use of my two daughters as cover or "mules" to carry drugs
° IRS-CID and Secret Service; federal income tax fraud, money
  laundering, federal witness tampering, bribery of public officials,
  and threats to have me "killed" for disclosures to IRS-CID

In addition I had informed Mr. Johnson and both of the appointed
Appeal attorneys, Parks and Hemphill, of the involvement of Dallas
County and Federal Judges in the criminal activities of Ms. Pearle
and her family. Those involved included Judge John Marshall, Judge
Theo Bedard, Judge David Finn and Judge Joe Kendall. ( I had also
informed Mr. Johnson and the Appeal attorneys of the unethical or
criminal activities  by my former wife, Professor Michelle Ward
LaBorde Ghetti, and Judge Harold Entz, Judge Robert Francis (then

EXHIBIT #13.1

PRO SE ANSWER 8/29/5      JDVD BATTAGLIA              Page 2 of 4

Assistant Dallas D.A. Bobby Francis), Sheriff Bowles, and her attorney
John Barr and the fact that then Michelle LaBorder had been fired
from her law firm, Akin Gump et al., for being indicted for two counts
of federal bankruptcy fraud and/or both not being a licensed attorney
in Texas as she had represented to her law firm and their clients,
plus opening all partys to discovery since she had no legal priviledge.)

I had also informed Mr. Johnson that for a number of years I had
witnessed a number of Dallas County Judges receive large sums of
money at the home of my former attorney and brother-in-law, Robert
M. Clark, Jr., with my wife, Ms. Pearle, and her mother, Dorrace
Pearle, present also to witness the transactions. I had been told
that the moneys were campaign contributions and holiday gifts to
the Judges from the Pearle Family (of which I was a member), but
after I had a trial in 1995 for carrying a weapon in my wife's car
(UCW) and my wife, Ms. Pearle, committed perjury on the witness
stand and I asked her why she had lied and not told the court that
I was armed with a weapon because I was protecting over $100,000
in cash and loose diamonds that were in her car when I was stopped
by police and Ms. Pearle told me she committed the perjury at the
direction of her brother, Mr. Clark, who was representing me at the
trial, because he did not want the Judge at the trial to know that
she and her mother, Dorrace Pearle, were involved in the buying and
selling of diamonds from their Dallas Antique business. Later I
learned from Ms. Pearle and an employee of a high-profile jeweler
who was a client of my CPA practice that Ms. Pearle and the jeweler
were involved in the buying and selling of stolen jewelry and
money laundering in the millions of dollars and that she had been
previously involved in prostitution and illegal drug businesses in
Dallas since she was a teenage girl and high school drop-out. I also
informed Mr. Johnson of my 1999 and 2000 contacts with IRS-CID Agent
Bonnie Stone and Linda Sivley from the Port Worth Office of the IRS
and how Agent Stone had informed me of Ms. Pearle's investigation
by the IRS and its being turned over to the U.S. Secert Service and
when Ms. Pearle learned of these events (through illegal wire-taps)
she said she would have me "killed" for talking to the IRS about
her business.

Attorneys; Mr. Johnson, Mr. Parks and Ms. hemphill all have a conflict
of interest with the above Judges and attorneys because they either
represent clients in front of these Judges or are appointed by these
Judges to represent clients before the courts or as in Ms. Hemphill's
case actually sat on the bench as a Dallas County Judge and the fact
that they are aware of Ms. Pearle and her families criminal activities
and bribery of these public officials is apparent by their continued
lack of or adequacy of representation of my interests at my trial
and during my State Direct and Habeas Appeal processes. This
"conflict of interest" and "affected inadequacy of representation"
is similar to that established as a grounds for violation of my
14th Amendment Right and which can be relieved by grant of Habeas
Corpus per CUYLER v Sullivan, 100 S. Ct. 1708 (1980) and undermines
the proper functioning of the adversarial process so that my trial
cannot be relied on as having produced a just result and protected
my 6th Amendment rights per STRICKLAND v Washington, 104 S. Ct. 2052.

