IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN DAVID BATTAGLIA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | |
| | § | No. 3:09-cv-1904-B-BN |
| WILLIAM STEPHENS, Director | § | |
| Texas Department of Criminal Justice, | § | (Death Penalty Case) |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner John David Battaglia, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Judge Boyle has referred the matter to the undersigned magistrate judge. For the reasons stated in these Findings, Conclusions, and Recommendation ("FCR"), the application should be denied.

## Background

Petitioner was convicted of capital murder and sentenced to death in Dallas County, Texas. His conviction and sentence were affirmed on direct appeal. *See Battaglia v. State*, No. AP-74,348, 2005 WL 1208949 (Tex. Crim. App. May 18, 2005). Petitioner filed an application for a post-conviction writ of habeas corpus, which was denied by the Texas Court of Criminal Appeals ("CCA"). *See Ex parte*

1

*Battaglia*, No. WR-71,939-01, 2009 WL 3042925 (Tex. Crim. App. Sep. 23, 2009). Petitioner then filed a petition for writ of habeas corpus with supporting brief in this court through appointed counsel. *See* Dkt. No. 27. Subsequently, Petitioner filed a *pro se* supplemental petition with leave of court. *See* Dkt. No. 62. Respondent has filed his answer, *see* Dkt. No. 66, and Petitioner has filed his reply, *see* Dkt. No. 73, and *pro se* reply, *see* Dkt. No. 74.

Evidence at trial indicated that Battaglia had a long history of violence, particularly against his former wives, that would escalate if the victim reported it to authorities. On Christmas morning 1999, Battaglia attacked and beat his estranged wife, Mary Jean Pearl,[1] in front of their daughters, resulting in Battaglia's being placed on probation with restrictions. The subsequent divorce decree between Pearl and Battaglia also contained a protective order and conditions restricting Battaglia, who continued to threaten and abuse Pearl. In revenge against Pearl for court action to revoke his probation due to his continued abuse of Pearl, Battaglia brutally killed his daughters Mary Faith Battaglia (age nine) and Liberty Battaglia (age six) during a scheduled visitation on May 2, 2001, while their mother listened helplessly on the phone. As described by the CCA:

> Ms. Pearl dropped the girls off with [Battaglia] at the agreed meeting place and then went to a friend's house. When she arrived, she received a message that the girls had called and wanted to ask her something. Ms. Pearl dialed [Battaglia's] phone number. [Battaglia]

---

[1] Mary Jean Pearl is also referred to in the record as Mary Jean Battaglia. In this FCR, she is referred to by her maiden name, Pearl, which she used at the time of trial. *See* Vol. 50, Reporter's Record, at 157 (hereinafter 50 RR 157).

answered the phone, which was on the speaker-phone function, and ordered Mary Faith to "ask her." Mary Faith said, "Mommy, why do you want Daddy to go to jail?" Ms. Pearl began to tell [Battaglia] not to do this to the girls, and then she heard Mary Faith say, "No, daddy, please don't, don't do it." Ms. Pearl yelled into the phone, "Run, run for the door." She heard gunshots, and [Battaglia] scream, "Merry f****ng Christmas." After hearing more gunshots, Ms. Pearl hung up and called 911.

*Battaglia v. State*, 2005 WL 1208949, at *1. The police discovered the girls' dead bodies in Battaglia's apartment, each with numerous gunshot wounds, including contact wounds to the back of their heads. *Id.* at *2; 50 RR at 147-148; 51 RR 121-122, 128, 131, 133-134, 143-144. After the killings, Battaglia went with a female companion to a bar and then to a tattoo parlor where he got tattoos related to his daughters. He was arrested outside of the tattoo parlor after a struggle with the police. *See Battaglia v. State*, 2005 WL 1208949, at *2.

Three mental health experts testified for the defense at trial that Battaglia suffered from a bipolar mood disorder, and the third defense expert also testified that Battaglia had "immature personality disorder" and a substance-abuse disorder that was in remission due to his confinement. *See* 2005 WL 1208949, at *3-*4; 53 RR 92; 54 RR 39; 55 RR 49-50. All three conceded that Battaglia knew what he was doing at the time of the murders. *See* 2005 WL 1208949, at *3-*4; 53 RR 122-123; 54 RR 58, 62; 55 RR 73-75. The State also called a mental health expert who testified that Battaglia had a form of bipolar disorder but also exhibited characteristics of an antisocial personality. *See* 2005 WL 1208949, at *4; 54 RR 122-124. He also testified that Battaglia's murder of his daughters was an angry and vindictive act, that he

had their mother on the phone during the murders to punish her in retribution, and that Battaglia's conscience would not keep him from committing offenses in the future because it did not keep him from committing the instant offense. *See* 2005 WL 1208949, at *4; 54 RR 106, 114, 119.

### Grounds for Relief

In his original petition, Petitioner presents eight grounds for relief, one with sub-grounds, as follows:

1. The execution of mentally ill capital offenders who lack volitional control is prohibited under the evolving standards of decency applicable to the Eighth Amendment of the Constitution of the United States. *See* Dkt. No. 27 at 21-36.

2. Petitioner was deprived of his right to a fair and impartial jury because Hispanics were significantly under-represented on his jury venire in violation of the fair cross-section requirement of the Sixth Amendment of the Constitution of the United States. *See* Dkt. No. 27 at 36-51.

3. Petitioner was deprived of his right to a fair and impartial jury and due process of law when the trial court denied his challenges for cause as to seven venire-members who had formed opinions as to his guilt based on pre-trial publicity. *See* Dkt. No. 27 at 51-60.

4. Petitioner was deprived of his right to a fair and impartial jury and due process of law when the trial court ignored legislative mandates regarding the proper method for selecting jurors and granted the State's challenge for cause of a venire-member. *See* Dkt. No. 27 at 60-68.

5. Petitioner was deprived of effective assistance at trial in that trial counsel (a) failed to adequately question the jury venire about their views on mental illness as mitigating during voir dire, (b) failed to adequately argue mental illness as mitigating during final arguments at punishment, (c) failed to present a PowerPoint presentation prepared for mitigation, and (d) failed

to use Petitioner's father as a mitigation witness. *See* Dkt. No. 27 at 68-86.

6.     The evidence is legally insufficient to prove beyond a reasonable doubt that Battaglia would commit criminal acts of violence that would constitute a continuing threat to society. *See* Dkt. No. 27 at 86-91.

7.     The state court's failure to review the factual sufficiency of a finding of future dangerousness violated the Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States. *See* Dkt. No. 27 at 91-96.

8.     The cumulative effect of the above-enumerated constitutional violations denied Petitioner due process of law in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States. *See* Dkt. No. 27 at 96-97.

Respondent contends that Petitioner's seventh claim is not cognizable in these proceedings, *see* Dkt. No. 66 at 122-124, that Petitioner's fourth claim is unexhausted and now procedurally barred, *see id.* at 78-81, and that Petitioner's second and fifth claims are also procedurally barred, *see id.* at 28-29, 90-91. Respondent also contends that Petitioner's first claim is barred by the non-retroactivity doctrine of *Teague v. Lane*, 489 U.S. 288 (1989), see Dkt. No. 66 at 25, and that all of Petitioner's claims lack merit.

Petitioner has also filed a *pro se* supplemental petition asserting three additional grounds for relief:

9.     The trial judge had a conflict of interest that deprived Petitioner of a speedy and public trial, of an impartial jury, and of due process of law under the Sixth and Fourteenth Amendments of the Constitution of the United States. *See* Dkt. No. 62 at 3-13.

10.    The forcible administration of medication during voir dire and trial violated Petitioner's rights to due process and a fair trial

> under the Sixth and Fourteenth Amendments of the
> Constitution of the United States. *See* Dkt. No. 62 at 14-25.

11. Trial counsel provided ineffective assistance in that a conflict of
interest existed in violation of Petitioner's rights under the Sixth
and Fourteenth Amendments of the Constitution of the United
States. *See* Dkt. No. 62 at 26-29.

Respondent asserts that these supplemental claims all are time-barred under 28
U.S.C. § 2244(d), are unexhausted, are procedurally defaulted, and lack merit. *See*
Dkt. No. 66 at 128-134.

For the reasons set out below, all claims should be denied.

## Legal Standards

Several preliminary requirements must be satisfied before reaching the
merits of a claim made in a federal habeas proceeding under 28 U.S.C. § 2254, as
amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

### A. Exhaustion

A federal court may not grant habeas relief on any claim that the state
prisoner has not first exhausted in the available state corrective process. *See* 28
U.S.C. § 2254(b)(1)(A); *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011). The federal
court may, however, deny relief on the merits notwithstanding any failure to
exhaust. *See* 28 U.S.C. § 2254(b)(2); *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir.
2005).

### B. State-Court Procedural Determinations

A federal court will not reach the merits of claims denied by the state court
on state procedural grounds, if the state-law grounds are independent of the federal

claim and adequate to bar federal review. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), modified by *Martinez v. Ryan*, 132 S. Ct. 1309, 1315, 1316-19 (2012). If, however, the state procedural determination is based on state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows than an exception to the bar applies, the federal court must resolve the claim without the deference that the AEDPA otherwise requires. *See Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) (the AEDPA's deferential standard of review would not apply to a procedural decision of the state court); *Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits." (citing *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997))); *Mercadel v. Cain*, 179 F.3d 271, 274-75 (5th Cir. 1999) ("the AEDPA deference scheme outlined in 28 U.S.C. § 2254(d) does not apply" to claims not adjudicated on the merits by the state court).