PRO SE ANSWER 8/29/5      JDVD BATTAGLIA          Page 3 of 4

I have previously attempted to inform the courts of these Inadequacies
of Assistance of Counsels and Conflicts of Interests with Counsels
with absolutely no response from either the trial court (wrote on
February 4, 2004 and July 24, 2005) or the C.C.A (6/18/4, 7/6/4,
7/20/4, 9/9/4 and 11/1/4) per CHAPMAN v U.S., 469 F.2d page 635.
On August 12, 2005 I wrote the Supreme Court of the United States
to inform them of the INADEQUACY IN THE ASSISTANCE OF COUNSEL as
well because Mr. Parks refused to file a Writ of Certiorari on my
behalf and waited until less than 10 days of its due date to inform
me of his intention not to file.

In addition I have copied both courts regarding an additional conflict
of interest and prejudice by these appointed trial and appeal attorneys
in my letter to Mr. Bill Hill, Dallas District Attorney, dated April
21, 2005, in which I attempted to outline the unethical and criminal
activities of an attorney or attorneys under his offices supervison
as well as other criminal acts committed in Dallas County including:
° illegal wire-taps by police officers
° criminal witness tampering by attorneys and police
° false police reports and false public records and tampering with
° corruption by public and elected officials

These acts, again, were disclosed to both my trial and appeal attorneys
and their obvious conflicts of interests have kept them from bring-
ing these facts forward for cross-examination, impeachment, motive,
or even defense or mitigation, but they have all refused to impeach
Ms. Pearle's purjured testimoneys and the only basis for the State's
"probable cause" for its illegal warrantless search and seizure
which the court allowed only because it refused to allow Ms. Pearle
to be questioned or cross-examined regarding her own admitted "murder"
or "killing" or any of the other illegal activities that the five
law enforcement agencies have documentation of including the Dallas
District Attorneys office. (One would wonder if Ms. Pearle has kept
records of all the officials she has bribed, provided prostitutes,
drugs, and stolen jewelry and antiques to.)

Also there was documentation of only about $3 million of Ms. Pearle's
illegal activities in my home in May of 2001 which was either taken
or stolen by the police (Ms. Pearle's lesbian girlfriend, Highland
Park Police Sergeant Kathrine Justice was given full access to my
home by Dallas Police without any documentation of what she took or
left) or the Dallas D.A. and has been illegally hidden from me in
violation of the Brady Rule per BRADY v Maryland 373 U.S. 83 (1963),
but my father and a Mr. John Zale, CPA were able to recover a folder
containing all original documents which he made copies available
to the Dallas Morning News and Mr. Johnson who, again, because of
his conflict of interest hid the documents from me and refused to
introduce them at trial to impeach the credibility and character
of Ms. Pearle or even her motive to commit perjury or murder, again.
Mr. Johnson has surpressed these documents as well as the prosecution
and has failed to make them a part of my trial file in violation of
work products doctrine and other ethical ABA Rules and Guidelines
which he continually violated during my representation.

EXHIBIT #13.3   10/18/2010

PRO SE ANSWER 8/29/5      JDVD BATTAGLIA              Page 4 of 4

In the State's Response to Grounds One they state a forfeited claim
by failing to present it to a trial judge as an Objection, but trial
counsel, Mr. Paul Brauchle, did raise an Objection during the jury
selection when I pointed out to him the continuous signalling and
head movements by the Judge (Warder) and the two prosecutors, Robin-
son and Kirlin, during the almost three months of jury selection
(January 28, 2002 through April 5, 2002.)

I had observed Mr. Robinson and the court-reporter, Ms. Belton,
signalling each others opinion of each prospective juror with a
Post-It Note with a large dark majic-marker arrow either pointed up
- to indicate their approval of the juror giving me the death-penalty
- or the arrow pointed downward - indicating their dissapproval of
the juror giving me the death-penalty. I noted they would change
the direction of their arrows as the questioning of the prospective
juror progressed until a decision was made regarding to either, pass,
strike or seat the juror. Ms. Belton placed her arrow on the front
or face of her little typing machine away from the juror and Mr.
Robinson placed his on the side of his table next to the defense
table. At first I assumed the Judge could not see this activity,
but then it became obvious that she was aware of it and was in turn
signalling back with very slight movements of her head or what appeared
as some type of body language (like the signalling between a baseball
pitcher and his catcher, but much more subtle and less obvious.)

Then I began to notice that my trial counsel, Mr. Johnson, was also
placing a Post-It Note on the side of the defense table, next to
Mr. Robinson's table, but was keeping his hand over it so the juror
wouldn't see the Post-It Note and sometimes he would place it on
the side of a folder or soft drink bottle on the table (he sat at
the opposite side of the table from me.) It appeared when they were
all in agreement to the juror - all up arrows - the Judge would appear
to be giving signals or body language to the juror who would some-
times pick up on the signalling or indication of which way he or she
should answer the questions. Then I would watch the juror look from
the Judge to the prosecutors for his signal as to how he was answering
the questions and at one point you saw the Judge, the two prosecutors
and Mr. Johnson all nodding their heads up and down in approval of
the juror's answers.