## C. State-Court Merits Determinations

A federal court may not grant relief on claims that the state court denied on the merits unless the claim was unreasonably adjudicated by the state court, as defined in 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In the context of this analysis, "adjudicated on the merits" is a term of art that refers to a state court's disposition of a case on substantive rather than procedural grounds. *See Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). This provision does not authorize habeas relief but restricts this Court's power to grant relief to state prisoners by barring claims in federal court that were not first unreasonably denied by the state courts. The AEDPA limits rather than expands the availability of habeas relief. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Richter*, 131 S. Ct. at 784. "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal citations omitted) (quoting *Richter*, 131 S. Ct. at 786, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently than the United States Supreme Court on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218

F.3d 360, 363 (5th Cir. 2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. This objective standard applies to all claims that were adjudicated on the merits in state court and presented in federal habeas corpus petitions that, as in the instant case, were filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

This Court may not grant relief on a claim adjudicated on the merits by the state court unless the record before the state court first justifies an objective finding of unreasonableness under Section 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 131 S. Ct. at 1400 (footnote omitted). Similarly, the evidence required under Section 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### D. Independent Merits Determination

Federal habeas relief is not available merely because the high standard in Section 2254(d) is met. In the event that the state-court adjudication is deemed unreasonable, the federal court must still determine whether habeas relief is warranted. "When a state court's adjudication of a claim is dependent on an

antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Therefore, in those rare cases in which a state prisoner makes the difficult showing required under Section 2254(d), the federal court must make its own independent determination of the merits of the claim and conduct the evidentiary development necessary to properly make that determination. *See, e.g.*, *Smith v. Cain*, 708 F.3d 628, 634-35 (5th Cir. 2013) (holding that district court properly conducted evidentiary hearing after determining that state court unreasonably applied *Batson*); *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010) ("when a petitioner makes a prima facie showing of mental retardation, a state court's failure to provide him with an opportunity to develop his claim deprives the state court decision of the deference ordinarily due under the AEDPA"); *Rivera v. Quarterman*, 505 F.3d 349, 358 (5th Cir. 2007) ("where a petitioner has made a prima facie showing of retardation as Rivera did, the state court's failure to provide him with the opportunity to develop his claim deprives the state court's decision of the deference normally due").

## Claims in Original Petition

Battaglia's appointed counsel filed a petition that asserted eight grounds for federal habeas relief. For the reasons set out below, each of these asserted grounds for relief should be denied.

### A. Mental Illness Exemption

In his first claim, Battaglia asserts that his execution would violate the Eighth Amendment due to his mental illness. Specifically, Battaglia claims that the "imposition of the death penalty on a defendant whose particular mental illness prevents him from conforming his conduct to the requirements of law constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution." Dkt. No. 27 at 21. Respondent asserts that this claim lacks merit and is barred by the non-retroactivity doctrine of *Teague*, 489 U.S. at 310. *See* Dkt. No. 66 at 23-27.

The state court denied this claim as unsupported by legal precedent. The claim was raised as Battaglia's fourteenth claim in his direct appeal to the CCA.

> Appellant does not contend that he was or is insane or mentally retarded. Rather, he points to expert testimony at trial stating that his mental illness, bipolar disorder, was a contributing factor in the commission of the offense. He argues that his mental illness caused his reasoning to be impaired, diminished his capacity to evaluate the consequences of his actions, and rendered him unable to conform his behavior to society's norms. But there is no Supreme Court authority or authority from this Court suggesting that mental illness which is a "contributing factor" in the defendant's actions or that caused some impairment or some diminished capacity is enough to render one immune from execution under the Eighth Amendment. Certainly the issues concerning appellant's mental illness were relevant to the question of mitigation and were properly presented and argued at punishment. But this Court has previously rejected an invitation to extend the federal constitutional proscription against execution of the insane to the greater category of mentally ill defendants, and we decline to do so today. Point of error fourteen is overruled.

*Battaglia v. State*, 2005 WL 1208949, at *10 (footnotes omitted).

Petitioner has pointed this Court to no determination by the United States Supreme Court that the execution of a mentally ill person who was not insane under state law, mentally retarded, or incompetent to be executed would violate the Eighth Amendment, and the undersigned has found none. Instead, Petitioner argues for a change in the law based on evolving standards of decency reflected in court decisions regarding the level of moral culpability required for the death penalty, *see* Dkt. No. 27 at 22-26 (citing *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Roper v. Simmons*, 543 U.S. 551 (2005)), and the passage of legislation in other states, *see* Dkt. No. 27 at 27-35. Therefore, the state court's determination was not contrary to or an unreasonable application of any existing clearly established federal law as determined by the Supreme Court.

This claim would also rely on a new rule of law that has not yet been adopted, much less applied retroactively. It is, therefore, barred by *Teague* as well.

Battaglia's first claim should be DENIED.

### B. Fair Cross-Section

In his second claim, Battaglia asserts that he was denied his right to an impartial jury under the Sixth Amendment because Hispanics were under-represented in Dallas County jury venires during the time period of his trial. *See* Dkt. No. 27 at 36-51. Respondent asserts that this claim is procedurally barred, *see* Dkt. No. 66 at 27-29, and lacks merit, *see id.* at 29-43.

### 1.  State Court Findings

The state court on post-conviction habeas review found that Battaglia did not raise this objection at trial and was therefore procedurally barred from raising it in the postconviction habeas proceedings. *See* State Habeas Finding ("SHF") Nos. 1-2, State Habeas Record ("SHR") at 495. The state court also found in the alternative that the claim lacked merit. It only found that one of the three elements set out in *Duren v. Missouri*, 439 U.S. 357, 364 (1979), had been shown: that Hispanics are a distinctive group in Dallas County. *See* SHR at 496.

Applying the second prong of *Duren*, the state court found that Battaglia had not shown that the number of Hispanics in Dallas County venires is not fair and reasonable in relation to the number of Hispanics in Dallas County who are qualified for the jury selection. *See* SHR at 497-500. The state court found that Battaglia relied on an affidavit from Dr. Harold J. Hietala, "who, in turn, has based his opinion on a flawed means of measuring underrepresentation of Hispanics in Dallas County venires." 4 SHR 498. Battaglia's expert report did not indicate the number of Hispanics who were actually qualified to serve on a jury but relied on statistics that included unqualified persons. *See* SHR at 498-500. Further, Battaglia did not accurately identify those members of the jury venire who were Hispanic so that a proper comparison could be made. *See* SHR at 497-500.

Applying the third prong of *Duren*, the state court found that Battaglia also failed to show a "systematic exclusion" of Hispanics. SHR at 500-505. The state court concluded that Battaglia did not show that a systematic defect barred

Hispanics from selection for jury service or that Dallas County applied different selection standards for Hispanics. *See* SHR at 502. Instead, Battaglia merely suggested that Hispanics did not respond to their jury summons in the same proportion as other groups. *See* SHR at 593. The state court found that the jury selection system was made equally open to all groups and that the claimed motivations for the lack of response (that is, low juror pay and need to update potential juror addresses) apply equally to all groups and were not shown to have been imposed disparately on eligible Hispanic potential jurors. *See* SHR at 503-505.

The state court also noted Dr. Hietala's opinion admitting that the percentage of Hispanics summoned for jury service reasonably reflects the census population of Hispanics in the county. *See* SHR at 503. The state court concluded that Hispanics are not under-represented on Dallas County venires, that the selection process in Dallas County does not result in a systemic exclusion of Hispanics, and that no violation of the fair cross-section of the community requirement of the Sixth Amendment had been shown. *See* SHR at 505.

### 2. Analysis

#### i. Procedural Bar

"A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Martinez*, 132 S. Ct. at 1316. The Supreme Court has set forth limited exceptions to this bar. "A prisoner may

obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Id.* (expanding definition of cause in an equitable sense to excuse procedural default on certain ineffective-assistance-of-counsel claims). The Supreme Court has also recognized a miscarriage-of-justice exception where a petitioner asserts actual innocence as a gateway to the consideration of procedurally barred claims. *See House v. Bell*, 547 U.S. 518, 536-37 (2006) (holding a petitioner must show that, in light of new evidence, "'It is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

The state habeas court found that Battaglia did not raise this fair cross-section claim at his trial. *See* SHR at 495. The court expressly and unambiguously concluded that Battaglia forfeited the error by not raising it previously and denied the claim as procedurally barred. *See id.* (citing *Ex parte Pena*, 71 S.W.3d 336, 338 n.7 (Tex. Crim. App. 2002); *Ex parte Bagley*, 509 S.W.2d 332, 333-334 (Tex. Crim. App. 1974)). These findings were adopted by the CCA in its denial of relief. *See Ex parte Battaglia*, 2009 WL 3042925.

The Texas contemporaneous-objection rule is an independent and adequate state ground to bar federal habeas review. *See Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir. 2005); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). The state requirement to timely raise a fair cross-section claim prior to its post-conviction habeas proceedings is adequate to bar federal habeas review of the merits of these claims. *See Paredes v. Quarterman*, 574 F.3d 281, 288-89 (5th Cir. 2009) (finding

fair cross-section challenge to grand jury procedurally defaulted); *Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000) (concluding that the district court erred in failing to apply state procedural default to bar review of fair cross-section challenge to petit jury venire).