When Mr. Brauchle finally understood what I was talking about he
stood up and OBJECTED to the Judge and prosecution "bobble-heading
the witness", but I am not sure if the practice and signals just
became less obvious for me to discern. So the Objection to the mis-
conduct during the jury selection was raised and the Direct Appeal
attorney, Mr. Parks, (as if on cue himself) told me he couldn't
raise the  Batson or prejudicial Objection to the selection and
questioning of the jurors because it was not reflected on the record
"verbally." This is only a pretext for racial and ethnic discrimination
which the State and more specifically Dallas is famous for in the
recent MILLER-EL v Dretke 125 S. Ct. 2317 (2005). I lived in Dallas
for 20 years and knew enough to never tell anyone I had Jewish blood
and as soon as my wife turned on me and filed for divorce she told
all of our Highland Park neighbors that I had hid that I was a Jew
(which she knew) and was a "nigger" and a WOP because I was Italian.

COPY
STAMP & RETURN

JOHNDAVID BATTAGLIA
999412
3872 FM 350 South
Livingston, Texas 77351

November 7, 2005                                        Page 1 of 2

Texas Court of Criminal Appeals
Clerk of the Court
P.O. Box 12308, Capital Station
Austin, Texas 78711

**RECEIVED IN
COURT OF CRIMINAL APPEALS**

**NOV 08 2005**

**Louise Pearson, Clerk**

**RE: Ex Parte John David Battaglia
      Cause No. AP-74,384**

Dear Mr. Troy Benett:

On November 5, 2005 I mailed you two copies of my PRO SE ANSWER
TO STATE'S ORIGINAL ANSWER TO APPLICATION FOR WRIT OF HABEAS CORPUS
IN DEATH PENALTY CASE, dated August 29, 2005, and requested you
return one copy "STAMPED RECEIVED - C.C.A." to me, but I forgot
to enclose the Stamped Self Addressed Envelope. Therefore, I am
enclosing the S.A.S.E. for you to return my copy in.

During the year 2004 I had requested the C.C.A. to return copies
of writings I had made to the Texas State Bar and Court inwhich
I was attempting to NOTIFY the C.C.A. and State Bar of "Conflicts
of Interest" and "Affected Inadequacy of Representations" by my
court appointed trial and appeal attorneys. At the time of my
writings I was not informed of the procedures for making a filing
with the courts and receiving an acknowledgement in return. On
August 23, 2005 I wrote the Texas State Law Library and requested
these writings I mailed to the C.C.A. for review and documentation
in my Cause File. To date I have not received a response from the
State Law Library and the Texas State Bar on July 7, 2005 informed
me in writing that they "destroyed all of my writings." Since the
Nomination of Texas Attorney Ms. Miers to the Supreme Court last
month I now am aware of the possible cause of a great deal of
improper acts by the attorneys and Judges involved with my case
and legal situations leading up to this case in Dallas in 2001. EXHIBIT #14.2

C.C.A. - Mr. Benett - 11/7/5   JDVD BATTAGLIA          Page 2 of 2

Therefore, I would like you to inform me how I may obtain those
writings I made on:
1) June 18, 2004
2) July 6, 2004
3) July 20, 2004
4) September 9, 2004
5) November 1, 2004
or copies of these writings with proof that they were received by
the C.C.A. and placed in my Cause File.


I am now aware that my Constitutional Due Process Rights have been
violated not only by my court appointed trial attorneys but also
by the court appointed appeal attorneys for both my Direct Appeal
and my Habeas Corpus Appeal, as well as by the clear abuse of
judicial discretion by the trial judge. The appointed attorneys
all appear to have a "Conflict of Interest" with other attorneys,
judges, and officials with the Dallas and Texas State Bar which
has kept them from properly representing my interests at triAL and
during the appeal process. In addition I beleave that my trial
attorney, Mr. Paul Johnson, committed criminal acts of witness
tampering and destruction of physical evidence related to my trial.