Battaglia has not shown that an exception exists to the imposition of the procedural bar. Therefore, Battaglia's second claim should be DISMISSED as procedurally barred.

### ii. Alternative Merits Review

In the alternative, the undersigned finds that this claim lacks merit. To establish a prima facie violation of the fair cross-section requirement, a defendant must show (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury selection process. *See Duren*, 439 U.S. at 364. As in the state court, Battaglia has only shown one of these three elements: that Hispanics are a distinctive group in Dallas County. *See* Dkt. No. 27 at 36; SHR at 496.

Battaglia complains that the state court unreasonably limited its comparison of the percentage of Hispanic venirepersons to the percentage of jury-eligible Hispanics in the community. *See* Dkt. No. 27 at 39-41. "However, to establish the prima facie case of a denial of a fair cross-section, the disparity between the

proportion of members of an identifiable class on a jury list must be based not on total population but, instead, on those of the identifiable class who are eligible to serve as jurors." *United States v. Brummitt*, 665 F.2d 521, 529 (5th Cir. 1981).

Even if Battaglia had shown an underrepresentation of Hispanics, however, he has not shown that it was the result of a systematic exclusion. Battaglia argues that low juror pay and a failure to enforce the summons, allowing Hispanic jurors to effectively "opt out" of jury service without further inquiry, are factors that combined over time to constitute a systematic exclusion of Hispanics.[2] *See* Dkt. No. 27 at 44-46. This is not supported by clearly established federal law as determined by the Supreme Court.

In *Berghuis v. Smith*, 559 U.S. 314, 332 (2010), the Supreme Court stated that "[n]o 'clearly established' precedent of this Court supports [the federal habeas petitioner's] claim that he can make out a prima facie case merely by pointing to a host of factors that, individually or in combination, might contribute to a group's underrepresentation." The Court reversed the Sixth Circuit's grant of habeas relief that was based on a laundry list of factors that included low juror pay and failure to enforce the summons, because those factors were insufficient to show a systematic exclusion in violation of the fair cross-section guarantee. The Supreme Court held that a state court determination would not be "unreasonable" under Section 2254(d)(1) "in concluding that *Duren* first and foremost required [the habeas

---

[2] Before the state court, Battaglia also listed the failure of Hispanics to update their addresses, which was also found insufficient to support a fair cross-section claim. *See* SHR at 563-64.

petitioner] himself to show that the underrepresentation complained of was 'due to systematic exclusion.'" *Berghuis*, 559 U.S. at 332.

Further, Battaglia's complaint relies on a disparity in the number of Hispanics that appeared in response to a jury summons, not in the issuance of summons. The affidavit of Dr. Harold Hietala conceded that "Hispanics are summoned for jury service in the same proportion as their representation in the population of people 18 years of age or older." SHR 84 (quoting Hietala Affidavit at 6). Similar claims based on this same evidence have been rejected in this Circuit. *See e.g., Rivas v. Thaler*, 432 F. App'x 395, 402-403 (5th Cir.), *cert. denied*, 132 S. Ct. 850 (2011). The United States Court of Appeals for the Fifth Circuit has explained:

> As the state habeas court and the district court correctly observed, Rivas has not alleged any underrepresentation in the percentage of individuals in these groups who were ***called*** for jury service. Rather, the crux of Rivas's claim is that the percentage of individuals in these two groups who actually ***appeared*** for jury service was significantly less than the percentage of such individuals in Dallas County at the time. Rivas contends that low juror pay and Dallas County's lack of enforcement of its summonses is to blame for the disparate turnout. But the fact that certain groups of persons called for jury service appear in numbers unequal to their proportionate representation in the community does not support Rivas's allegation that Dallas County systematically excludes them in its jury selection process. Such an occurrence does not constitute the type of affirmative barrier to selection for jury service that is the hallmark of a Sixth Amendment violation. *See Taylor v. Louisiana*, 419 U.S. 522, 531, 95 S. Ct. 692, 42 L.Ed.2d 690 (1975) (holding unconstitutional a state statute that excluded women from jury service unless they had previously filed written declaration indicating their desire to serve).

*Id.* (emphasis in original); *see also Doyle v. Thaler*, No. 3:08-cv-138-B, 2012 WL 2376642, at *8-*11 (N.D. Tex. June 25, 2012); *Escamilla v. Thaler*, No. 3:06-cv-2248-O, 2012 WL 1019605, at *13-*14 (N.D. Tex. Mar. 26, 2012).

Battaglia has not shown that the state court's rejection of his fair cross-section claim was incorrect, much less unreasonable. Therefore, even if this claim is not procedurally barred, it lacks merit.

Battaglia's second claim should be DISMISSED as procedurally barred or, in the alternative, DENIED for lack of merit.

## C. Juror Challenges

In his third and fourth claims, Battaglia raises issues regarding the trial court's action on challenges for cause to prospective jurors.

### 1. Denying Challenges

Battaglia claims that his Sixth and Fourteenth Amendment rights to an impartial jury were violated by the denial of his challenges for cause to seven potential jurors who had heard about the case and formed opinions about Battaglia's guilt. The state court upheld the denial of these challenges on direct appeal. *See Battaglia v. State*, 2005 WL 1208949, at *5-*6 (citing *Cockrum v. State*, 758 S.W.2d 577, 587-89 (Tex. Crim. App. 1988) (en banc)). The CCA in *Cockrum* explained that "[p]rior knowledge of a crime from the news media and community discussion is not sufficient grounds to require that a venireman be excused for cause. The sole question for determination is whether a juror can put aside prior

knowledge and opinion and render an impartial verdict." 758 S.W.2d at 589

(citations omitted). This is consistent with clearly established federal law:

> The constitutional standard of fairness requires that a defendant have "a panel of impartial, 'indifferent' jurors." Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
>
> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Murphy v. Florida*, 421 U.S. 794, 799-800 (1975) (citations omitted) (quoting *Irvin v. Dowd,* 366 U.S. 717, 722-23 (1961)).

Battaglia argues that the state court applied the wrong standard by basing its decision to uphold the denial of these challenges on a determination from the record that each of these jurors could put those opinions aside and base a verdict solely on the law and evidence presented. *See* Dkt. No. 27 at 58. Battaglia submits that the correct standard would require the imposition of a conclusive presumption that the potential jurors could not be fair because their opinions were not merely "preconceived notions" but rose to the level of "strong and deep opinions – as to the defendant's guilt." Dkt. No. 27 at 58.

This argument is not supported by clearly established federal law and therefore does not satisfy the showing required under Section 2254(d)(1). Instead, Battaglia's argument appears to rely on the different standard contained in Article

35.16(a)(10) of the Texas Code of Criminal Procedure. *See* Dkt. No. 27 at 55. This is a matter of state law that does not support federal habeas relief. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (internal quotation omitted); *see also Anderson v. Quarterman*, 204 F. App'x 402, 406 (5th Cir. 2006).

To the extent that Battaglia makes an argument for the extension of federal law that is not now clearly established, and was not clearly established at the time of the state court adjudication of this claim, he has failed to make the showing required by 28 U.S.C. § 2254(d)(1).

Under either analysis, the state court's adjudication was not contrary to nor an unreasonable application of clearly established federal law.

Battaglia's third claim for relief should be DENIED.

### 2. Granting Challenges

In his fourth claim, Battaglia complains that his Sixth and Fourteenth Amendment rights to an impartial jury and to due process were violated because the trial court improperly granted the State's challenge for cause to a potential juror. The issue before this Court is whether a trial court, in excusing a potential juror who expresses a view that could make it impossible for the State to satisfy its burden of proof on a special issue, violates the United States Constitution,

particularly when the potential juror otherwise expresses views that favor imposition of the death penalty.

### *i. Law*

The Sixth Amendment protects the right to a fair trial before an impartial jury. In *Witherspoon v. Illinois*, 391 U.S. 510, 512-23 (1968), the Supreme Court held that the prosecutor's use of an Illinois statute that excluded for cause any prospective juror with "conscientious scruples" against capital punishment to eliminate nearly half of the venire did not result in a jury that reflected the "conscience of the community" but rather "stacked the deck" in favor of the prosecution in violation of the Sixth Amendment. Later, the Supreme Court clarified that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment" is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)).

In applying this standard, the Court in *Witt* also explained that a presumption of correctness applies to the trial court's determination of a challenge for bias. *See id.* at 430. "[S]uch a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Id.* at 428 (footnote omitted). The trial court need not detail its reasoning or explicitly conclude whether a prospective juror is biased, so long as it is evident from the record. *See id.* at 430.

The Supreme Court reviewed these principles and reaffirmed the deference owed to the trial court in *Uttecht v. Brown*, 551 U.S. 1 (2007). "Thus, when there is ambiguity in the prospective juror's statements, 'the trial court, aided as it undoubtedly [is] by its assessment of [the venireman's] demeanor, [is] entitled to resolve it in favor of the State.'" *Id.* at 7 (quoting *Witt*, 469 U.S., at 434). "Even when '[t]he precise wording of the question asked of [the venireman], and the answer he gave, do not by themselves compel the conclusion that he could not under any circumstance recommend the death penalty,' the need to defer to the trial court remains because so much may turn on a potential juror's demeanor." *Id.* at 8 (quoting *Darden v. Wainwright*, 477 U.S. 168, 178 (1986)). "The absence of an objection, and the trial court's decision not to engage in further questioning as it had prior to excusing other jurors, supported the conclusion that the juror was impaired." *Id.* The Supreme Court stressed the need to show this deference in federal habeas review.

> Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors. Leading treatises in the area make much of nonverbal communication.

> The requirements of the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214, of course, provide additional, and binding, directions to accord deference. The provisions of that statute create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings.

*Id.* at 9-10 (citations omitted).

### ii. Analysis

Battaglia raised this claim in his eighth point of error on direct appeal. In his appellate brief, Battaglia did not contend that the trial court excluded the potential juror because of his views on the death penalty in violation of the *Witherspoon-Witt* line of cases but asked the state court to overrule its precedent that, "except in very limited circumstances (e.g., erroneous exclusion because of race, sex, ethnicity, opposition to death penalty), error in the granting of State's challenges for cause does not rise to the level of constitutional error." App. Br. at 63 (citing *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998)). The state court denied the claim, refusing to overrule its precedent and finding instead that any error was not constitutional and that no harm was shown.[3] *See Battaglia v. State*, 2005 WL 1208949, at *6. These finding are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1).

---

[3] The CCA explained:

> In point of error eight, appellant claims that the trial court violated his rights by granting the State's challenge for cause which was made on the ground that venireperson Eric Aemisegger had foreclosed the possibility of the State being able to prove future dangerousness in a prison society. Although appellant alleges that the error violated his rights under the Sixth and Fourteenth Amendments, in *Jones v. State*, this Court held that "the constitutional right to trial by an impartial jury is not violated by every error in the selection of a jury." Instead, it is "[o]nly in very limited circumstances, when a juror is erroneously excused because of general opposition to the death penalty ("Witherspoon" error)," that "the exclusion of a juror by an unintentional mistake amount[s] to a constitutional violation." Mr. Aemisegger was not excused because of his opposition to the death penalty. Thus, any error here was nonconstitutional.

> Appellant does not allege that he was harmed, but rather urges this Court to overrule *Jones*, which held that the "erroneous excusing of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury." We decline to overrule *Jones*. Even assuming that the trial court erred in granting the State's challenge for cause to Mr. Aemisegger, appellant

During individual voir dire, venireperson Eric Aemisegger testified that he strongly favored the death penalty. *See* 26 RR 20-22. While discussing the requirement in the first special issue for the State to prove beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society, the venireperson indicated that he understood the word "society" to "technically" exclude prison.

> Q.   .... How would anybody ever be a threat to society then if they were doing a life sentence, or could they ever be for someone like you, the way I'm understanding what you're saying, could they ever be a threat if they were doing a life sentence?

> A.   Technically no. Not with them being in prison the whole time they could not be a threat. If you took it as a situation if they were let out of prison, that's kind of what I see that as.

26 RR 53-54.

> Q.   .... Would anybody ever be a continuing threat to society if you knew they were sitting on a life sentence?

> A.   Just taking into account they would be in prison until they die, then they could not be a threat to society if they are in prison. Society outside of prison.

> Q.   Okay. So I take it we could never prove to you the answer should be yes, the person is going to be a continuing threat to society. And I'm doing that based on what you told me that if they are in prison you don't think they are a threat to the prison population

---

has made no showing that the error deprived him of a lawfully constituted jury. Point of error eight is overruled.

2005 WL 1208949, at *6 (citations and footnotes omitted).

because they can be controlled. So they would never be a threat to society.

A.   I guess in the technical speaking of that if they are in prison then.

Q.   Then they are not a threat to people outside of prison.

A.   Technically speaking, yes.

*** 

Q.   So there would never be a probability that they would be a continuing threat.

A.   Not more likely, no.[4]

26 RR 56.

Following this examination by the prosecutor, Battaglia's trial counsel did not immediately conduct any examination but asked for a "break" in the proceedings. *See* 26 RR at 57. The trial court granted the request for a break, the juror was excused, and the following exchange occurred before the trial court.

THE COURT        What do we do with the guy?

MR. KIRLIN        I will do a challenge for cause.

THE COURT        I think any juror that could never – that cannot keep an open mind to any of the issues.

MR. BRAUCHLE   Well it's assumed to be no and he's right on board.

---

[4] This appears to be based on his understanding that "probability" meant "more likely than not." 26 RR 44-45.

| | |
|---|---|
| MR. ROBINSON | But it could never be proved yes. |
| MR. JOHNSON | He's on. |
| THE COURT | At this point do you want to challenge |
| MR. KIRLIN | Yes Your Honor. |
| THE COURT | Go ahead. |
| MR. KIRLIN | Your Honor at this time the State would challenge juror No. 1415 for cause, based on his answer regarding Special. Issue No. 1. And basically I think the response that he could not or would not – the State could never convince him that the answer to Special Issue 1 should be yes was pretty clear from his responses. For that reason we would ask that – we would challenge him for cause. |
| THE COURT | All right. The challenge is granted. |

26 RR 57-58. It appears on this record that all of the attorneys and the trial judge understood that the prospective juror would never answer the special issue in such a way as to allow a death penalty. Understandably, the defense attorneys appeared to support such a potential juror, but they provided no legal objection to the challenge and offered no reasoning to suggest that the juror would ever be able to answer the question any other way. The trial court appeared to have no alternative other than to grant the State's motion to exclude the prospective juror for cause.

On appeal, Battaglia's attorney provided no authority in support of his position that the trial court abused its discretion other than a vague assertion from general principles and state procedural rules that a trial court should always be

considered to abuse its discretion whenever it excludes for cause a "qualified" juror, along with his argument for the CCA to overturn its precedent holding otherwise. *See* App. Br. at 60-64.

Before this Court, Battaglia's claim fares no better. He does not rely on the *Witherspoon-Witt* line of cases, for indeed the juror did not appear to oppose the death penalty. And Battaglia does not identify any clearly established federal law that would prohibit a trial court from excluding for cause a potential juror who would never answer a special issue in a way that would result in a death penalty.

Since Battaglia has not shown the state court's rejection of this claim to be incorrect, much less unreasonable, Battaglia's fourth claim for relief should be DENIED for lack of merit.

### D. Effective Assistance of Counsel

In his fifth claim for relief, Battaglia complains that he was deprived of the effective assistance of counsel guaranteed by the Sixth Amendment in four ways pertaining to mitigation. Specifically, Battaglia claims that trial counsel (1) failed to adequately question prospective jurors about their views on mental illness as mitigating during voir dire, (2) failed to adequately argue mental illness as mitigating during final arguments at punishment, (3) failed to present a PowerPoint presentation that had been prepared for mitigation, and (4) failed to use Petitioner's father as a mitigation witness.

### 1. Standard

Claims of ineffective assistance of counsel are measured by the familiar two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient. *See Strickland*, 466 U.S. at 687. The second prong requires the defendant to show prejudice resulting from counsel's deficient performance. *See id.* at 687, 694. The Court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *See id.* at 697, 700.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir.), *cert. denied*, 131 S. Ct. 265 (2010). Because this claim was adjudicated on the merits in the state court, the presumption of competence required in *Strickland* combined with the deference required under Section 2254(d) makes this Court's review of the state-court adjudication "doubly deferential." *Pinholster*, 131 S. Ct. at 1403, 1410. In the federal habeas review of a *Strickland* claim, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable" and not whether the reviewing court itself believes trial counsel's performance violated *Strickland's* standards. *Harrington*, 131 S. Ct. at 785. In other words, the AEDPA does not permit a *de novo* review of state trial counsel's conduct in these claims under *Strickland*. *See id.* at 785-86. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted

"a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 785.

### 2. Procedural Bar

Respondent asserts a procedural bar to each of these claims of ineffective assistance of trial counsel. *See* Dkt. No. 66 at 90-91. The state habeas court found that each of these claims were based entirely on the record in the direct appeal, that Battaglia "expressly limited his claim to matters solely within" that record, that he should therefore have raised these claims in the direct appeal, and that he was, therefore, procedurally barred from raising them in the state post-conviction habeas proceedings.[5] SHR at 506-507 (citing *Ex parte Nelson*, 137 S. W.3d 666, 667 (Tex. Crim. App. 2004); *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); *Ex parte Nailor*, 149 S.W.3d 125, 130-31 (Tex. Crim. App. 2004)).

"A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Martinez*, 132 S. Ct. at 1316 (citing *Walker v. Martin*, 131 S. Ct. 1120, 1127-1128 (2011); *Beard v. Kindler*, 558 U.S. 53, 60 (2009)). Another judge of this district has observed that "a state procedural default for failure to raise an ineffective assistance of trial counsel claim in the direct appeal does not appear to have been regularly followed in the Texas

---

[5] Battaglia did, however, request an evidentiary hearing that was denied by the state habeas court, *see* SHR at 451, which then resolved these claims in the alternative based on a lack of sufficient evidence, *see* SHR at 531.

courts and is therefore insufficient to bar federal habeas review." *McCarthy v. Thaler*, No. 3:07-CV-1631-O, 2011 WL 1754199, at *3 (N.D. Tex., May 9, 2011), *COA denied*, 482 F. App'x 898, 905-906 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 848 (2013); *see also Parr v. Thaler*, 481 F. App'x 872, 874-75 (5th Cir. 2012) (noting unchallenged finding that "a state court determination that an ineffective assistance of counsel claim is waived if not raised on direct appeal is neither firmly established nor regularly followed in Texas"). And the Supreme Court has recently observed that "Texas procedure makes it 'virtually impossible for appellate counsel to adequately present an ineffective assistance [of trial counsel] claim' on direct review." *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (May 28, 2013). Under the circumstances, in this case the undersigned will not rely on the alleged procedural bar but instead will reach the merits of these claims.