I want to make the above documents available to the U.S. Attorney
General and the FBI office in Dallas as well as to prepare a complaint
with the Texas Senate Committes on Criminal Justice and Jurisprudence.
In addition I want to forward these documents to U.S. Senator Sam
Brownback of the Senate Judiciary Committe whom I wrote to on
October 20, 2005 about this particular issue and request his offices
assistance in determining how Dallas Police and the Dallas District
Attorneys Office was able to suppress federal law enforcement files
relating to myself and my former wife, Ms. Pearle, and how also, my
appointed trial attorney was also able to suppress these documents
after they were already in his possession and before my trial.


Thank you for your assistance.

                              Sincerely,

                              EXHIBIT #14.2

JOHN DAVID BATTAGLIA
999412
3872 FM 350 South
Livingston, Texas 77351

November 13, 2005

Federal Bureau of Investigation
Dallas Division, Agent in Charge-Gonzalez
One Justice Way
Dallas, Texas 75220

RE: July 7, 2005 Letter to Attorney General, Mr. Al Gonzales

Dear Agent in Charge - Gonzalez:

On August 12, 2005 I received a letter from Special Agent, Roderick
Trimbach, of the Houston, Texas office of the FBI informing me
that my July 7, 2005 letter and attached documents to U.S. Attorney
General, Mr. Gonzales had been forwarded to the Dallas Division.

Since that date I have not heard from either the FBI, my court
appointed attorneys or the Texas Courts regarding my request for
assistance from Mr. Gonzales and the U.S. Department of Justice.
Can you give me any indication as to whether the FBI will assist
me in determining how and why physical evidence was either hidden
or destroyed and witnesses tampered with and threatened by the
Dallas District Attorneys Office and my court appointed trial and
appeal attorneys in my Dallas Civil Divorce Proceedings, false
criminal charges before Dallas Criminal Courts, witness tampering
during my Federal False Claims Act (FCA) lawsuit in the Dallas
Federal District Court and during my Capital Murder Trial in the
Dallas Criminal District Courts.

If the FBI and the Department of Justice will not assist me with
determining why these criminal acts by various attorneys, judges
and law enforcement agents will not be investigated and why I was
falsly charged and convicted of Capital Murder and me and my two
daughters were denied any protection of our basic CIVIL RIGHTS when
I had repetedely requested such protection from both local and
federal law enforcement, then whom should I contact. Thank you.

w/enclosure

EXHIBIT #15

LEGAL MAIL                    JOHNDAVID BATTAGLIA                    Page 1 of 2
                                        999412
                                 3872 FM 350 South
                              Livingston, Texas 77351

August 22, 2006

Honorable Judge J. Cocrun
Texas Court of Criminal Appeals
P.O. Box 12308, Capital Station
Austin, Texas 78711

RE: Ex Parte John David Battaglia
    Cause No. AP-74,384

Dear Honorable Judge Cocrun:

Because "THERE IS A DUTY IMPOSED ON DEFENDANTS IN CRIMINAL CASES
TO NOTIFY THE COURTS OF AN INADEQUACY IN THE ASSISTANCE OF COUNSEL,"
per CHAPMAN v. U.S., 469 F.2d 634 (1972) I am writing your Honor
to inform you as I have the trial court Judge Janice Warder and
the C.C.A. through my prior filings or NOTICES with the C.C.A.
court clerk that my trial attorneys Mr. Paul Johnson and Mr. Paul
Brauchle as well as my Direct Appeal attorney, Mr. Douglas Park,
and Habeas Corpus Appeal attorney, Ms. Jan E. Hemphill (all of
which were appointed by the courts in Dallas and under which Rule
of the C.C.P. or other governing documents all these attorneys
have refused to provide me per my verbal and written requests) all
have provided me at my trial and during this appeal process an
"INADEQUACY OF COUNSEL" BECAUSE OF THEIR INDIVIDUAL AND COLLECTIVE
ETHICAL AND CRIMINAL CONFLICT-OF-INTERESTS WITH OTHER Dallas
attorneys, judges and attorneys employed by the Dallas District
Attorneys Office as well as police officers and county probation
officers employed by the cities in Dallas County and the County of
Dallas itself. Because of this "STRUCTURAL DEFECT" in my trial and
appeal due to this due-process violation I request that your Honor
vacate the above conviction and sentence or reopen my DIRECT APPEAL
and appoint new counsel to perfect an appeal in forma pauperis.