### 3. Analysis

Each of these claims alleges deficient performance relating to the presentation of mitigating evidence at Battaglia's trial. Although the state court found that these claims were procedurally barred, it also analyzed and denied each of them on the merits in the alternative. Therefore, the standard under Section 2254(d) applies to the state's alternative merits analysis. *See Busby v. Dretke*, 359 F.3d 708, 721 n. 14 (5th Cir. 2004) (affording deference to merits finding when state court "invoked a procedural bar as an alternative basis to deny relief"); *accord Rolan v. Coleman*, 680 F.3d 311, 319 (3rd Cir. 2012) (holding that "AEDPA deference applies when a state court decides a claim on procedural grounds and,

alternatively, on the merits"); *Stephens v. Branker*, 570 F.3d 198, 208 (4th Cir. 2009) ("we agree with our sister circuits that an alternative merits determination to a procedural bar ruling is entitled to AEDPA deference"); *Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008) (holding that the state "court's alternative merits ruling receives AEDPA deference"); *Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004) (affording deference when state court found "claim to be unpreserved, and, in any event, without merit"); *Johnson v. McKune*, 288 F.3d 1187, 1192 (10th Cir. 2002) (affording deference when "the state court relied on the merits as an alternative basis for its holding"); *Bigby v. Thaler*, No. 4:08-CV-765-Y, 2013 WL 1386667, at *19-*20 (N.D. Tex. Apr. 5, 2013) (affording deference to state court's "alternative analysis" of claim on the merits"). Accordingly, this Court must apply the "double deference" required by *Pinholster*, 131 S. Ct. at 1403.

For the reasons set out below, these claims lack merit.

### i. Voir Dire

Battaglia complains that his trial counsel failed to adequately question the venire about their views on mental illness as mitigating. *See* Dkt. No. 27 at 70-74. The state court, however, found that counsel would "have been posing improper commitment questions by asking jurors whether they would consider mental illness a mitigating factor." SHR at 524. While the ultimate determination of whether counsel is ineffective is a matter of federal law, the determination of this underlying state-law matter is properly left to the state courts. *See Paredes v. Quarterman*, 574 F.3d at 291 (determination by CCA that state-law complaint lacked merit precluded

ineffective-assistance claim for failure to raise the state-law complaint). Federal courts in post-conviction habeas-corpus proceedings do not sit to review questions of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991).

Nevertheless, the undersigned notes that trial counsel attempted to obtain an instruction that could form the basis for asking potential jurors about what they would consider to be mitigating evidence. Prior to voir dire, trial counsel requested that the trial court "provide defense counsel prior to the commencement of voir dire with a definition of mitigation to be used in conducting the voir dire."[6] *See* 2 CR at 219-20. The trial court denied this motion. *See* 3 RR 36, 41.

---

[6] Defense counsel filed a motion to instruct the jury on mitigation, as follows:

> It is anticipated that the Defendant will offer at the penalty stage of this trial evidence in mitigation of the imposition of the death penalty. It is therefore essential that the jury be questioned during voir dire process with regard to its opinion about mitigation. Since the term mitigation is not defined in Texas law the Defendant must speculate as to the manner in which the Court will provide this information to the jury in its written instructions at the penalty phase. In order to properly conduct voir due it is necessary for the Defendant at this time to be made aware of the Court's intended definition of the word mitigation as it relates to the personal moral culpability of the Defendant and his actions as related to the pending matter.

2 Clerk's Record ("CR") at 219. During the pretrial hearing, defense counsel presented this as one of the motions connected with their voir dire of potential jurors:

> MR. JOHNSON   Judge, motion following these motions are particularized in the way to voir dire, because they seek to have the Court to define specifically certain terminology that will be important throughout the trial and throughout the voir dire proceedings.
>
> First motion, motion to have the Court to arrive at and define definitively for the jury a definition of mitigation, what the

|                | word should and would mean legally to a prospective veniremen in consideration of the issues before the jury. |
|----------------|---|
| THE COURT      | That's denied. I believe at this time that there is not a statutory or a definition approved by the Court of Criminal Appeals is that correct? |
| MR. JOHNSON    | Well that's our point. We believe -- let me go ahead and state that the motion is requesting that the jury be provided with definitions of criminal acts of violence the word deliberately, probability, continuing threats to society, society, reasonable expectation, and a life sentence in the Texas Department of Criminal Justice Institutional Division, as well as beyond a reasonable doubt. |
|                | The failure of the death penalty sentencing scheme to give a legally binding definition to those terms allows jurors to be arbitrary and capricious in how they define those terms themselves. Those all go back to the earlier motions that we feel based on the fact that the jurors are given no guidance in regards to these particular words that they have no individual or they have no single meaning to all the jurors as should be required. |

3 RR at 35-36. Later, the prosecutor caused the motion to be revisited:

|                | |
|----------------|---|
| PROSECUTOR     | Judge going back to the motion to define mitigation there is in the statute somewhat of a definition of mitigation which you're required to include in the jury instruction. The type of evidence that reduces a person's moral blameworthiness. It's 37.071(f)(4). |
| DEFENSE        | Judge what he's talking about the blanket statement evidence that would tend to lessen the moral blameworthiness of the person accused. That is -- again that's just the blanket statement that's what mitigation is. Our motions and our argument go to the statement that mitigation – that's not enough of a definition to make each particularized juror to consider mitigating evidence to be the same type of evidence. |
| THE COURT      | The law does not require that. |
| DEFENSE        | We feel it's unconstitutional because it isn't required upon the jurors to agree as to what this type of evidence is. It goes back to the entire sentencing scheme under 37.071 each juror -- one juror can say I don't think that lessens his moral |

Since state law would not have allowed trial counsel to ask these questions, counsel could not be ineffective for failing to take an action that was not allowed. *See Paredes*, 574 F.3d at 291; *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

### ii. Punishment Argument

Battaglia complains that his trial counsel failed to adequately argue mental illness as mitigating during final arguments at the punishment stage of his trial. *See* Dkt. No. 27 at 74-77. Counsel's choice of argument is a matter of trial strategy. *See Riley v. Cockrell*, 339 F.3d 308, 315-17 (5th Cir. 2003). "'A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)).

The state habeas court extensively reviewed the record and the strategy of defense counsel and concluded that, "during closing argument, defense counsel underscored the diagnoses of applicant's experts (RR56:45), questioned the credibility of the State's expert (RR56:37-41), and spent the majority of his time arguing for defense-oriented responses to the special issues." SHR at 525. The state

---

|  | blameworthiness and the other one says I think it does. Without further guidance from the sentencing scheme. |
|---|---|
| THE COURT | I think under the state of the law that would be a comment on the weight of the evidence by the Court and I can't do that. |

3 RR at 41.

court also found "that while counsel may have focused his argument on undermining the future dangerousness issue, he addressed the mitigation issue and never characterized any of the evidence as exclusive to future dangerousness." SHR at 527. The state court ultimately approved trial counsel's approach, concluding "that defense counsel shed the best – and only – possible light on an overwhelmingly incriminating State's case." SHR at 529.

Trial counsel arguments have been upheld even when stating that there was no mitigating evidence, although the same counsel had presented mitigating evidence in the punishment stage of the capital murder trial. *See Riley*, 339 F.3d at 315-17. The arguments of trial counsel in Battaglia's trial did not even rise to that level of concern.

Battaglia has not shown the state court's findings to be incorrect or unreasonable or trial counsel's closing argument to be constitutionally ineffective.

### iii. PowerPoint Presentation

Battaglia complains that his trial counsel failed to offer a certain PowerPoint presentation during the punishment stage of his trial. *See* Dkt. No. 27 at 77-83. The state court found that this evidence was inadmissible and conflicted with trial counsel's strategy. *See* SHR at 529-30. Because state law would have rendered this evidence inadmissible, counsel could not be ineffective for failing to offer inadmissible evidence, even if it were not inconsistent with their trial strategy. *See Paredes*, 574 F.3d at 291; *Clark*, 19 F.3d at 966.

Even if it was admissible, however, this Court must indulge a strong presumption that trial counsels' decision whether or not to present this evidence was sound trial strategy. *See Strickland*, 466 U.S. at 689. This was not a situation in which counsel failed to investigate or obtain the evidence in question, but rather Battaglia's claim implicates solely the strategic question of how best to present Battaglia's case. "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 690). Petitioner has not overcome this strong presumption or identified any evidence capable of doing so.

The state court's refusal to condemn trial counsel's strategy regarding this PowerPoint presentation has not been shown to be either incorrect or unreasonable.

### iv. Petitioner's Father

Battaglia complains that his trial counsel failed to offer Battaglia's father as a mitigation witness. *See* Dkt. No. 27 at 83-85. Again, this has not shown to be anything other than a strategic decision that was made after full investigation. The state court found that trial "counsel very carefully tailored their punishment phase evidence to focus solely on applicant's mental illness and its ability to produce defense-oriented answers to the special issues." SHR at 528. The state court also found that presenting Battaglia's father to testify would have undermined this strategy because his father "did not acknowledge that his son had any type of mental illness and would not cooperate with [defense counsel] in regard to doing

anything other than attempting to present himself as a perfect father." SHR at 530 (quoting Brauchle Aff.).