If your Honor would allow me to subpoena and depose IRS-CID AGENTS
Bonnie Stone and Linda Syvle; the two Agents I met with in my CPA
office in 1999 and 2000 when I reported the criminal witness
tampering by the U.S. Attorney Paul Coggins and the trial attorneys
Mr. Mike Lynn and Mr. Tom Milsheimer in a prior federal FALSE CLAIMS
ACT (FCA) trial in front of Judge Joe Kendal in Dallas, Texas and
who I provided over 500 pages of documents showing my then wife's
(Mary Jean Pearle) criminal tax fraud and money laundering activity.
When Ms. Pearle learned I had spoken to these IRS-CID AGENTS about
her criminal activities and the involvement of her attorney/brother
and his friend STATE DISTRICT JUDGE JOHN M. MARSHALL she repeatedly
told me she would have me "killed like she did a boy named Mark
Shawn Hutchin in her yard in 1982" and later again if I did not give
back the originals of the documents I had given the IRS AGENTS along
with an IRS FORM 211 which had her and Judge Marshall's name on it.
My father gave these FORMS to Mr. Johnson in 2001 and he hid or des-
troyed them and the Dallas D.A. took other copies from my home and
have hidden and suppressed in violation of BRADY RULE. Both AGENTS
would testify to my contacts, provided documents and FORM 211 and
the Dallas Police Archives Murder Report I faxed them in 2000.

*EXHIBIT #16.1*

LEGAL MAIL/C.C.A./JUDGE COCRUN-JDVD BATTAGLIA          Page 2 of 2

Also the AGENTS could explain why after I had faxed the 18 page
Dallas Police Archives Murder Report of Mr. Mark S. Hutchin and
had asked for "protection from the threats on my life by Ms. Pearle"
the AGENTS refused to responde in any manner, even after I left a
number of voice messages and faxes (all this can be verified thru
my CPA office telephone records, which Mr. Johnson and both the
appeal attorneys have refused to try and obtain, just as they have
refused to contact or dipose these two federal law enforcement agents
who I directly asked for protection from, especially after they had
told me my wife, Ms. Pearle, had been under criminal investigation
before for prostitution and running prostitution businesses in
Dallas for some number of years along with other members of her
family and after I had shown attorney Brad K. Lollar in the Dallas
Courthouse the just obtained Dallas Police Archives Murder Report
of Mr. Hutchin, Mr. Lollar told me he knew of this murder when he
was in the D.A.'s Office and that "the boy had been executed.")

Your Honor all of these appointed trial and appeal attorneys have
demonstrated that they have only one objective in their represent-
ation of me in the above Cause No.: to hide and conceal the involve-
ment of Texas District Judge John McCellan Marshall with Ms. Pearle's
criminal enterprise and their attempts to violate both my children's
and my own Constitutional Guaranteed CIVIL RIGHTS which resulted
either directly or indirectly in my daughters, FAITH & LIBERTY
BATTAGLIA's, deaths because of these criminal actors attempts to
conceal their criminal conspiracy and whether they acted with INTENT
(mens rea) or through TRANSFERRED INTENT caused their deaths.

I realize that the legal establishment down at the Dallas Courthouse
wants to paint a totally different and false picture of myself and
my former wife Ms. Pealre and her and her families involvement with
both criminal activities in Dallas for more than four decades and
their involvement (or paid protection) to elected Judges and appointed
officials in Dallas and Dallas County. Therefor, I would request that
if you appoint me new counsel that the attorney be from outside of
the State of Texas or at least not from Dallas County and its sur-
rounding counties because of Ms. Pearle and her families activity
in East Texas which involve some rather unusual racist groups in
those counties which have ties to older more established racist groups
inside the wealthier areas of Preston Hollow in Dallas and Highland
Park which are made up of the descendants of the areas former KKK.

In addition I would request that any new attoreny not be associated
with any homosexual or lesbian groups from these area because a number
of the police officers and the county probation officer and maybe
some of the attorneys involved from the Dallas District Attorneys
Office seem to have this deviant sexual tendency in common with Ms.
Mary Jean Pearle as well as illegal drug useage which from my
experience as a U.S. Marine NCO and EEOC trained federal manager;
usually when concentrated in a small close-knit group can lead to
more deviant and criminal behavior (which I've seen in SPADES in
this case.)

Thank you for taking this NOTICE your Honor.