Battaglia has not shown, or identified any evidence capable of showing, that this finding was incorrect, much less unreasonable. Therefore, Battaglia has not shown that trial counsel's conduct in failing to call Battaglia's father as a witness to have been ineffective assistance.

### 4. Conclusion

Battaglia complains of trial counsel's strategy in the presentation of their mitigation case but has not shown that the state court's findings as to this claim were incorrect or that the state court's rejection of these claims was unreasonable. Instead, he argues that a different strategy might have been better. *See* SHR at 531. This is precisely the kind of second-guessing of trial counsel's strategy that *Strickland*, 466 U.S. at 689, requires courts to avoid. These claims therefore each lack merit.

Battaglia's fifth claim for relief, including all of its subparts, should be DENIED.

## E. Sufficiency of the Evidence

In his sixth and seventh claims, Battaglia criticizes the state court's disposition of his claims that the evidence was insufficient to support the future-dangerousness special issue. Both of these claims should be denied.

## 1. Legal Sufficiency

In his sixth claim, Battaglia asserts that the evidence was legally insufficient to prove the first special issue: that there is a probability that he would commit criminal acts of violence that would constitute a continuing threat to society. This claim was presented to the CCA in Battaglia's direct appeal. After setting forth the standard under *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), the CCA found as follows:

> The evidence is legally sufficient to support the jury's affirmative finding on the first special issue. The offense itself was particularly horrific, calculated, and cold-blooded. The evidence supports a conclusion that appellant crippled each of his daughters with gunshot wounds that severed their spines, and then held the gun against their heads and shot them again. There is evidence that appellant planned the killings in advance as an act of revenge toward Ms. Pearl, and that he manipulated the situation so that he could commit the murders as Ms. Pearl listened helplessly on the phone. The jury's "future dangerousness" finding is also supported by the evidence of appellant's assaultive, abusive, and threatening conduct toward both of his ex-wives over the years, as well as the assaults and threats towards Ms. Gheddi's seven-year-old son. The testimony at trial showed a pattern of increasingly violent conduct toward those who angered or annoyed him. Some of the expert testimony also supports the affirmative finding. Dr. Coons testified that, in his opinion, appellant committed the offense as an act of revenge; he lacked a conscience that helped him conform his conduct; and there was no guarantee that appellant would continue to take his medication in prison. There is ample evidence to support the jury's affirmative finding on the future dangerousness issue. Point of error nine is overruled.

*Battaglia v. State*, 2005 WL 1208949, at *5 (footnote omitted). This finding is entitled to AEDPA deference. *See Martinez v. Johnson*, 255 F.3d 229, 245 (5th Cir. 2001).

In *Jackson*, the Supreme Court held that, in reviewing the sufficiency of evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original); *accord Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). The Fifth Circuit has applied this "rational factfinder" test, along with AEDPA deference, to review the sufficiency of evidence to support an affirmative finding of the future-dangerousness special issue. *See Woods*, 307 F.3d at 357-358; *Martinez*, 255 F.3d at 243-44 (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)) ("Under § 2254(d), the limited question before this court is whether the CCA's decision to reject [the habeas petitioner's] sufficiency of the evidence claim in regard to future dangerousness was an objectively unreasonable application of the clearly established federal law set out in *Jackson*.").

The CCA found that the evidence in this case showed "particularly horrific, calculated, and cold-blooded" murders sufficient under *Jackson* for a rational trier of fact to find a probability that Battaglia would be a future danger. 2005 WL 1208949, at *5. This was not unreasonable. Battaglia complains that his violence was directed only against certain women to whom he would not have direct access while incarcerated. The CCA, however, also found that "evidence at trial showed

that his physical violence had also been triggered by his brother and by a stranger." 2005 WL 1208949, at *5 n.8. The record supports this finding. *See* 52 RR at 96-98; 54 RR at 118, 122.

The state court's findings are reasonable and supported by the evidence. Battaglia's sixth ground for relief should be DENIED.

### 2. Factual Sufficiency

In his seventh claim, Battaglia complains that the CCA refused to conduct a "factual sufficiency" review, under the heightened state-law standard of *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996), of the sufficiency of the evidence to support the jury's answer to the future-dangerousness special issue. *See* Dkt. No. 27 at 91-96. Battaglia claims that his right to equal protection under the Fourteenth Amendment was violated by making this distinction between capital and non-capital cases. *See* Dkt. No. 27 at 93-95. He argues that Texas intermediate courts of appeal, along with the CCA, can perform a factual sufficiency review of evidence in support of a conviction or affirmative defense but not to support the special issues in a death-penalty case and that this refusal constitutes an irrational distinction between capital and noncapital cases. *See id.* at 94-95. No direct correlation is shown, however, because special issues are not used in non-capital cases in Texas.

Circuit precedent provides that the CCA's refusal to perform a factual sufficiency review of evidence under its *Clewis* standard to support an affirmative finding on the future-dangerousness special issue does not violate due process:

The *Clewis* standard is rooted in the Texas constitution. *Clewis*, 922 S.W.2d at 130. It applies to the power to review questions of fact when proving the elements of an offense in criminal cases. *Id. Jackson*, on the other hand, reflects the federal constitutional due process standard. We apply that standard in our review of federal habeas petitions. *See, e.g., Santellan v. Cockrell*, 271 F.3d 190, 193 (2001). We note that the state appellate court observed the federal standard of review on the question of future dangerousness – as distinct from a finding on the elements of an offense – in a capital murder case. It did so knowing that we would do so on federal habeas review. We cannot impose a Texas constitutional standard for the factual review of the elements of a crime on the state's courts of appeals when reviewing the issue of a defendant's future dangerousness. Neither do we adopt other than the federal standard.

*Woods*, 307 F.3d at 358.

Battaglia has identified no clearly established federal law that supports his claim that the CCA violated the Equal Protection clause by refusing to conduct the heightened state-law review under *Clewis* of the answers to these special issues. Therefore, the CCA's determination was not contrary to or an unreasonable application of clearly established federal law.

Battaglia's seventh claim should be DENIED.

### F. Cumulative Error

In his eighth claim, Battaglia argues that a combination of errors cumulated to deny his rights under the Constitution. *See* Dkt. No. 27 at 96-97. In this Circuit, "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected

the entire trial that the resulting conviction violates due process.'" *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Since Battaglia has presented no errors of a constitutional dimension, there is nothing to cumulate.

Battaglia's eighth claim should be DENIED.

## Claims in Supplemental Petition

On May 27, 2011, Battaglia filed a *pro se* supplemental petition presenting three additional claims for relief: (1) the trial judge had a conflict of interest that deprived Petitioner of a speedy and public trial, of an impartial jury, and of due process of law under the Sixth and Fourteenth Amendments; (2) the forcible administration of medication during voir dire and trial violated Petitioner's rights to due process and to a fair trial under the Sixth and Fourteenth Amendments; and (3) trial counsel provided ineffective assistance in that a conflict of interest existed in violation of Petitioner's Sixth and Fourteenth Amendment rights.

Respondent asserts that all of these supplemental claims are unexhausted, procedurally barred, and time barred and that they should be denied without reaching the merits. *See* Dkt. No. 66 at 128-134.

The undersigned agrees and also finds, in the alternative, that each of these claims lacks merit.

### A. Procedural Obstacles

#### 1. Exhaustion

Petitioner states that none of these claims are exhausted[7] but seeks by separate motion to stay and abate these proceedings so that he can return to state court to exhaust these claims. *See* Dkt. No. 62 at 2; Dkt. No. 60. "When a petitioner brings an unexhausted claim in federal court, stay and abeyance is appropriate when the district court finds that there was good cause for the failure to exhaust the claim; the claim is not plainly meritless; and there is no indication that the failure was for purposes of delay." *Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010) (citing *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005)).

In *Rhines*, the Supreme Court held that a district court has discretion to stay a petition containing unexhausted claims so that the habeas petitioner may return to state court to exhaust such claims in limited circumstances:

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the

---

[7] "Petitioner's CLAIMS presented in this *pro se* supplemental application for writ of habeas corpus have not been exhausted in state court." Dkt. No. 62 at 2. Despite his motion and clear concession that these claims are not exhausted, Battaglia's *pro se* reply appears to contradict this, asserting that he has "conceded [no] such thing" and that these claims were "fairly presented" to the state courts. Dkt. No. 74 at 2, 3, 5, 7. His *pro se* reply points to complaints that he made against his attorneys but does not show that the basis for any of these claims was ever presented to the state courts as a ground for relief from his conviction or sentence. The reply also notes his prior counsel's alleged "refusal to properly exhaust these claims." Dkt. No. 74 at 15. Battaglia has not shown exhaustion.

> district court would abuse its discretion if it were to grant him a stay
> when his unexhausted claims are plainly meritless.

544 U.S. at 277 (citing 28 U.S.C. § 2254(b)(2)). The Court also cautioned that "not all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death." *Id*. at 277-78.

Battaglia asserts that he has shown good cause by asserting the same extreme allegations against the trial judge, prosecutor, trial counsel, appellate counsel, state habeas counsel, and the mother of the children whom he killed that he alleges in his three supplemental claims for relief. As set out in the alternate analysis below, these claims are frivolous and appear to have no purpose but to prolong these proceedings and harass those whom he wants to blame for his circumstances.