                              (Sincerely)

                    JOHN DAVID BATTAGLIA

EXHIBIT # 16.2

JOHNDAVID BATTAGLIA
999412
3872 FM 350 South
Livingston, TX 77351

April 25, 2007                                          LEGAL MAIL

Attorney-at-law

RE: John David Battaglia V. Texas

Dear   :

.....

... I am sure you are aware that I am still waiting a hearing on
my State Habeas Corpus Appeal and the issue of jury selection and
ineffective assistance of counsel;.... I am aware that you were
never present with him when he questioned me in the jail regarding
either Judge John Marshall's involvement with the Pearle Family or
Bradly K. Lollar's representation of me in my prior legal action
with the Dallas D.A. and Ms. Laborde and Ms. Pearle or the fact
that Ms. Laborde and Ms. Pearle both received "political assistance"
in forcing me to settle both my civil divorce actions with them by
bringing false criminal charges from the Dallas District Attorney
Office.

I had told MR. ... that I had just became aware of this fact just
prior to my MAY 2001 arrest when I had been told by Steve Lowder
and University Police that Ms. Pearle and Ms. Lowder had been heard
discussing on their telephones that they had a "friend" in the
Highland Park Police Department and down at the courthouse. I had
told Mr. ... how Mr. Lowder had me watch a police vidio of Ms. Pearle
and Ms. Lowder passing a bag of drugs between a man and themselves
and how he asked me if I could identify the man and when I asked
why he explained that someone in the vidio was supposed to help
Ms.Pearle and Ms. Lowder bring false criminal charges against him
like they had previously done to me.

I identified the man as an Assistant D.A. I had met in Judge Finn's
Court No. 10 in August 2000, but did not pay any attention to a
third, but older woman who was very obviously only interested in
Ms. Lowder in a sexual manner. I later realized this woman was Ms.
Harriet Miers from her photos in the papers in October 2005. I
think when I told Mr. Lollar about this vidio and D.A. in April 2001
he knew Ms. Miers was in the vidio as well since he and Mr. Jim
Martin had pulled the same "fix" or "scam" on me in 1986/1987 with
Ms. Laborde for her partners over at AKIN, GUMP, et al, and Mr....
knew as well because of his close relationship with Mr. Lollar.
(note also both Laborde & Pearle were actively having Lesbian affairs
or relationships while I was married to them & divorcing them)
Can you offer any suggestions?
Were you aware of Mr....'s conflict-of-interst with the above attorneys
in 2001 and 2002?

JOHNDAVID BATTAGLIA

CC:H.C.

EXHIBIT #17

<u>JDVDBATTAGLIA.COM</u>
999412
3872 FM 350 South
LIVINGSTON, TX 77351

September 17, 2007                                          MEDIA MAIL

Dallas Morning News-OP/ED
Ms. Keven Ann Willey
Box 655237
Dallas, TX 75265

RE: "STRUGGLING WITH JUSTICE" <u>or</u> COURT CASE FIXING RING ?

Dear Ms. Willey,

On September 15, 2007, Mr. Jones wrote of "inconvenient facts"
regarding the death penalty and Lave's case on your VIEWPOINTS and
opinion/blog. How about reporting some of these facts in your coverage
of these "old cases", such as:
· Who was the Judge at trial
· Who was the D.A. at trial (all three)
· Who was  the Defense Attorney at trial (1st & 2nd)
or would those also be "inconvenient facts?"

Ms. Harriet Miers' and Mr. Al Gonzales' recent adventures to our
nation's capital also hints at another "inconvenient fact" about our
Dallas and Texas "Bar" and "system of justice" which might appear
to be run as a very lucrative criminal enterprise by those who have
sworn an oath to up hold our system of justice & U.S. CONSTITUTION.
And like other criminal enterprises or KLANS or MOBS, it appears
to have an "initiation rite" requirement to becoming a "made-member"
of such groups,e.g. the sentencing to death of an innocent minority
citizen on the command of a "made-member." Please report the facts
and let us "readers" connect our own facts or dots.

On another topic you  recently covered regarding the jails and D.A.'s
in Texas recording "privileged legal communications"; would you ask
Sheriff Valdez if she has recordings of my "client-attorney" and
"doctor-client" interveiws in the jail legal booths and meetingrooms
(where jail guards were present with open-mikes on their walkie-
talkies) and if they were given to the Dallas D.A.'s? I wrote the
court and FBI on this issue on December 17, 2006 and copied the new
D.A. Mr. Watkins in January of 2007,but have not heard back from
anyone to date.