Battaglia's *pro se* motion for a stay of these proceedings to exhaust these claims, *see* Dkt. No. 60, was previously denied without prejudice to its reconsideration in these findings, conclusions and recommendation, *see* Dkt. No. 69. The motion is again DENIED. At the least, these claims are plainly meritless, as explained in the analysis below. Further, as set out below, these claims are also time barred under 28 U.S.C. § 2244(d)(1). Therefore, the purpose in *Rhines* to avoid the limitations problem by staying federal habeas proceedings would not apply to these claims.

## 2. Procedural Bar

Federal courts on habeas review will not reach the merits of claims that are denied on state-law grounds that are independent of the federal claim and adequate to bar federal review. *See Sawyer*, 505 U.S. at 338; *Coleman*, 501 U.S. at 729. Unexhausted claims should also be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Neville v. Dretke*, 423 F.3d 474, 479 (5th Cir. 2005) (holding unexhausted claims ineligible for stay when state court would find them procedurally barred).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5 (West 2011). This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001). An exception to this bar allows federal habeas review if a petitioner

"can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Battaglia has not shown that his claims would be allowed in a subsequent habeas proceeding in state court under Texas law. He has, however, asserted the "fundamental miscarriage of justice" exception to procedural bar by claiming that he is "actually innocent of the charge of capital murder, because he possessed no actual intent or knowledge of the crime or mens rea because of his being drugged by Ms. Pearle." Dkt. No. 62 at 24. Battaglia produces no support for this allegation, which is contradicted by the record in this case, including the testimony of several mental health experts who all agreed that Battaglia knew what he was doing at the time that he killed his daughters.[8] *See* 53 RR 122-23; 54 RR 58, 62, 106, 114; 55 RR 73-75.

Although not raised by the parties, recent legal developments warrant further analysis. The Supreme Court's decision in *Trevino v. Thaler*, 133 S. Ct. 1911 (May 28, 2013), applies the limited exception to procedural bar created in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), to Texas cases. This exception would require Battaglia to show that his state habeas counsel was ineffective in failing to present a substantial claim of the ineffective assistance of trial counsel. "[A] procedural default will not bar a federal habeas court from hearing a substantial claim of

---

[8] Battaglia was "unmedicated" at the time of the offense. 53 RR at 114.

ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 132 S. Ct. at 1320. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318. Battaglia's last supplemental claim asserts that his trial counsel provided ineffective assistance due to a conflict of interest. As shown in the alternative merits analysis below, this claim has no merit. Therefore, it is not substantial, and Battaglia's state habeas counsel could not have been ineffective in failing to raise it. As such, neither of these requirements of *Martinez* are shown in this case.

Battaglia's supplemental claims are all unexhausted and now procedurally barred by the Texas abuse-of-the-writ law. No exception to procedural bar is shown. Therefore, these supplemental claims should all be DISMISSED as unexhausted and procedurally barred.

### 3. Time Bar

These *pro se* supplemental claims are also time barred. State proceedings to review the conviction and death sentence concluded by September 23, 2009, when the CCA denied postconviction habeas relief. *See Ex parte Battaglia*, No. WR-71,939-01, 2009 WL 3042925. The AEDPA imposes a one-year limitation period for filing habeas-corpus claims in federal court. *See* 28 U.S.C. § 2244(d)(1). These claims were not filed until May of 2011, well after the limitations period had expired. *See* Dkt. No. 62.

Although Battaglia's *pro se* reply suggests that his supplemental claims relate back to the original petition for limitation purposes, the new claims assert "new ground[s] for relief supported by facts that differ in both time and type from those the original pleading set forth." *See Mayle v. Felix*, 545 U.S. 644, 650 (2005) (applying Fed. R. Civ. P. 15(c) to federal habeas pleadings). The new allegations are presented as entirely separate claims alleging extreme and different facts that also conflict with those presented in the original petition, as shown in the alternative merits analysis below. In fact, although Battaglia's pleadings are hard to follow, he also appears to distinguish the claims in his supplemental petition, asserting that the original petition filed in this case was "unauthorized and false." Dkt. No. 74 at 9.

The closest connection that Battaglia makes between the supplemental claims and those in his original petition are those portions of the last supplemental claim asserting that his trial counsel had a conflict of interest that supports the claims of ineffective assistance of trial counsel in his original petition. In a federal habeas proceeding, however, "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision." *United States v. Gonzalez*, 592 F.3d 675, 680 (2009). Battaglia's extreme allegations of conspiracy, corruption, and conflict present an entirely different and inconsistent basis for relief from any of his prior claims, which included no such allegation. As shown in the alternative merits

analysis below, his new theory of ineffective assistance of trial counsel does not even support the prior allegations.

Therefore, none of these claims relate back to the original habeas petition filed in this case on September 22, 2010, and no equitable tolling is requested or warranted. Indeed, at least part of Battaglia's *pro se* reply appears to affirmatively disclaim equitable tolling, stating that "equitable tolling per HOLLAND does not exist in the instant case." Dkt. No. 74 at 9.

The claims presented in the supplemental petition should all be DISMISSED as time barred.

## B. Alternative Merits Analysis

If these claims were not unexhausted, procedurally barred, and time barred, they should be denied for lack of merit.

### 1. Judicial Partiality

In his *pro se* pleading, Battaglia makes several unsupported and contradictory allegations. He alleges that the trial judge was either corrupt or biased and that she had a conflict of interest with trial counsel in that she overcompensated him either for a kick-back or some other corrupt reason. Battaglia provides no information showing any actual bias, conflict, or corruption, does not show that defense counsel's compensation was excessive, and identifies no other information capable of proving his extreme allegations.

Battaglia asserts that "discovery and analysis of court financial and payment records" might reveal an underlying impropriety. Dkt. No. 62 at 8. From his

allegations, however, this assertion is based entirely on speculation. Discovery would not be justified for such a "fishing expedition." *See Murphy v. Johnson*, 205 F.3d 809, 814 (2000).

Battaglia complains that the voir dire proceeding was unusually lengthy, but the nature of his crime would reasonably have required additional time to examine jurors on their exposure to pretrial publicity. Battaglia also complains about the excuse of an African-American venireperson who expressed views that favored the prosecution and who previously served on a jury on which one of the prosecutors had also served. During that prior jury service, the juror persisted in her vote for a verdict of guilty in the face of disagreeing jurors, resulting in a hung jury. Battaglia claims to have known that this defense challenge was exercised in collusion with the prosecution for an improper racially discriminatory purpose, *see* Dkt. No. 62 at 8, but Battaglia's testimony on the record immediately following this juror's excusal does not indicate any such knowledge or concern about the strike, *see* 13 RR at 122-23.

Battaglia complains of a partially closed courtroom during voir dire. *See* Dkt. No. 62 at 10. He does not point to anything in the record establishing this allegation, but a partial closure could be a reasonable response to concerns about pretrial publicity and how it could affect a jury panel. *See United States v. Cervantes*, 706 F.3d 603, 611-12 (5th Cir. 2013); *see also Skilling v. United States,* 130 S. Ct. 2896 (2010) (discussing problems of trial proceedings impacted by press coverage). In fact, it was the defense that sought to restrict public access at the first

pretrial hearing in order to minimize the danger of prejudicial pretrial publicity, which the trial court denied in part, instead merely restricting access to the courtroom by those wanting to record the defendant's appearance and allowing only one camera, a still camera, for the media to pool. *See* 2 RR 4-5.

Battaglia also alleged that the prosecutor, one of the defense attorneys, and the judge conspired together through a system of signals during voir dire to rig the jury. *See* Dkt. No. 62 at 10-11. He asserts that he alerted his other, uninvolved trial counsel, who then stood up and objected "to the judge and prosecution bobble-heading the witness." *Id.* at 10. While the term "bobble-head" does appear in the record, it does not support this allegation of conspiracy but, rather, refutes it. After the examination of Juror 2885, defense counsel made a series of challenges for cause, including challenges based on the questionnaire and the record that the juror had formed an opinion regarding guilt and punishment based on pretrial publicity and including an argument contrary to the trial court's rulings regarding the proper interpretation of Article 35.16(10) of the Texas Code of Criminal Procedure. Immediately after these challenges were made, and during the same exchange, trial counsel made the following objection:

> MR. BRAUCHLE    Also the baseball season starts next week. Can we save the bobblehead dolls. It's kind of old (sic) to see the State sitting over there nodding and approving every time the jurors strike up a resonant answer.
>
> THE COURT    Let's not be bobbing our heads in response.
>
> MR. ROBINSON    We were falling asleep to Mr. Brauchle.

| THE COURT | Okay. |
| MR. JOHNSON | Did the Court overrule all our objections? |
| MR. BRAUCHLE | About the bobblehead. |
| THE COURT | I didn't overrule that. |

42 RR 189-90. Trial counsel then asked for an additional peremptory strike so that the defense could strike that potential juror, which was granted, and the juror was excused. *See* 42 RR 191. The record does not show that trial counsel Brauchle interrupted any examination to stop collusive signals from the prosecutor and judge but instead raised the objection in a series of objections after the examination had been concluded and that the bobble-head objection was directed solely to the state's nodding during a juror's examination. The trial court not only sustained the bobble-head objection but granted an additional peremptory strike so that the juror could be excused.