In addition I received a letter from U.S. Dept. of Treasury ref. my
July 20, 2007 letter to U.S. Senator Grassley reg: Independent Counsel
investigation of IRS Commissioner Everson and Ms. Miers for suppression
of IRS-CID Investigation and my proffered IRS FORM 211 & FOIA. Your
Mr. Steve Mogonical had a copy of my Form 211 in his hands as he
read me off the names on the Form 211 and asked me questions in 2001
while we were on the Dallas County Jail telephones. Would you mail
me a copy of my Form 211 or ask Sheriff Valdez or the D.A. for the
recordings of our phone conversation and discussion of the FORM 211?
and IRS-CID Agent Bonnie Stone whom Steve said he knew as well?

Sincerely

LEGAL MAIL                  JOHNDAVID BATTAGLIA              Page 1 of 2
                                    999412
                             3872 FM 350 South
                             Livingston, TX 77351

February 4, 2008

Honorable Judge Robert Burns    ⟷
Criminal District Court No. 1
Frank Crowley Court Bldg.
133 N. Industrial Blvd.
Dallas, Texas 75207-4399

RE: F01-52159-H(A), Ex Parte John David Battaglia
Subject: Filed State Bar of Texas Grievance to Remove Ms. Hemphill

Dear Honorable Judge Burns:

On November 26, 2007 I wrote your Honor requesting you review and
reconsider my February 2004 filed DECLARATION OF CONFLICT BETWEEN
CLIENT AND ATTORNEY inwhich I asked for appointment of new appeal
counsel, which Judge Warder denied on February 20, 2004. I have
also requested of the Court of Criminal Appeals,"conflict-free
counsel be appointed," in my August 22,2006 letter to Judge Cochran.

As of this date I have not Heard back from any court since the
February 20, 2004 denial by Judge Warder and I have not heard back
from any counsel since Ms. Hemphill notified me of her filing a
Writ of Habeas Corpus with the trial court on February 16, 2005.
I have repeatedly asked Ms. Hemphill to withdraw as my appointed
counsel since I notified the courts in 2005 of the issues or
grounds which Ms. Hemphill purposely omitted from my filed Writ.

Therefore, on January 22, 2008 I filed a Grievance Form with the
State Bar of Texas asking that Ms. Jan E. Hemphill be removed as
my court appointed counsel for the following reasons:

"1st, I believe, Ms. Jan E. Hemphill is not "LEGALLY QUALIFIED" to
be my appointed counsel per the Texas Fair Defense Act of 2001 and
per TX-CCP art. 11.071, as I have previously documented & stated in
my "DECLARATION OF CONFLICT BETWEEN CLIENT AND ATTORNEY",filed with
court on FEB 11, 2004 and in my letter dated NOV 26, 2007 with the
new Judge (Burns) of the same court; that Ms. Hemphill is not a
"QUALIFIED APPOINTED §11.071 HABEAS CORPUS APPEAL ATTORNEY" nor is
she listed as one."

"2nd, I believe Ms. Hemphill was appointed as my attorney to continue
a criminal "COVER-UP" and "OBSTRUCTION OF JUSTICE" by members of the
Dallas Bar & Judiciary who I was personally knowledgeable of committing
both criminal bribery and criminal and amoral sexual misconduct,
including my former wife (attorney) Michelle Laborde Ghetti, who was
vetted by the Dallas Bar Leadership to run for election as a Dallas
Judge because of her witnessed conduct in committing these criminal
and sexual acts by other members of the Dallas Bar Leadership while
I was married to her during the 1980's) therefor, denying me "NON-
CONFLICTED LEGAL COUNSEL" and my "RIGHTS TO LEGAL COUNSEL" per the
Texas & U.S. Constitution, Amend 6, so as to conceal this criminal
conduct by the Dallas Bar and members and their use of this practice
to stack the Dallas Courts with Judges who will either "FIX" or "RIG"

EXHIBIT #19.1

To: Judge Burns FEB 4,2008 FRM: JDVD BATTAGLIA   Page 2 of 2 LEGAL

both Civil and Criminal Court Cases per the direction of these Bar
members, as evidenced in both of my civil & criminal proceedings
in Dallas Courts against both Ms. Michelle Laborde Ghetti (attorney
TX & LA) and Ms. Mary Jean Pearle and which have been concealed at
my May 2002 capital murder trial by the Dallas D.A., and my court
appointed trial attorneys, and subsequently by my appointed Direct
and Habeas Corpus Appeal Attorneys, i.e., Ms. Jan E. Hemphill."

"please see the enclose filed documents with the Texas Courts re-
garding Ms. Hemphill's failure as my attorney to assist me or to
communicate with me and to conceal the above conduct by the Dallas
Bar and Judges."

"Texas Digest 2nd, Criminal Law §641.5(3)'...prejudice is presumed
upon a showing of an actual conflict that adversely affected
representation.' U.S.C.A. Const. Amend. 6"

"per Acosta v. State, 233 SW3rd 349 (TCCA-2007)'...counsel "actively
represented conflicting interests" and that conflict of interest
adversely affected counsel's performance... Jan E. Hemphill can not
represent my interests when her loyalty and interests lay with her
fellow Judges & Attorneys of the Dallas Bar (Judge of Court No. 1)"

"The Dallas Courts Continuing PATTERN of appointing INEFFECTIVE
COUNSEL EVERY STEP OF THE CRIMINAL AND APPEAL PROCESS is further
evidence of a continuing pattern of RACIAL and ETHNIC DISCRIMINATION
by the Dallas Bar & Judiciary and is condoned by the TEXAS STATE BAR
by its lack of oversight & sence of justice.RUIZ v Quarter.504 F3d 523"

Your Honor, these grounds I have related in my Texas State Bar
Grievance Form should have been addressed prior to my trial in 2002,
but my appointed trial counsel, Mr. Paul Johnson, and the trial judge
kept me from getting legal help by first "blackmailing" my friends
and my father (with the direct assistance of the Dallas District
Attorneys Office) then after that with threats on my daughter's life
and finally by forcibly medicating me in the Dallas County Jail for over
six months with anti-psychotic and other psychotropic drugs; first
in an attempt to get me to commit suicide while in the Dallas Jail
(a specialty of theirs & then at TDCJ) and second to render me
incapable to "thought or speech" so as to disallow me my right to
"FREE-SPEECH" and my ability to defend myself before and at trial.

If your Honor continues to ignore my requests for new appointed
counsel as the prior judge had for over five years; I will have to
assume your Honor's loyalties and interests also lie with those in
the Dallas Bar and District Attorney Office, and therefore, request
that your Honor "recuse" yourself from this case because of your
"conflict of interest."

Your Honor I request "conflict free counsel and judge" and that this
pattern of "judicial discrimination" stop in Dallas with this case.
The public is wise to why California executed 10 men since reinstating
the death-penalty and Texas executed over 400 in the same period: a
Texas Judiciary blind to the rule of law and U.S. Constitution. The
South lost the war over 150 years ago Sir, please join the Union.

Sincerely,
JOHN DAVID BATTAGLIA

cc: C.C.A.
bc: Dallas D.A.,Craig Watkins
bc: ACLU, Brian W. Stull (attorney)

EXHIBIT #19.2

4/23/2010

JOHN DAVID BATTAGLIA
999412
3872 FM 350 South
Livingston, TX 77351

September 15, 2011                                    LEGAL MAIL

U.S. District Court
Northern District of Texas-Dallas Division
1100 Commerce
Dallas, TX 75242

RE: CASE 3-09-CV-1904-B; JOHN DAVID BATTAGLIA v. THALER, TDCJ
(Texas Capital Case)

Dear Clerk of the U.S. District Court:

   Would you please file with the Court in the above-referenced
Cause, the enclosed original and one judge's carbon copy with the
attached EXHIBITS, my PRO SE SUPPLEMENTAL REPLY.

   I have also enclosed an additional first page carbon copy of
the the REPLY to be stamped by the Court as FILED & DATED and
returned to me in the enclosed stamped self addresses envelope
to my above address.

   I thank the Clerk of the Court for your assistance in filing
the original and judge's carbon copy with two sets of Exhibits of
my Pro Se Supplemental Reply and for returning the STAMPED COPY
to me in the enclosed envelope.

                         Sincerely,

                         John David Battaglia


cc: Mr. Dryden-Texas A.G. Office
cc: file



JOHN D. BATTAGLIA - 999412
Polunsky Unit
3872 FM 350 South
Livingston, TX 77351

U.S. DISTRICT Court
Northern District of Texas
DALLAS DIVISION
1100 Commerce Street
DALLAS, TX 75242

RECEIVED

SEP 2 0 2011

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

LEGAL MAIL