Battaglia also alleges that he received a letter from appellate counsel about these "nonverbal" signals, *see* Dkt. No. 62 at 11, but has not made any such document available to this Court. Battaglia later also accuses this same appellate counsel, along with state habeas counsel, of participating in the illegal signaling scheme during this voir dire.

Battaglia also makes several unsupported and contradictory complaints against various people, including his former wives and all of his lawyers, regarding his loss of property, his being called derogatory names, and his lawyers' refusal to present these claims earlier. *See id.* at 12. Battaglia asserts that he has shown a

structural error in the trial that defies a harmless error analysis. *See id.* at 12-13. But, since no partiality of the judge is shown, and no collusion between the parties or the judge is shown, no structural error is shown.

This claim should be DENIED in the alternative as without any merit.

### 2. Forced Administration of Medication

Battaglia alleges that he was forcibly medicated for no valid medical reason but merely to prevent him from effectively participating in his trial and, "more importantly, to render him unable to effectively complain or object, or both" about the alleged evil schemes of the attorneys and judge in his case. Dkt. No. 62 at 14. These *pro se* allegations are contradicted by the record and the allegations of the original petition filed in this case.

Battaglia alleges that there was no medical reason for him to take those medications. *See id.* at 15. The original petition, however, states that he "suffers from a Type I Bipolar Disorder" and that his "disease is characterized by psychotic episodes which contributed to the offense by rendering him incapable of conforming his conduct to the requirements of law." Dkt. No. 27 at 13. Indeed, Battaglia's first claim argues that his mental illness is so severe that he should be exempted from the death penalty. *See id.* at 21-35.

Battaglia claims that the trial judge ordered him to be forcibly medicated, *see* Dkt. No. 62 at 14, but Battaglia does not produce any order or indicate where it may be found in the record, and the undersigned has found no such order. Battaglia concedes that he has been unable to determine if an actual order exists regarding

his forced medication and describes the guards' practice in a way that appears more consistent with ensuring that an inmate is not hiding drugs. *See id.* at 19.

The record indicates that Battaglia chose to take medication at some point after his doctors explained its potential benefit and that the medicine enhanced his ability to focus and participate in the trial. Dr. Judy Stonedale, one of the defendant's mental health experts, testified that Battaglia voluntarily accepted treatment and that it was helping him: "It took us a long time to convince him to go on medication. And it made a huge difference." 53 RR 109.

> Q. But as far as John Battaglia himself, has he been – is he receptive to the medications and in fact asked for the medication and asked for in the past that these medications be increased to offset the feelings that he's having.
>
> A. Yes at one time in Dr. Woo's notes he mentioned Zyprexa was causing him to gain a lot of weight. People can gain 40 to 50 pounds on it occasionally. And he was gaining some weight. He complained about that but told her he wanted to stay on it because he realized the effect it was having on him.

*Id.* at 112.

> Q. And the Defendant has shown, has he not, a consistent pattern of willingness to be medicated.
>
> A. Especially once he got on the medication and realized how much better he felt.

*Id.* at 174. She also testified that his receptiveness to treatment made him less likely to commit acts of violence in the future:

> I don't believe he would be any threat at all. Just looking at all of his acts of violence were against the chaotic relationships he had with women. He was unmedicated.

> In a prison situation he would be in a very controlled environment. And in fact he was in the Marines for four years had an exemplary record. So we know he does well in a controlled environment. He's willing to be on medication.

*Id.* at 114. Other doctors confirmed this. Dr. Edward Brown Gripon, another one of Battaglia's experts, testified that Battaglia's mental illness was "quite treatable."

> Q.   And based on your knowledge of John Battaglia do you have an opinion as to whether or not he's the kind of person that would be receptive to treatment?
>
> A.   Yes he has been.

54 RR at 32 (voir dire examination). In fact, the State's expert conceded that "so far" Battaglia had shown a willingness to voluntarily take his medication.

> Q.   Are you here today to offer an opinion as to whether or not John Battaglia is the type of an individual who has shown a receptiveness to being treated for his bipolar disorders.
>
> A.   I have an opinion.
>
> Q.   What is that opinion.
>
> A.   That so far he has demonstrated a significant receptiveness to it.

*Id.* at 81-82 (voir dire examination).

Battaglia alleges that these medications rendered him incapacitated and incapable of assisting with his own trial defense. *See* Dkt. No. 62 at 14, 17. Dr. Stonedale testified, however, that these medications improved Battaglia's mental abilities: "It evens out their mood. For instance a medication he's on Zyprexa, we like to call it the glue. It helps you to think straight, to glue your mind together, to make sense of the information that's coming in." 53 RR 171.

Battaglia then submits – again without any support – an alternative theory that his experts were trying to fabricate or conceal mitigating evidence and also puts forth bizarre allegations involving his former wife and various attorneys. *See* Dkt. No. 62 at 20-24. He argues that he should be relieved of the obligation to show any harm because of the nature and magnitude of the violations of his rights impacting the structure of his trial. *See id.* at 25. But Battaglia has failed to set forth any actual violation of his rights and submits only implausible allegations of conspiracies against him.

Battaglia makes disjointed and meandering allegations of extreme misconduct that lack support and contradict the record. He claims that he was drugged and could not tell what was going on at trial to help his attorneys but also asserts numerous details for which he would need to rely entirely on his memory. He identifies places in the record showing that he was given medication that improved his mental function but provides no support for any forcible administration of it or any resulting harm. He also complains about the most mitigating testimony submitted at his trial: that his experts diagnosed him with a severe bi-polar disorder.

In sum, Battaglia makes frivolous allegations that appear to have no purpose but to prolong these proceedings and harass the court participants and his former wives.

This claim should also be DENIED in the alternative as lacking any merit.

### *3. Conflict of Interest*

Battaglia alleges that his rights to the effective assistance of counsel under the Sixth and Fourteenth Amendments were violated because his trial counsel had a conflict of interest that was not uncovered previously due to the trial court judge's own, alleged conflict of interest. *See* Dkt. No. 62 at 26-28. Battaglia relies on the same kind of bizarre allegations of conspiracy that he asserted in his prior claims, along with new allegations attempting to connect them with the claims made in the original federal habeas petition by providing a possible motive for the alleged ineffective assistance of counsel arising out of these alleged conflicts. These new allegations, however, do not support the prior claims.

Battaglia asserts that trial counsel Johnson did not present a PowerPoint presentation and failed to obtain certain evidence to impeach Ms. Pearl because counsel did not want to upset her. *See* Dkt. No. 62 at 27. Johnson's vigorous cross-examination of Ms. Pearl at trial, however, shows that he had no such reservation. *See* 53 RR at 33-65, 69-74.

Battaglia also asserts that trial counsel did not call his father as a witness because of information (attributed to the district attorney) that Battaglia's father murdered Battaglia's mother and that trial counsel threatened to put the father on the stand to let the prosecution bring this up, which Battaglia could not allow. *See* Dkt. No. 62 at 27. The original petition identified the evidence not presented as constituting Battaglia's "prior good conduct and social contributions as a humanizing element in mitigation." Dkt. No. 27 at 83. The petition questions "the

validity of trial counsels' assertions that the decision not to call John Battaglia, Sr. (or indeed any family member) as a character witness was a matter of strategy," contending instead that failing to present this "testimony of a loving parent" could not have been a matter of reasonable strategy. *Id.* at 85. In addition to the fact that Battaglia provides nothing to show that his new allegations are true, these allegations conflict with his prior assertions and fail to establish a right to relief.

Battaglia also argues that he need not prove harm or prejudice because his allegations of a conflict of interest deprived him of any counsel and constitute the kind of structural error that defies analysis. *See* Dkt. No. 62 at 29. But, since he has not shown any actual conflict of interest, this argument also fails.

Each of the claims presented in Battaglia's *pro se* supplemental petition are unexhausted, procedurally barred, and time barred and should be DISMISSED without reaching their merits. In the alternative, all of these claims are without merit and should be DENIED on that basis as well.

## Evidentiary Hearing

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). Prior to the enactment of the AEDPA, "[w]hen there [was] a factual dispute, [that,] if resolved in the petitioner's favor, would entitle [him] to relief and the state [had] not afforded the petitioner a full and fair evidentiary hearing, a federal habeas corpus petitioner [was] entitled to discovery and an

evidentiary hearing." *Goodwin v. Johnson*, 132 F.3d 162, 178 (5th Cir. 1997). In *Schriro*, the Supreme Court observed that while the basic rule has not changed, the standards for granting relief have:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

550 U.S. at 474 (footnote omitted) (internal citations omitted). Regarding any claim adjudicated on the merits, the proper standard is set forth in 28 U.S.C. § 2254(d). Federal habeas review under Section 2254(d)(1) is "limited to the record that was before the state court," *Pinholster*, 131 S. Ct. at 1398, and review under Section 2254(d)(2) is limited to the "determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

On the allegations and record before this Court, an evidentiary hearing would not enable Battaglia to establish a right to federal habeas relief. Even if facts were further developed in federal court on any of the claims presented, it would not establish a right to federal habeas relief under the AEDPA.

Accordingly, Petitioner's request for an evidentiary hearing is DENIED.

## Conclusion

Battaglia has not shown that any of the claims presented in this case warrant federal habeas corpus relief from his state conviction and death sentence. Accordingly, relief should be denied.

**Recommendation**

The undersigned recommends that the petition for writ of habeas corpus filed in this case pursuant to 28 U.S.C. § 2254 be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 19, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE